## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION AT COLUMBUS

JAVIER H. ARMENGAU,

|  |  |  |  |
|---|---|---|---|
| | Petitioner, | : | Case No. 2:19-cv-1146 |
| - vs - | | | Chief Judge Algenon L. Marbley |
| | | | Magistrate Judge Michael R. Merz |

WARDEN, London
  Correctional Institution,

                                                    :
                Respondent.

## REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court for decision on the merits on the Amended Petition (ECF No. 70), the State Court Record (ECF No. 72 (Exhibits 1-44), 72-1 (Exhibits 45-112, and 72-2 (Trial Transcript)), the Return of Writ to the Amended Petition (ECF No. 73), and Petitioner's Reply (ECF No. 77) and Summary of Reply (ECF No. 81).

**Litigation History**

On May 13, 2013, a Franklin County, Ohio, grand jury indicted Petitioner on three counts of kidnapping in violation of Ohio Revised Code § 2905.01)(Counts 1, 5, and 14), one count of public indecency in violation of Ohio Revised Code § 2907.09) (Count 2), three counts of gross sexual imposition in violation of Ohio Revised Code § 2907.05) (Counts 3, 7, and 8), six counts of rape in violation of Ohio Revised Code § 2907.02) (Counts 4, and 9-13), and five counts of sexual battery in

1

violation of Ohio Revised Code § 2907.03) (Counts 6, and 15-18). (Indictment, State Court Record, ECF No. 72, Exhibit 1).

The case was tried from June 19 until July 7, 2014, when the trial jury found Petitioner guilty as to Count 2 (public indecency), Counts 3 and 8 (gross sexual imposition), Count 10 (rape), Count 14 (kidnapping), and Counts 15-18 (sexual battery)(State Court Record, ECF No. 72, Exhibit 5). Petitioner was acquitted on Counts 1, 4, 5, 6, 7, 9, 11, 12, and 13 (Judgment Entry, State Court Record, ECF No. 72, Ex. 5).

On August 26, 2014, the trial court found that Counts 10 (rape) and 15 (sexual battery) merged under Ohio Revised Code § 2945.71 for the purposes of sentencing, with the State electing sentencing on Count 10. Armengau was then sentenced to concurrent sentences of fifteen months each in prison for Counts 3 and 8, nine years in prison for Count 10, four years in prison for Count 14, and thirty months each in prison for Counts 16, 17, and 18. Counts 10 and 14 were ordered to be served consecutively with all other sentences to be served concurrently, for an aggregate sentence of thirteen years in prison. *Id.* Petitioner was also sentenced to thirty days on the public indecency misdemeanor and credited with time served.[1]

Through new counsel, Petitioner appealed to the Ohio Tenth District Court of Appeals. That court overruled his first, second, fourth through seventh, and ninth assignments of error, sustained his third and eighth assignments of error, and remanded for re-sentencing on Counts 10, 14, 15, and 17. *State v. Armengau*, 2017-Ohio-4452 (Ohio App. 10th Dist., Jun. 22, 2017)(copy at State Court Record, ECF No. 72, Ex. 11, sometimes cited by Petitioner as 14AP-679)(*"Armengau I"*), appellate jurisdiction declined, 151 Ohio St. 3d 1511 (2018).

From its review of the trial record, the Tenth District Court of Appeals made the following findings:

---

[1] Because Petitioner's custody on Count 2 ended before he filed his Petition, any claims regarding that count are no longer cognizable in habeas corpus. *Maleng v. Cook*, 490 U.S. 488 (1989).

## I.    PROCEDURAL BACKGROUND

{¶ 2} During the period of the indicted offenses, appellant was an attorney licensed in Ohio, with a central Ohio general practice that over time became focused on criminal defense work. The women who accused him of sexual misconduct were clients or relatives of clients; two of the accusers also worked in appellant's law offices.

{¶ 3} Columbus police began investigating appellant in 2013 after one of the accusers, C.C., hired appellant to represent her son in criminal proceedings and complained of appellant's unwanted physical advances. After appellant's arrest at the termination of that investigation, other accusers began coming forth, leading to an 18–count indictment issued by the Franklin County Grand Jury alleging crimes victimizing five different women: Counts 1, 2, and 3 alleged kidnapping, public indecency, and gross sexual imposition involving accuser C.C., all occurring on or about April 4, 2013. Counts 4 and 5 alleged rape and kidnapping involving accuser L.G., arising out of a single incident occurring between August 1 and August 31, 2008. Counts 6 and 7 alleged sexual battery and gross sexual imposition involving accuser A.C., occurring between January 1, 1998, and December 31, 2010. Count 8 alleged gross sexual imposition involving accuser K.R., occurring between August 8 and September 17, 2008. Counts 10 through 13 alleged rape involving accuser L.M. Count 14 alleged kidnapping involving L.M. in connection with one of the rape counts. Counts 15 through 18 alleged sexual battery against L.M. All the counts involving L.M. alleged conduct occurring between January 1, 2002, and December 31, 2008. All counts involving all accusers alleged that the criminal conduct occurred in Franklin County, Ohio.

{¶ 4} The state provided a bill of particulars on June 1, 2014, amended it on the eve of trial on June 6, 2014, and further amended it at the close of the state's case on June 22, 2014. The state, over objection, also verbally amended the indictment during trial to conform to certain testimony. The specifics of these amendments are more extensively developed below in connection with appellant's first and sixth assignments of error (emphasis supplied).

## II.    TRIAL PROCEEDINGS

{¶ 5} The prosecution relied chiefly on the testimony of the five accusers. In addition, three other similarly situated women testified as other-acts witnesses regarding events that did not give rise to further criminal charges. Two of these described appellant's conduct

3

in connection with consensual sexual relationships, and one testified regarding appellant's offensive conduct or statements towards her.

{¶ 6} The first accuser that testified at trial was C.C. She stated that she hired appellant to represent her son in a criminal matter, and met with appellant at his office on South High Street in Columbus. On April 4, 2013, C.C. received a call from appellant's secretary asking her to come to appellant's Columbus office to discuss the upcoming trial. During the course of their interview, appellant retrieved a legal file and sat next to C.C., brushing up against her. Appellant then opened the file, C.C. testified, and when the file fell to the floor, he gripped C.C.'s left arm firmly and put his right arm down her shirt, pulling her bra away from her breasts. C.C. testified that she was unable to move during this episode because of appellant's physical restraint. C.C. then attempted to readjust her clothing, and realized that appellant had stood up and unzipped his pants, placing his penis before her face. C.C. was offended, and quickly left the office, calling a friend to pick her up. She later called her sister, K.C., to complain of the episode.

{¶ 7} K.C. herself testified to confirm the phone call from C.C. She described her sister as frantic during the call, which prompted K.C. to advise C.C. to call the police.

{¶ 8} After C.C. reported the incident to the Columbus police, investigators contacted C.C. and asked her to set up further meetings with appellant that could be recorded as evidence. She exchanged several recorded phone calls with appellant and eventually met him at a restaurant, where their conversation was recorded and observed by police. During this meeting, appellant again made unwanted advances towards C.C. by repeatedly putting his hand on her thigh, and did not deny his prior conduct during their meeting at his office. In the course of C.C.'s testimony, these recordings were played for the jury in open court.

{¶ 9} Officer Jeffrey Cain, of the Columbus Division of Police, testified that he went to C.C.'s apartment on April 4, 2013, to take the report of a sexual assault.

{¶ 10} Corporal Jeff Zech, of the Franklin County Sheriff's Office, testified regarding the technical aspects of the audio recording process used for the restaurant meeting between C.C. and appellant.

{¶ 11} Detective Jason Sprague, of the Columbus Division of Police, testified regarding the preparations for the restaurant meeting between C.C. and appellant. He was in the vicinity during

the meeting but had difficulty picking up the conversation because recording sound was poor. After appellant's arrest upon leaving the restaurant, Detective Sprague participated in a recorded interview with appellant at the police station.

{¶ 12} During Detective Sprague's testimony, the recording of appellant's post-arrest interview was played in open court. In this interview, appellant described in detail his recent meeting with C.C. at his office regarding her son's case. He denied any inappropriate conduct on that or any other occasion. He professed to be baffled by some of C.C.'s text messages and phone calls that contained flirtatious or sexual references, and stated that he had previously asked her to refrain from such comments.

{¶ 13} Detective Jeffery Ackley, of the Columbus Division of Police, testified about his participation in the investigation. He acted as security backup and an observer during the restaurant meeting. His visual observations corroborated C.C.'s testimony regarding appellant's physical actions, although the ambient noise prevented him from overhearing their conversation directly. He was able to make a partial video recording of the meeting using his personal recording device, and this was later transferred to CD by investigators. The video was partially played for the jury but did not include any of appellant's alleged physical advances.

{¶ 14} On cross-examination of C.C., defense counsel played a video recording made in Columbus police facilities during a telephone conversation between C.C. and her incarcerated son, who was awaiting trial for aggravated murder and other charges. In the recorded conversation, C.C. several times assured her son that, due to the developing conflict with appellant, the son would receive not only new defense counsel but a different prosecutor and judge for his case. Upon further questioning, C.C. testified that she felt that these changes would benefit her son, because she was dismayed by the harsh 43–year sentence offered to her son in plea discussions, and doubted whether appellant had obtained the best available result.

{¶ 15} In his testimony at trial regarding C.C.'s accusations, appellant denied any inappropriate conduct towards C.C. He described his representation of her son against several extremely serious charges, including aggravated murder. Appellant testified that his primary contact was with other family members or his jailed client via telephone, because C.C., after two brief initial meetings, made herself unavailable. While other family members came to various court hearings, C.C. did not. After several months, in April

5

2013, the trial date approached and appellant advised his client that the prosecution's 43–year offer was preferable to trial and a life sentence. Appellant felt that the state had put together a very solid investigation and his client would have little chance in front of a jury, and a plea to the indictment without an agreed sentence would result in more time.

{¶ 16} Appellant testified that prior to the April 4 meeting, he instructed his assistant to contact C.C. and arrange a meeting to update C.C. regarding the case. The meeting was arranged for April 4, and C.C. arrived as agreed. Her behavior struck him as odd. He asked about an individual that she had previously introduced to him as her husband, and she laughed and stated that she had this individual arrested. They then discussed her son's case, and C.C. expressed extreme disappointment with the plea offer. Appellant explained the situation to her and showed her some of his case notes. He denied sitting next to her on the office couch or touching her in any way. He was taken aback when C.C., on leaving the office, asked if he would like to have dinner some time.

{¶ 17} Appellant testified that the next day he learned from his client, C.C.'s son, that the client no longer wanted to accept the plea deal. C.C. then called him, and, in one of the conversations that he later learned was recorded by her at police request, asked for a dinner meeting to further discuss her son's plea. During the phone call, C.C. made several flirtatious or sexually charged remarks, which appellant deflected. He was not particularly put off by this because he considered C.C. to be somewhat unstable or unpredictable, and in any case he had experienced flirtatious comments from other clients and could usually steer such conversations back to business without difficulty. Appellant then described the meeting with C.C. at the restaurant, and denied putting his hand on her thigh or touching her inappropriately.

{¶ 18} The defense called S.K., C.C.'s former roommate. She testified that, in March 2013, C.C. approached her about blackmailing appellant. C.C. appeared frustrated by appellant's representation and the poor plea offer made by the state in her son's murder case. C.C. was also upset about the amount of money she had paid appellant for her son's representation. C.C. told S.K. that she had lied regarding the sexual incident so that she could sue appellant and get a new attorney for her son. She promised to give S.K. a car if S.K. would participate in the blackmail scheme. S.K. refused to participate when she learned that appellant had been arrested, whereupon C.C. kicked S.K. out of their shared apartment.

{¶ 19} The second accuser to appear at trial was A.C. She testified that she began working for appellant in the late 1990's, during the time that appellant represented her in a custody dispute. Appellant's principal office at the time was in Marion, Ohio. A.C. worked for appellant for over seven years, and she eventually resided in one of his rental properties. Early in the working relationship, A.C. testified appellant approached her when she was working in his Marion office, rubbed her shoulders, put his hands down her shirt, and eventually requested that she perform oral sex. She acquiesced. These incidents went on for some time, including an incident when she was in his Columbus office during 2005 or 2006. She could provide no specific dates for any of the incidents except for one occurring on September 11, 2001. On direct and cross-examination, A.C. agreed that she has a lengthy history of disabling mental illness and experienced many civil and criminal legal difficulties as a result. She stated that the sexual activity with appellant was "to an extent" consensual, but that at the time she felt she had little choice but to comply with his demands. (Tr. at 834.)

{¶ 20} Appellant testified that he first met A.C., as she had testified, during representation of her in a custody matter in 1999. He agreed that she had worked for him off and on over the years and had rented a home from him. Appellant denied having any sexual relationship of any kind with A.C. He represented her on numerous legal matters, some arising from her mental health issues, which often led to run-ins with police. This legal representation ended when A.C. complained that appellant was taking too long obtaining a dissolution for her.

{¶ 21} The third accuser to testify was L.G., who testified that she met appellant in 2006 or 2007 when she retained appellant to represent her son in a legal matter. Their interactions began professionally, but she claimed appellant soon began acting inappropriately. She claimed that at one point, appellant demanded oral sex in exchange for a promise to help her son. On several occasions he stripped naked in front of her in his office and masturbated. Later, on the eve of her son's court appearance in September or October 2007, she went to appellant's office for a meeting. Appellant and another man were drinking in the office. L.G. claimed appellant offered her a drink and suggested that if she performed oral sex on both men, her son's case would have a better outcome. L.G. refused and left the office.

{¶ 22} L.G. testified that next day, while in court attending her son's sentencing hearing, she realized that the man she had seen the night before with appellant was, in fact, the judge in her son's case. She

was extremely upset when the judge imposed the maximum sentence on her son at this hearing. After the hearing, L.G. claimed appellant forced her to perform oral sex on him in an attorney conference room in the courthouse, physically restraining her from leaving. She claimed that after this, she was violently ill as she rejoined her family outside. L.G. testified that she had made a police report about the incident in 2009 and refiled it in 2013 when learning of appellant's arrest.

{¶ 23} Prosecution witness S.W. testified that she was L.G.'s aunt and had observed interaction between L.G. and appellant. She advanced some funds for appellant's fees in the defense of L.G.'s son and later took L.G. to retrieve paperwork from appellant's office after L.G. had terminated the attorney-client relationship on behalf of her son. S.W. observed a heated confrontation between L.G. and appellant, prompted in part by appellant's refusal to return the son's case file. At some point in the conversation, L.G. called appellant a rapist. From appellant's office, they drove to the Columbus police department, where L.G. went inside for at least two and one-half hours while S.W. remained in the car. On previous occasions, S.W. had accompanied L.G. for case conferences, and felt that appellant was upset that L.G. was not alone and would not come up to his office alone.

{¶ 24} Prosecution witness J.B. testified that she was L.G.'s *de facto* mother-in-law, as L.G. had lived with her son for 24 years even though the two were not married. She attended a meeting with L.G. at appellant's office in 2009 and observed an argument or scene in which L.G. called appellant a rapist. Thereafter, she rode in the car with L.G. and S.W. to the police station, and testified that L.G. was in the police station only 15 or 20 minutes. On another occasion, J.B. attended a hearing for her grandson at the courthouse and waited outside in the hall during proceedings. J.B. testified that, at some point, L.G. emerged from the courtroom and became violently ill. When J.B. asked what was the matter, L.G. replied "if you only knew." (Tr. at 1291.)

{¶ 25} On cross-examination of L.G., the defense offered the dates and results of L.G.'s son's criminal cases, and the dates of appellant's representation in those cases, to impeach her testimony. In particular, the defense introduced court records indicating that her son had received only community control, rather than prison, in his appearance before the trial judge she identified as associating with appellant.

8

{¶ 26} In his testimony regarding his contact with L.G., appellant agreed that he had represented her son in a criminal case. He also noted that he had represented her personally in several criminal cases in 2006, as well as her other son during the same period. Appellant denied all allegations by L.G. regarding sexual conduct. He testified that his representation of her son ended when the son received probation in the cases on which appellant worked, but that she asked him to appear at sentencing involving the son's other case. On that occasion, appellant spoke briefly with L.G. before leaving after the son's current counsel, a public defender, arrived.

{¶ 27} Attorney Emily Huddleson testified for the defense regarding L.G.'s accusations. She stated that she was the public defender who represented L.G.'s son at the sentencing hearing in question. She testified that after sentencing, she and L.G. walked out in the lobby together, were met by an older woman, and the three discussed the sentence and the reasoning behind it for 20 or 30 minutes. Despite the fact that Huddleson was assigned counsel for all four cases involving L.G.'s son that day, L.G. complained to Huddleson that she had paid appellant a lot of money and felt he should still be there. Huddleson testified that appellant was initially present at the hearing but not there for the conclusion when the judge imposed a prison sentence on L.G.'s son. Huddleson described L.G. as furious after her son received prison time. Huddleson did not observe L.G. crying, being sick to her stomach, or going into a courthouse conference room with appellant or anyone else after the hearing.

{¶ 28} The fourth accuser to testify was K.R. K.R. testified that appellant represented K.R.'s boyfriend in a case in which he had been accused of domestic violence against K.R. Despite being the victim of the domestic violence at issue, K.R. met with appellant to pursue dropping the charges. Appellant subsequently represented K.R. in a criminal matter of her own. Before her trial in September 2008, K.R. testified they met in appellant's Marion office, where he offered her a drink, rubbed her shoulders, and began feeling her breasts. K.R. refused to have sex with appellant, whereupon appellant began masturbating in front of her. K.R. told her mother about the incident, and reported the incident to the bar association, police, and a judge of the Marion County common pleas court. After the incident, she obtained new representation. Despite the statement that she gave to police and court, she heard nothing more from local authorities. Her own criminal case concluded with a guilty plea and a one-year sentence in prison. The Columbus Bar Association referred her complaint to the Supreme Court of Ohio, and a representative of the Supreme Court interviewed her regarding her allegations. To her knowledge, nothing came of the matter. After

9

learning of appellant's 2013 arrest involving similar allegations, she contacted a detective with the Columbus police to renew her allegations in the matter.

{¶ 29} Regarding K.R., appellant testified that he recalled representing her in 2008, when they disagreed about a plea offer from the prosecution. She terminated representation when he refused to seek a continuance on what he felt were unwarranted medical grounds. He was later summoned to court for a pretrial and was requested by the prosecution and the judge to arrive early. When he arrived, the judge and prosecutor informed him that K.R. had reported a sexual assault. He withdrew from her case, and a new lawyer was appointed. Appellant denied any sexual misconduct with K.R.

{¶ 30} The final accuser to testify was L.M., who described a long history of coerced sexual relations with appellant. Her testimony with regard to dates was generally vague, and often established only by reference to the age of her young daughter, born in 1997, during the various incidents described.

{¶ 31} L.M. described her background as an immigrant from Venezuela with limited English. She came to America with her Venezuelan fiancé, and after they married in Florida he took a job in Ohio. She testified that she first retained appellant in late 1998 or early 1999 to represent her in divorce proceedings. She selected him based on his ability to communicate in Spanish. She also had difficulties with her immigration status, which was solely based on her then-husband's student visa, and appellant advised her to delay the divorce while dealing with these immigration issues. As a result, the divorce action went on for a considerable time, and L.M. met many times with appellant. She traveled from her home in Groveport, in southeast Franklin County, to appellant's office in Marion for these meetings, which appellant usually scheduled for Friday afternoon or Saturday. At first she brought her infant daughter along, but approximately three months after taking the case appellant requested that she not bring the child to meetings.

{¶ 32} The first incident she claimed occurred about four or five months after she retained appellant. She testified that during an office conference at appellant's Marion office, appellant offered L.M. a cup of coffee, and thereafter she lost consciousness. She awoke alone on appellant's office couch with her clothes in disarray and indications that she had experienced sexual intercourse. She felt confused, as if drugged or drunk. After a short time, appellant

returned to the room and told her she had fainted. As a result of this incident, L.M. avoided seeing appellant for the next two months.

{¶ 33} L.M. resumed contact with appellant after a series of phone calls from him in which he advised that she was at risk of deportation and would lose custody of her daughter. Around this time in 1999, appellant provided a tenant reference that helped L.M. move from Groveport to an apartment in Dublin, in northern Franklin County and thus closer to Marion. She claimed that she met again with appellant in his Marion office at this time, and another assault occurred. After briefly discussing her case, appellant suddenly approached her and pulled down his pants. Appellant threatened a poor result in her legal matters if she did not perform oral sex. He placed his hands behind her head, thereby "restraining [her] head against his penis," told her to "do it," and forced his penis into her mouth. (Tr. at 1483.)

{¶ 34} L.M. testified that after that incident sexual conduct between appellant and L.M. was frequent over approximately the next three years, always under the implied threat that if he dropped her case she would lose her immigration status and custody of her daughter. These events first took place at appellant's Marion office, where appellant eventually hired her to do office work to help pay her legal bills. Later appellant kept a residential apartment in Marion and took her there. Some incidents also took place at her apartment in Dublin, where appellant would ask L.M. to lock her daughter in another room. Although L.M.'s testimony did not provide details of any specific instances for most of the abuse occurring after the two specific incidents described above, she did testify in more detail about later events that formed the basis for two of the rape charges: sometime in 2000 or 2001, appellant drove L.M. in a white truck from his Marion office to a rural field where he forced her to have vaginal sex. Six months later, he repeated the offense.

{¶ 35} L.M. testified that around the time that her daughter was three and one-half or four years old, L.M. became pregnant by appellant and appellant insisted that she have an abortion. The last time she claimed she had sexual contact with appellant was 2003. This was the year in which she obtained her permanent U.S. residency, and with her immigration status settled she no longer felt compelled to submit to appellant's demands.

{¶ 36} L.M. learned of appellant's arrest in 2013 when her daughter emailed a link to a newspaper story. From this she learned that she was not the only person who claimed to suffer appellant's advances. After discovering this, L.M. called appellant to tell him that she was

glad that the arrest would prevent him from taking advantage of other women. L.M. then contacted the Columbus police detective named in the news story to complain of the past incidents.

{¶ 37} On cross-examination, L.M. denied that appellant had ceased representing her in her divorce case by 2001. Defense counsel offered docket items to establish that a different attorney appeared on her behalf in the domestic action after that time. L.M. responded that many attorneys had represented her in different matters through this time, but she felt certain that appellant continued to act on her behalf. She acknowledged that her original divorce action was dismissed and she eventually divorced under a new case filed in 2003 by another attorney. She also acknowledged that, despite her professed hatred for appellant arising from past abuse, she had often approached appellant for informal assistance with legal or practical matters over the years during and after the abusive conduct. She stated that she viewed this assistance as repayment for past abuse: "I wanted to take advantage of him because he abused me so—for so long. * * * So he abusing [me] so long, so he has to do it for me." (Tr. at 1645.)

{¶ 38} Generally, appellant testified that he had a long-standing professional relationship with L.M., beginning when L.M. approached him for representation in a divorce matter. Even after his representation of her in her divorce matter terminated in approximately 2001, appellant testified L.M. repeatedly sought his assistance in several legal and non-legal matters. Regarding the duration of his legal representation, appellant testified that he filed L.M.'s divorce paperwork in December 1999 and withdrew from representation in 2001. Other attorneys took her case thereafter. In 2004, appellant and his wife separated briefly, and appellant and L.M. dated for about two weeks. Appellant denied ever having any type of sexual contact with L.M. at any other time during their relationship. Their brief dating relationship ended abruptly when L.M. told appellant she was pregnant, and appellant, who had undergone a vasectomy, understood that she had been seeing other men. He denied arranging an abortion for her.

{¶ 39} The next witness was L.L., who was not the object of any indicted offenses, but testified as to appellant's conduct when he represented her in 2009 as she faced a murder charge. The defense objected unsuccessfully to this "other acts" evidence.

{¶ 40} L.L. testified that during one of her pre-trial meetings with appellant in a jailhouse conference room, appellant illustrated his views on witness credibility by stating that "he could rape [her] in

the room and it would be [her] word against his and nobody would be the wiser." (Tr. at 1794.) Appellant also stated on that occasion that L.L. could crawl under the table and perform oral sex on him because there were no correction officers around, and it would be only her word against his if she complained.

{¶ 41} In his testimony, appellant denied making any such comments to L.L.

{¶ 42} M.H. was another witness offered by the prosecution for "other acts" testimony, again over objection. M.H. testified that appellant represented her as her attorney for over a decade, beginning when she was 17 years old and incarcerated in the juvenile detention facility. Upon initial release, she and appellant met at his Marion office, went to dinner, and went back and had sex in his office. Over the ensuing 12 years, appellant represented M.H. on multiple cases but she never paid him. They continued to have sex during this time, and M.H. accompanied appellant on a vacation to Florida.

{¶ 43} Appellant testified that he met M.H. at the very beginning of his legal career, when he substituted for an attorney who had failed to appear at the Marion County Juvenile Center. M.H. was 17 and charged with a felony. She later approached appellant for representation in a divorce. Rather than going on a dinner date followed by sex, as described by M.H., appellant recalled that they had dinner with M.H.'s stepfather and mother, and he left that dinner meeting alone. Appellant adamantly denied ever having sex with M.H. He agreed that he continued to represent her in various criminal matters for 12 years after the initial case.

{¶ 44} C.P. testified over objection as the third and final "other acts" witness. She testified that she met appellant about handling her divorce. He did not do so because she eventually proceeded with a dissolution in another state. She then retained him to represent her boyfriend in a criminal case. C.P. acted as a liaison between the boyfriend and appellant while the boyfriend was incarcerated. During one jail call, which was recorded, C.P. told the boyfriend that appellant had slapped her buttocks while she was leaving appellant's office one day. Appellant learned of this conversation and told her he was upset about this both because it would create friction with his client and because he knew that all jailhouse calls were recorded. Later, after appellant was removed from the boyfriend's case because he was a potential witness, C.P. and appellant began a consensual sexual relationship. This continued intermittently until just prior to appellant's trial.

13

{¶ 45} Appellant's testimony with respect to C.P. denied any sexual conduct between them. He testified that in the course of his criminal defense practice, his office routinely obtained and reviewed audio discs of recorded jailhouse phone conversations involving many of his clients. After reviewing the recorded jailhouse phone call in which C.P. told her boyfriend that appellant had slapped or groped her buttocks, appellant asked for a meeting to explain why she would make such a false statement to his client. She stated that she was upset by reports of the boyfriend's past infidelity and merely wished to make the boyfriend jealous. He then advised her to be cautious with such conversations.

{¶ 46} In addition to his testimony addressing the specific accusations presented by the state's witnesses, appellant testified in his case-in-chief regarding his background. He stated that he graduated from Capital Law School in 1998 as an older, non-traditional student with a growing family. He clerked with an experienced criminal defense attorney in Marion, Ohio, during law school, and shared space in that office for one year after passing the bar. He then secured his own space and began his own practice in Marion and, eventually, in Columbus, Mansfield, and Cleveland. His practice, general at first, eventually focused on criminal defense with a smaller proportion of domestic and civil litigation. He testified that he believed the accusations against him were the result of a coordinated campaign by the Franklin County Prosecutor's Office, the Attorney General, and the Columbus police to remove him from the practice of law because of his effective advocacy in criminal cases.

{¶ 47} The defense presented testimony from several current or former female employees and clients of appellant's practice. These witnesses testified that they had never experienced or witnessed any misconduct by appellant. The defense also sought to attack the credibility of the accusers by introducing testimony, photographs, and documentary evidence that conflicted with the accuser's descriptions of appellant's office locations and interior furnishings.

{¶ 48} With respect to the charges involving L.M., the jury returned guilty verdicts on Count 10 of the indictment (rape), Count 14 of the indictment (kidnapping), and Counts 15, 16, 17, and 18 of the indictment (sexual battery). The court merged Counts 15 and 10 of the indictment for sentencing purposes, and the prosecution elected to sentence on Count 10 of the indictment for rape. The court declined to merge any other counts involving L.M., in particular,

14

> finding that the rape and kidnapping counts, although arising out of the same transaction, were driven by a separate animus.
>
> {¶ 49} The jury returned a guilty verdict on Count 2, public indecency, involving C.C. The trial court addressed this in a separate misdemeanor sentencing entry imposing 30 days jail time with full credit for time served.

*Armengau I, supra.*

Under 28 U.S.C. 2254(e)(1) as enacted by the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), these findings of fact by the Tenth District are presumed to be correct by this Court unless rebutted by clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

In evaluating state court findings of fact, this Court is limited to considering the evidence that was before the state courts. *Cullen v. Pinholster*, 563 U.S. 170 (2011). On the basis of the *Pinholster* decision, the Magistrate Judge has excluded a number of exhibits tendered by Petitioner, all of them portions of indictments in other cases, which were not presented to the Ohio courts (See ECF Nos. 54, 55, 63, 71). Petitioner has objected (ECF No. 78), but Chief Judge Marbley has not yet resolved those Objections. Having reviewed the Objections, the Magistrate Judge notes that they argue Petitioner's case on the merits, but do not address the *Pinholster* bar. Petitioner offers the distinction that "*Pinholster* dealt with the petitioner's personal records that weren't demonstrative or comparative but rather related directly to the personal defense of the petitioner that would have been admissible in trial through testimony." However, the rule in *Pinholster* is not limited to the particular kinds of extra-record facts *Pinholster* tried to introduce in habeas, but applies broadly to all extra-record evidence.

In the course of these proceedings, Petitioner has often referred to the dissent of Judge Gary

Tyack[2] in *Armengau I*.  The Magistrate Judge notes that Judge Tyack dissented on issues of law and not from any of these findings of fact.

On August 7, 2015, Petitioner filed a motion for leave to file a delayed motion for new trial (State Court Record, ECF No. 77, Ex. 22).  The trial court denied leave on a finding that Petitioner had not shown he was unavoidably prevented from discovering the new evidence he wished to present. *Id.* at Ex. 25.  The Tenth District affirmed and the Supreme Court of Ohio denied review.  *Id.* at Exs. 33, 36.

On September 19, 2017, Petitioner filed another motion for leave to file a delayed motion for new trial.  *Id.* at Ex. 55.  The trial court denied the motion, the Tenth District again affirmed, and the Supreme Court of Ohio again denied review.  *Id.* at Exs. 58, 62, 65.

On January 16, 2018, prior to re-sentencing on remand, Petitioner moved to dismiss Counts 8, 10, 14, 15, 16, 17, and 18 pursuant to Ohio R. Crim. P.  29, arguing that he was convicted of crimes that were never presented to a grand jury and that he was actually innocent. (Presentence Motion for Dismissal, State Court Record, ECF No. 72-1, Ex. 70, PageID 9204-15).  The trial court denied the motion. *Id.* at Ex. 72.  The Tenth District affirmed.[3] *State v. Armengau,* 2019-Ohio-101 (10th Dist. Mar. 21, 2019)("*Armengau II*"), appellate jurisdiction declined, 157 Ohio St.3d 1405 (2019).

On March 27, 2018, pursuant to the Tenth District's remand, the trial court found that Counts 14 (kidnapping) and 17 (sexual battery) merged with Count 10 (rape) for the purposes of sentencing. The trial court imposed a four-year prison term for Count 15 (sexual battery) to run consecutively with Count 10. Armengau's previously imposed concurrent sentences of fifteen months each in prison for Counts 3 and 8, and thirty months each in prison for Counts 16 and 18 were ordered to remain in full force and effect.  *Id.* at Ex. 77.

---

[2] The Return points out that Gary Tyack is now the elected prosecutor of Franklin County, Ohio.  He will, however, be referred to in this Report as "Judge Tyack," the capacity in which he was involved with this case.
[3] The panel on Armengau's first direct appeal were Judges Klatt, Sadler, and Tyack (dissenting); the panel on this second appeal were Judges Dorrian, Brown, and Luper Schuster.

On appeal, the Tenth District overruled Armengau's second assignment of error and determined that Armengau's third assignment of error was barred by the doctrines of *res judicata* and law of the case. The appellate court sustained Armengau's first assignment of error and remanded the matter to the trial court for resentencing on Count 15. *State v. Armengau*, 2020-Ohio-3552 (Ohio App. 10th Dist., Jun. 30, 2020)(*Armengau II*), appellate jurisdiction declined, 2020-Ohio-4811 (2020).  That re-sentencing remains pending, but Magistrate Judge Deavers earlier decided that did not prevent the case from being ripe (ECF No. 40).

Petitioner avers he placed his Petition in the prison mailing system on March 14, 2019 (Petition, ECF No. 1, PageID 126).  This counts as the filing date.  *Houston v. Lack,* 487 U.S. 266 (1988); *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002).  Petitioner filed of right an Amended Petition on April 11, 2019 (ECF No. 7), and a Second Amended Petition with court permission on June 13, 2021 (ECF No. 70).

**Positions of the parties:**

**The Second Amended Petition**

In his Second Amended Petition (ECF No. 70), Petitioner pleads the following grounds for relief:

> **Ground One**: Petitioner was denied his Constitutional Rights to Due process and Fundamental Fairness when he was convicted, sentenced and resentenced upon insufficient evidence and convicted and resentenced for unindicted and uncharged alleged conduct in Counts 2, 3, 8, 10, 14, 15, 16, 17 and 18 in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and contrary to the United States Supreme Court's holding in *Jackson v. Virginia,* 443 U.S. 307 (1979) and the Ohio Supreme Court's holdings in *State v. Hampton,* 2012-Ohio-5688 [footnote omitted; official citation 134 Ohio St.3d 44], *Knight v. State*, 54 Ohio St. 365 (1896), and *State v. Jenks*, 61 Ohio St. 3d 259.

**Supporting Facts:** Petitioner was indicted in Counts 8, 10, 14, 15, 16, 17 and 18 for specific alleged incidents that occurred in Columbus, Ohio (Franklin County) on unknown dates but sometime between January 1, 2002 and December 31, 2008. During trial Petitioner established that he did not commit the indicted crimes. Prosecutors then, mid-trial, added three (3) years of unindicted and uncharged allegations to the indictment by amendment to circumvent the defense. After adding three (3) years to the indictment, Petitioner was able to establish that he could not have committed any of the indicted alleged crimes because by the relevant part of the expanded time frame, Petitioner had never been to the locations where the "victims" first claimed the indicted crimes occurred. Prosecutors then, mid-trial, changed the locations to Marion, Ohio, to circumvent the defense. *No evidence* was presented as to the elements of the factual incidents supporting the indictment.

**Ground Two:** Petitioner was denied his right to due process of law and notice of the specific offenses (charges) for which he was required to defend and for which he was convicted, sentenced and resentenced in Counts 2, 3, 8, 10, 14, 15, 16, 17 and 18, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Petitioner's Constitutional rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution were further violated where the charging document/instrument failed to adequately inform him of the specific crime for which he was indicted and for which he would be tried, convicted, sentenced and resentenced in Counts 2, 3, 8, 10, 14, 15, 16, 17 and 18.

**Supporting Facts:** Petitioner was indicted in Counts 8, 10, 14, 15, 16, 17 and 18 for specific alleged incidents that occurred in Columbus, Ohio on unknown dates but sometime between January 1, 2002, and December 31, 2008. During trial Petitioner established that he did not commit the indicted crimes. Prosecutors then added three (3) years of unindicted allegations to the indictment to circumvent the defense. After adding three years to the indictment, Petitioner was able to establish that he could not have committed any of the indicted alleged crimes because by the relevant part of the expanded time frame, Petitioner had never been to the locations where the alleged victims initially claimed the incidents occurred. Prosecutors then changed the locations to Marion, Ohio, mid-trial, to circumvent the defense. The indictment, jury instruction nor the verdict forms identify any specific factual basis for conviction. During trial prosecutors were substituting 404(B) and "other act" evidence for the charged crimes that were never mentioned prior to trial. Petitioner was ultimately being tried for factual bases that were not part of the indictment. During resentencing the trial court didn't know what factual basis was applied by prosecutors to any of the counts subject to resentencing and couldn't determine what incidents the jury considered and thereafter resentenced Petitioner to

prison for alleged incidents that never resulted in conviction and which even prosecutors never asked the jury to consider. The Court of Appeals in 14 AP 679 confirmed that the alleged crimes for which Petitioner has supposedly been convicted were not the crimes for which he was indicted (¶ 56-61, June 22, 2017 decision). With regard to Counts 2 and 3, evidence was introduced which if believed allowed the jury to convict for an allegation that was "other-act" evidence. This alleged incident was not noticed in the indictment or bills of particulars. That claim was alleged to have occurred on April 10, 2013, at a different location. The probability that for Count 2 and 3 the jury considered the unindicted other-act of April 10, 2013 is supported by several facts. The jury acquitted Petitioner of the kidnapping with respect to the April 4th incident.

Although legally not dispositive, logically and factually, the acquittal rendered the conviction for the April 4th alleged Gross Sexual Imposition an impossibility as the acquittal for the kidnapping negated the proof beyond a reasonable doubt required for "force" or "threat of force". In light of this fact, Petitioner's testimony, Jennifer Young's testimony, Leslie Todd's testimony and Shirley Koval's testimony, acknowledging that the alleged "victim" admitted her claims were untrue, the jury may have rejected the April 4th alleged incident and considered the April 10th allegation where the alleged "victim" testified that Petitioner squeezed her thigh several times and where Detective Jeff Ackley testified to witnessing and video-taping the incident. Ackley testified that while he video-taped the entire incident, due to a malfunction, the part where Petitioner was supposedly touching the alleged "victim" was not recorded. The indictment in Petitioner's case informed him of alleged offenses that he would not have to defend. Another fact that confirms the lack of constitutionally required notice, lack of unanimity, and violation of Petitioner's Sixth Amendment *Apprendi* claim is the material disagreement between what the Court of Appeals claims are the facts supporting Count 16 and the facts prosecutors assert support Count 16. The Court of Appeals claims that Count 16 is an alleged unspecified incident that occurred in Franklin County and prosecutors who indicted and tried the case assert that the incident supporting Count 16 occurred in Marion County, Ohio.

**Ground Three:** Petitioner was denied his right to due process of law and protections against double jeopardy as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution when the court allowed the state to constructively amend the indictment to add unindicted, uncharged, and unnoticed conduct and where the trial court refused a requested unanimity instruction and failed to instruct the jury that the proof beyond a reasonable doubt standard had to be applied to one factual incident and where after resentencing, Petitioner remains unable to plead a conviction or acquittal to Counts 2, 3, 8, 10, 14, 15, 16, 17 and 18 and where the factual basis for

conviction cannot be determined as decided by the jury and where Petitioner has been resentenced for alleged crimes with which he was never charged and in several counts with crimes for which he wasn't even convicted.

**Supporting Facts:** Petitioner was indicted in Counts 8, 10, 14, 15, 16, 17 and 18 for specific alleged incidents that occurred in Columbus, Ohio on unknown dates but sometime between January 1, 2002, and December 31, 2008. The alleged "victim" in Counts 9-18 couldn't provide a date, week, month or year for any alleged assault. During trial Petitioner established that he did not commit the indicted crimes. Prosecutors then added three (3) years of unindicted allegations to the indictment to circumvent the defense. After adding three (3) years to the indictment, Petitioner was able to establish that he could not have committed any of the indicted alleged crimes because by the relevant part of the expanded time frame, Petitioner had never been to the locations where the "victim" initially claimed the indicted crimes occurred. Prosecutors then changed the locations to Marion, Ohio, rather than Columbus, Ohio, to circumvent the defense. The indictment, jury instructions nor the verdict forms identify any specific factual basis for conviction. During trial prosecutors were substituting other-act evidence for the charged crimes. The Court of Appeals confirmed that Petitioner was ultimately being tried for factual bases that were not part of the indictment. As Petitioner was able to present facts to defend the accusations, prosecutors simply kept amending the indictment and bill of particulars mid-trial to circumvent the defense. After trial and even after resentencing, Petitioner does not know what alleged facts resulted in conviction for any count for which Petitioner is imprisoned, according to the jury's findings. The Court of Appeals confirmed that the crimes for which Petitioner was convicted were not the alleged crimes for which he was indicted or charged. Petitioner was acquitted on Count 11, which is an identical charge to Count 10; Count 14 was indicted as the restraint involved in Count 9. The Court of Appeals confirmed that no evidence was presented of the indicted Count 9 and Count 14 incident. The trial court permitted prosecutors to arbitrarily reassign the Count 14 kidnapping to Count 10. Petitioner was not indicted with any kidnapping related to Count 10. The indictment in Petitioner's case informed him of alleged offenses that he would not have to defend. At resentencing on March 27, 2018, the trial court sentenced Petitioner on Count 15 to a consecutive term of imprisonment while Count 15 was represented by prosecutors to the jury in closing and the instructions as being the same incident as Count 18 for which the sentence had already been fully completed. After the serial amendments, the alleged victim in Counts 9-18 was still unable to assign a date, week, month, or even year to any of her allegations. The alleged "victim" in Counts 9-18, who first claimed to being raped repeatedly in Columbus, Ohio, between 2002 and 2008 (3 times per week for years), then changing her story mid-trial to being raped in Marion, Ohio, in 1998, 1999, or 2000, after being confronted with her

own emails conceded she was initiating contact with Petitioner throughout the years and after moving to California in 2010, contacted Petitioner to provide him with her updated contact information. The alleged victim in Counts 9-18, in 2012 requested Petitioner go [to] California and offered for Petitioner to stay at her residence. Petitioner respectfully declined all of Ms. Melean's offers. On Count 8, the alleged victim was forced to change her initial story and the accusation to Marion, Ohio, rather than as indicted.

**Ground Four:** Petitioner was denied his right to due process of law and protections against double jeopardy as guaranteed under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution when the court failed to instruct the jury that the proof beyond a reasonable doubt standard had to be applied to one factual incident and the jury instructions were constitutionally defective as they permitted the jury to consider and convict Petitioner of alleged crimes for which he was never charged, indicted or noticed [other-act] and where due to the defective instructions the trial court has resentenced Petitioner for alleged crimes for which no factual basis can be determined but that were clearly unindicted and in several counts for alleged crimes for which Petitioner wasn't even convicted.

**Supporting Facts:** When Petitioner established that he did not commit any of the indicted crimes, prosecutors mid-trial changed not only the date range of the indictment to circumvent the defense, but then changed the locations to completely different locations after Petitioner established that he could not have committed the indicted alleged crimes because by the newly argued time frame, Petitioner had never been to the locations where the alleged crimes were supposedly committed according to the initial accounts provided by their "victims." As Petitioner was able to present facts to defend the accusations, prosecutors simply kept amending the indictment and bill of particulars to circumvent the defense. After trial and even after resentencing, Petitioner does not know what alleged facts resulted in conviction for any count for which Petitioner is imprisoned. Whatever they may have been, the Court of Appeals confirmed that the crimes for which Petitioner was convicted were not the alleged crimes for which he was indicted or charged. While the trial court may have invoked jurisdiction for the specific offenses contained in the indictment for Counts 2, 3, 8, 10, 14, 15, 1 6, 17 and 18, none of the specific crimes in Counts 8, 10, 14, 15, 16, 17 and 18, for which it obtained jurisdiction were ever presented to the jury. The trial court denied a requested unanimity instruction and the instructions allowed a non-unanimous verdict and a verdict upon uncharged alleged conduct.

**Ground Five:** Petitioner was denied his rights to due process of law in violation of his state and federal constitutional rights as guaranteed to him by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution when he was denied a fundamentally fair trial due

to prosecutorial misconduct and where he was tried, convicted, and resentenced for convictions upon the admission of other-act evidence that was unindicted, uncharged, and unnoticed prior to trial and which was presented by prosecutors to intentionally circumvent the defenses to the actually indicted alleged crimes.

**Supporting Facts:** When Petitioner established that he did not commit the indicted crimes, prosecutors mid-trial changed not only the date range of the indictment to circumvent the defense but then changed the locations to completely different locations after Petitioner established that he could not have committed the indicted alleged crimes because by the newly argued time frame Petitioner had never been to the locations where the alleged victims claimed initially claimed the assaults were supposedly committed. As Petitioner was able to present facts to defend the accusations, prosecutors simply kept amending the indictment and bill of particulars throughout trial. Prosecutors continuously inserted allegations that were never disclosed, never indicted, or charged and allegations they confirmed in trial they never heard of until two weeks into trial. At one point in trial prosecutors advised the court and defense counsel that Petitioner would not have to defend a certain charge and later, after failing to present evidence on what they indicted, claimed the incident they acknowledged Petitioner didn't have to defend, was in fact one of the counts for consideration. After trial and even after resentencing, Petitioner does not know what alleged set of facts resulted in conviction for any crime for which Petitioner is imprisoned. None of the jury instructions identify or are confined to one factual incident. The jury instructions are devoid of any identifying fact for the jury to determine which alleged incident pertained to any count. The Court of Appeals confirmed prosecutors were substituting unindicted and uncharged allegations for alleged crimes that were indicted. To this day, prosecutors are unable to determine the alleged incidents for which Petitioner is imprisoned. In closing argument, prosecutors told the jury that Counts 15 through 18 were "alternate" theories of other counts. In their sentencing memorandum prosecutors told the jury the court that they "did not rely on a single act to support multiple convictions.". The conflicting statements confirms their inability to determine the alleged incident pertaining to any count and due to the prosecution' s need to plug-in unindicted allegations to convict Petitioner, Petitioner was denied a fair trial as guaranteed under the United States Constitution as his counsel did not know what facts supported the counts in the indictment. Counsel repeatedly moved for a mistrial and advised the trial court that he was unprepared to defend any allegation prior to 2002 for Counts 9-18.

**Ground Six:** Petitioner was denied his rights to due process of law as guaranteed to him under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution when he was tried and convicted for crimes for which he was never charged or indicted or noticed and for

which the court failed to obtain subject matter jurisdiction for alleged crimes that were never presented to the grand jury and that were never presented to Petitioner in any charging document.

**Supporting Facts:** Petitioner was specifically indicted in Counts 8, 10, 14, 15, 16, 17 and 18 for specific alleged crimes that specifically occurred in Columbus, Ohio. Petitioner was not indicted or charged with any crime occurring anywhere else. As of the start of trial Petitioner was defending allegations that occurred in Columbus, Ohio, between 2002-2008. Once Petitioner proved he did not commit any of the charged and noticed crimes, prosecutors mid-trial inserted never alleged allegations of incidents each occurring at a different time and place than those indicted. The grand jury never heard of any of the alleged incidents for which Petitioner is imprisoned and Petitioner was never charged by any instrument for the alleged crimes for which he is now imprisoned. The indictment contained and informed Petitioner of specific offenses that he would not have to defend. The Court of Appeals confirmed the indicted offenses were not the offenses for which Petitioner stood trial and was convicted. Prosecutors midtrial conceded with respect to several counts that the alleged crimes they would later argue for conviction were unknown to them until after the case was indicted.

**Ground Seven:** Petitioner was denied his right to Equal Protection as guaranteed by the Fourteenth Amendment to the United States Constitution when the Court of Appeals and the Ohio Supreme Court intentionally disregarded the law set by their respective courts and the United States Supreme Court in order to affirm the convictions and for which now after resentencing Petitioner is imprisoned for crimes for which he never committed and was never charged or noticed until midway through his trial and in several counts for which he wasn't even convicted.

**Supporting Facts:** The state failed to prove that the crimes occurred in the County and State as alleged in the indictment for Counts 8, 10, 14, 15, 16, 17 and 18, which is a required element to be proven for conviction under Ohio law. The state did not prove that the alleged crimes occurred "within the time frame alleged in the indictment" which is also a requirement under Ohio law. State statutes and case-law set the elements to be proven and then the state is required to prove each of those elements. The state also changed the dates and locations of the charges after Petitioner established that he could not have committed the crimes for which he was indicted. The trial court failed to instruct the jury that they had to agree on one specific set of alleged facts for each count, notwithstanding counsel requesting the instruction. Prosecutors amended the indictment to add three (3) years of unindicted and uncharged conduct which is impermissible. Due to the Equal Protection challenge, Petitioner must reference at least in this section that state law and federal law as applied to other defendants

under identical facts has never allowed what has been permitted to occur in Petitioner's case. The holdings and rulings in Petitioner's case are contrary to established precedent. Any court that allows a defendant to be imprisoned for alleged crimes with which he was never charged or for which he was never convicted must violate a defendant's rights to equal protection as a matter of law.

**Ground Eight:** Petitioner, an actually innocent prisoner, is imprisoned as a result of violations of state and federal law and his rights guaranteed by the Ohio Constitution and the Fifth, Sixth and Fourteenth Amendments to the United States Constitutions.

**Supporting Facts:** Regarding Counts 8, 9, 10, 11, 12, 13, 14, 15, 16, 17 and 18, Petitioner was indicted for specific and then identifiable alleged crimes that occurred in Columbus, Ohio, between January 1, 2002, and December 31, 2008. For every single referenced count, the state at trial presented absolutely no evidence related to the accusations identified in the indictment. Under the facts of Petitioner's case, Petitioner believes that when evidence of a specific crime that is identified in the indictment cannot be produced at trial, the failure to present any evidence of each indicted and charged crime must represent an accused's actual innocence. With regard to Counts 2 & 3, prosecutors inserted a second alleged incident that was unrelated to any alleged conduct occurring at a different location and at a different time after they realized that their corroborating witness, Shirley Koval, decided to testify for the defense. Based on the jury instructions, it cannot be determined which set of facts the jury elected to apply to Counts 2 and 3. This is not a case where the indictment reflected typographical errors or clerical mistakes. The Court of Appeals confirmed the state was permitted to substitute other-act 404(B) evidence for the indicted crimes they couldn't prove.

**Ground Nine:** Petitioner was denied his right to a unanimous jury verdict in Counts 2, 3, 10, 14, 15, 16, 17 and 18 when the trial court denied a requested jury instruction on unanimity and thereafter instructed the jury in a manner where individual jurors could select different alleged incidents for conviction that were uncharged and were admitted as other-act evidence. Unanimity independently affected Petitioner's resentencing as Petitioner has now been resentenced to prison for alleged crimes for which the jury never convicted and for which prosecutors didn't even request of the jury that it consider.

**Supporting Facts:** Prosecutors were permitted to introduce without limitation as many other-act allegations as they needed and then select what "other-acts" they wished to apply to any count for which they were unable to prove the factual bases for the indicted crimes. Count 9 and Count 14, for example, were indicted as one factual incident. The Court of Appeals confirmed that no evidence was presented of the entire alleged incident. With no evidence presented at all of the indicted

incident, Petitioner must be legally and factually innocent of that specific charge. Prosecutors mid-trial claimed that Count 9 was a never before mentioned "drugging rape". When defense counsel objected, the Court sustained the objection. At that juncture, prosecutors advised the Court that the "drugging" rape was not part of the indictment and was other-act evidence. Prosecutors notified the Court and defense counsel that the defense did not need to defend that charge. However, later in trial, when they were unable to procure any testimony of the underlying indicted incident for Count[s] 9 and 14, the trial court allowed prosecutors to then substitute the "drugging" rape incident, that prosecutors already acknowledged was not part of the indictment and Petitioner did not need to defend, for the count they couldn't prove based upon the evidence upon which Petitioner was indicted. With Count 10, the Court of Appeals confirmed that no factual incident was provided in the indictment.

The only facts regarding Count 10 were that the factual incident occurred in Franklin County and during 2002 and 2008. The Court of Appeals confirmed the factual basis for Count 10 changed from whatever had been indicted to an alleged incident in Marion, Ohio in either 1998, 1999, or 2000. The Court of Appeals confirmed Petitioner was not convicted of what originally supported Count 10. During resentencing on March 27, 2018, the trial court could not determine from the trial transcripts, opening, closing, jury instructions or verdict forms, which factual incidents applied to the respective counts for which Petitioner was being resentenced. The trial court actually resentenced Petitioner on Counts 15 and 18, for two incidents, when prosecutors argued to the jury in closing that Counts 15 and 18 were one incident. On Count 15 and 18, the trial court resentenced Petitioner for two incidents, supposedly occurring in Marion, Ohio, for which Petitioner was never convicted. In fact, prosecutors never requested of the jury that it consider the alleged incidents the court used to resentence Petitioner. A review of the indictment, opening statement, closing argument, jury instructions and verdict forms, the only parts of the record to which the jury had access, will confirm for this court that the factual incident(s) used by the Court to resentence Petitioner appear nowhere. Petitioner was resentenced on Count 10 for what the Court of Appeals confirmed was an uncharged factual basis. Comparing Counts 10 and 11, the jury may have acquitted Petitioner for whatever factual basis anyone believes resulted in conviction for Count 10. For Count 16, a review of the indictment, opening, closing, jury instructions and verdict forms confirms that prosecutors never even assigned an actual factual basis to that count. Perhaps confirming Petitioner's unanimity and due process argument, the Court of Appeals and the prosecutors don't agree on what facts support Count 16. The Court of Appeals believes that Count 16 was a factual incident that occurred in Franklin County while prosecutors believe Count 16 is a different incident that occurred in Marion County. Petitioner respectfully suggests that when the Court of Appeals and the prosecutors who are the ones who indicted

and tried the case can't agree on what factual basis supports any count, there is clearly a due process, sufficiency, notice, double jeopardy, fair trial, and unanimity problem. A review of the same documents will further confirm that for Count 17, whatever the jury elected to apply to that count cannot be determined with any degree of certainty. The lack of unanimity impacted Petitioner's resentencing, notwithstanding any effort by the state courts to find that the jury's verdicts were unanimous. With Counts 8 through 18, Petitioner was indicted only with alleged crimes that occurred in Franklin County, Ohio, between 2002 and 2008. After what Court of Appeals coined "Serial Amendments", prosecutors then sought conviction for alleged "other-acts" that occurred in Marion County, Ohio, between 1998 and 2001. Defense counsel repeatedly sought a mistrial as he acknowledged being unprepared to defend any allegation prior to 2002 in Marion, Ohio. Petitioner had witnesses under subpoena for the locations and time frames identified in the indictment. Then Court of Appeals Judge Gary Tyack [footnote omitted] during oral arguments stated:

> "So, that's part of what ties in here. Counsel has to prepare for a major trial based on what's in the indictment and bills of particulars. And, in this particular situation, all of a sudden you're mid-trial and the prosecution is throwing four (4) years of additional allegations in front of the jury and then arguing that the mere number of allegations is why this guy should be guilty of something . . . part of what you run into is you have no chance to create, to even investigate an alibi defense . . . for times that aren't alleged in the whole thing, you don't have a chance to tie down and bring in other witnesses . . . to contradict these folks. You just all of a sudden, you're in the middle of trial and the name of the game has changed . . . ". (Oral Arguments, August 23, 2016, 14 AP 679).

**Ground Ten:** Petitioner was denied his right to trial by jury guaranteed under the Sixth and Fourteenth Amendments to the United States Constitution whereby facts forming the basis for conviction [footnote omitted] and sentence must be conclusively determined by a trial jury and where in Petitioner's case those facts were determined by trial and appellate judges.

**Supporting Facts:** Prior to Petitioner's resentencing on March 27, 2018, Petitioner filed a motion with the trial court in advance of the proceedings requesting of the court that it confirm the factual incidents pertaining to the counts for which Petitioner was to be resentenced (10, 14, 15, 16, 17 and 18). The Court denied the motion. Since resentencing was to address allied offenses, Mr. Benton made the same request prior to the start of the hearing since in order to argue allied offenses the defense needed to know what facts the trial court was considering for each count. The court again denied the request. The court then resentenced Petitioner to

26

prison for counts where the court could not determine the facts decided by the jury. Ultimately, the court sentenced Petitioner to prison for alleged crimes that were never even presented to the jury for conviction. Prosecutors were permitted to introduce without limitation as many other-act allegations as they needed and then select what "other-acts" they wished to apply to any count for which they were unable to prove the factual bases for the indicted crimes. Count 9 and Count 14, for example, were indicted as one factual incident. The Court of Appeals confirmed that no evidence was presented of the entire alleged incident. Prosecutors mid-trial claimed that Count 9 was a never before mentioned "drugging rape". However, earlier in trial, when defense counsel objected to that evidence, the Court sustained the objection. At that juncture, prosecutors advised the Court that the "drugging" rape was not part of the indictment and was other-act evidence. Prosecutors notified the Court and defense counsel that the defense did not need to defend that charge. Later in trial, when they were unable to procure any testimony of the underlying indicted incident for Count 9 and 14, the trial court allowed prosecutors to then substitute the "drugging" rape incident, that prosecutors already acknowledged was not part of the indictment for what they couldn't prove. With Count 10, the Court of Appeals confirmed that no factual incident was provided in the indictment. The only facts regarding Count 10 were that the factual incident occurred in Franklin County and during 2002 and 2008. The Court of Appeals confirmed the factual basis for Count 10 changed from whatever had been indicted to an alleged incident in Marion, Ohio, in either 1998, 1999 or 2000. During resentencing on March 27, 2018, the trial court could not determine from the trial transcripts, opening, closing, jury instructions, or verdict forms, which factual incidents applied to the respective counts for which Petitioner was being resentenced. The trial court actually resentenced Petitioner on Counts 15 and 18, for two incidents, when prosecutors argued to the jury in closing that Counts 15 and 18 were one incident. On Count 15 and 18, the trial court resentenced Petitioner for two incidents, supposedly occurring in Marion, Ohio, for which Petitioner was never convicted. In fact, the record confirms that prosecutors never requested of the jury that it consider the alleged incidents the court used to resentence Petitioner. A review of the indictment, opening statement, closing argument, jury instructions and verdict forms, the only parts of the record to which the jury had access, will confirm for this court that the factual incident(s) used by the Court to resentence Petitioner appear nowhere. Petitioner was resentenced on Count 10 for what the Court of Appeals confirmed was an uncharged factual basis. Comparing Counts 10 and 11, the jury may have acquitted Petitioner for whatever factual basis anyone believes resulted in conviction for Count 10. For Count 16, a review of the indictment, opening, closing, jury instructions, and verdict forms confirms that

prosecutors never even assigned an actual factual basis to that count. Perhaps confirming Petitioner's unanimity, *Apprendi* and due process argument, the Court of Appeals and the prosecutors don't agree on what facts support Count 16. The Court of Appeals believes that Count 16 was a factual incident that occurred in Franklin County while prosecutors believe Count 1 6 occurred in Marion County. Petitioner respectfully suggests that when the Court of Appeals and the prosecutors who are the ones who indicted and tried the case can't agree on what factual basis supports any count, there is clearly a due process, sufficiency, notice, double jeopardy, fair trial, unanimity, and *Apprendi* problem. A review of the same documents will further confirm that for Count 17, whatever the jury elected to apply to that count cannot be determined with any degree of certainty. The lack of unanimity impacted Petitioner's resentencing, notwithstanding any effort by the state courts to find that the jury's verdicts were unanimous. With Counts 8 through 18, Petitioner was indicted only with alleged crimes that occurred in Franklin County, Ohio between 2002 and 2008. After what Court of Appeals coined "Serial Amendments", prosecutors then sought conviction for alleged "other-acts" that occurred in Marion County, Ohio between 1998 and 2001.

Second Amended Petition, ECF No. 70, PageID 7639-62.

### The Warden's Return

#### Non-Cognizable Claims

##### Venue

The Warden asserts that, to the extent Petitioner is complaining of the venue of trial (Franklin County), his claim is not cognizable under the United States Constitution (Return, ECF No. 73, PageID 13877-80). In this same section, the Warden argues "Armengau had no federal constitutional right to prove [sic] 'beyond a reasonable doubt' that the crimes for which he was convicted were committed in Franklin County, Ohio." *Id.* at PageID 13879.

#### Other Acts Evidence

To the extent Petitioner claims "other acts" evidence was improperly admitted against him,

the Warden asserts this claim is also not cognizable. *Id.* at PageID 13880-81.

### Improper Indictment

The Warden notes Petitioner's claim in Grounds Two and Six that the indictment in this case "failed to inform him of the nature of the charges, and the trial court failed to obtain subject matter jurisdiction for crimes were never presented to the grand jury or in any charging instrument." (ECF No. 73, PageID 13881, quoting Second Amended Petition, ECF No. 70, PageID 8641-42 and 7651-52). Noting that the Fifth Amendment's grand jury guarantee does not apply to the States, the Warden asserts this claim is non-cognizable. (ECF No. 73, PageID 13881, citing *Hurtado v. California*, 110 U.S. 516, 537-538 (1884); and *Branzburg v. Hayes*, 408 U.S. 665 (1972)).

### Lack of Specificity in the Indictment

The Warden asserts Petitioner's claim of lack of specificity in the indictment is also not cognizable (ECF No. 73, PageID 13883-87).

### Jury Instruction Error

The Warden notes Petitioner claims in his Fourth Ground for Relief that the trial court committed error in instructing the jury and asserts jury instruction error is not ordinarily cognizable in habeas (ECF No. 73, PageID 13887-89).

### State Law Claims

The Warden notes "In his seventh ground for relief, Armengau alleges an equal protection violation when the Ohio courts "intentionally disregarded the law set by their respective Courts."

(ECF No. 73, PageID 13889, quoting Second Amended Petition, ECF No. Doc. No. 70, PageID 7653-54). The Warden argues this claim is also not cognizable in habeas. *Id.* at PageID 13889-90.

### Actual Innocence

The Warden asserts Petitioner's actual innocence claim in Ground for Relief Eight is not cognizable in habeas. *Id.* at PageID 13890-91.

### Affirmative Defenses

### Procedural Default

The Warden asserts Armengau has procedurally defaulted claims in Ground One related to Counts 2 and 16 because they were not fairly presented to the state courts as federal constitutional claims (ECF No. 73, PageID 13896). He makes the same assertion as to Ground Two respecting Counts 2, 3, and 8. Regarding "other acts" evidence, the Warden asserts that claim was presented to the state courts as a trial court error, but is presented here as a prosecutorial misconduct claim. *Id.*

The Warden further asserts Armengau's jury instructions claim in Ground Four is procedurally defaulted for failure to make a contemporaneous objection. *Id.* at PageID 13898-902.

Petitioner asserts he raised Grounds One through Seven and Ground Nine in his postconviction motion for dismissal. The Tenth District held these claims were barred, at least in part, by Ohio's doctrine of *res judicata* in criminal cases. The Warden asserts this procedural default as a bar (ECF No. 73, PageID 13902-04).

As to Ground Nine on jury unanimity, the Warden asserts it is procedurally defaulted by Armengau's failure to appeal to the Supreme Court of Ohio from denial of the claim by the Tenth

District (ECF No. 73, PageID 13904-05).

Respondent reads Ground Ten as alleging "that the facts purporting to form the factual basis for his conviction and sentence were determined by judicial fact-finding and not by the jury." (ECF No. 73, PageID 13906, citing ECF No. 70, PageID 7661-62). Respondent asserts this claim is also barred by *res judicata*. *Id.*

The Warden also responds on the merits to Petitioner's first, seventh, ninth, and tenth grounds for relief (Return, ECF No. 73, PageID 13907-21).


### Petitioner's Reply[4]

#### Fair Presentation

Petitioner first argues that he has fairly presented all his claims to the Ohio courts (ECF No. 77, PageID 13929-32). As relevant precedent for what constitutes "fair presentation," he relies repeatedly on *Gartrell v. Lynaugh,* 833 F. 2d 527 (5th Cir. 1987). There is, however, published precedent from the Sixth Circuit which is thirty years newer than *Gartrell* and holds a claim is fairly presented if the petitioner

> (1) relied upon federal cases employing constitutional analysis; (2) relied upon state cases employing federal constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law.

*Hand v. Houk*, 871 F.3d 390, 418 (6th Cir. 2017).

Petitioner complains that the record is incomplete:

---

[4] Petitioner timely filed his Reply on July 27, 2021 (ECF No. 77). Because of its extraordinary length (226 pages). the Court granted Petitioner leave to file a summary which he did on August 2, 2021 (ECF No. 81). These two documents will be read together as Petitioner's Reply.

> the docket (PagelD 6914-6921) establishes that Petitioner filed
> multiple Notices of Supplemental Authority and Motions for Leave
> to File Supplemental Authority, all which were granted. From what
> Petitioner has received, none· of those documents are in the record
> filed with this Court.

(Reply, ECF No. 77, PageID 13928, n. 2). Magistrate Judge Deavers' Order for Answer required

the Warden to file an answer conforming to the requirements of Rule 5 of the Rules Governing §

2254 Cases (ECF No. 8, PageID 239). Rule 5 does not require the Respondent to file in the habeas

court a copy of everything filed in the state courts. To the extent that something is omitted which

a petitioner believes is necessary for decision of the case, a petitioner may move to expand the

record under Habeas Rule 7.

Petitioner complains that "several documents from the record appear not to have been filed

or provided to Petitioner pursuant to this Court's May 27th and/or 28th, 2021 Order (Doc. 61, 62)."

Actually ECF No. 61 strikes the appearance of attorney John Gonzalez who purported to be

appearing in a capacity not permitted by this Court's Local Rules. Petitioner cites a number of

additional documents he says he has not received (ECF No. 77, PageID 13929), but the record had

not been ordered expanded to include those documents as of the time the Reply was filed.

Regarding these documents, the Magistrate Judge has ordered either that the record be expanded

to include them or that Respondent provides reference to where they appear (ECF No. 86) and the

Warden has responded as ordered (ECF No. 92).


**Petitioner's Statement of Facts**


The Reply next contains a Statement of Facts, which appears to be an argumentative

summary of the evidence from Petitioner's perspective (ECF No. 77, PageID 13932-46). With

respect to findings of fact, this habeas Court is bound by state court findings, including those made by the Tenth District Court of Appeals, unless Petitioner shows those findings to be in error by clear and convincing evidence. 28 U.S.C. § 2254(e). That showing must be made from evidence already of record in the state court proceedings. *Pinholster, supra.* That is to say, this habeas court cannot make a *de novo* determination of the facts.

Repeatedly in his Statement of Facts, Petitioner makes assertions of fact with no record reference. This violates Magistrate Judge Deavers' Order for Answer which requires "All papers filed in the case thereafter [after filing of the State Court Record] by each party shall include record references to the PAGEID number." (ECF No. 8, PageID 240). At PageID 13935-36, Petitioner purports to repeat comments made to the media by a Major Randy Caryer of the Marion Police. At PageID 13937, n.8, he purports to present facts that occurred September 17, 2008, in a court in Marion, Ohio, involving accuser K.R. At PageID 13938, n. 11, he asserts that "[d]uring multiple pretrial hearings prosecutors repeatedly affirmed that all the alleged incidents with regards to these counts occurred in Petitioner's Columbus Office." On the same page he asserts that accuser L.M.'s account of her referral to him is incorrect. At PageID 13939, he asserts accuser L.M. "was charged criminally for beating her young daughter in 2003 (Trial Exhibit H-5, Case No. 2003 CRB 8472, Domestic Violence Case Number)." Whether this is a reference to a trial exhibit in this case or in the domestic violence case, the exhibit is not in the record. Petitioner also relies on an affidavit by a Diane Caldwell attached to his Petition (ECF No. 1, Ex. D. This Affidavit was not part of the State Court Record and this Court is therefore barred from considering it by *Pinholster.*

**Non-Cognizable Claims**

Petitioner asserts that he submitted his sufficiency of the evidence claim on direct appeal and the Tenth District elected instead to decide that claim as if it were about venue. Petitioner argues his case "represents an unreasonable application of federal and state law and an unreasonable determination of facts based on the record. 28 U.S.C. §2254 (d)(l) and (d)(2)" (ECF No. 77, PageID 13949). That is not the correct standard. Under 28 U.S.C. § 2254(d)(1), the state courts' decisions on claims of federal constitutional violations are entitled to deference unless they are contrary to or objectively unreasonable applications of United States Supreme Court precedent. On the other hand, we do not sit as an appellate court to decide whether any state court committed an error of state law. Instead, we are bound by state court determinations of state law. *Bradshaw v. Richey*, 546 U.S. 74 (2005).

Petitioner then, under this heading of Non-Cognizable Claims argues the merits of his Grounds for Relief for 159 pages as follows: Ground One at PageID 13948-14005[5]; Ground Two at PageID 14005-36; Grounds Three and Six, argued together at PageID 14036-81; Ground Four at PageID 14081-86; Ground Seven at PageID 14087-91; Ground Eight at PageID 14091-95; Ground Nine at PageID 14095-104; and Ground Ten at PageID 14105-07.

---

[5] Throughout these 50+ pages, Petitioner repeatedly cites to the exhibits attached to ECF No. 54. The Magistrate Judge has twice held these exhibits cannot be added to the record (ECF Nos. 64 and 71, based on *Pinholster, supra*.) Petitioner has objected to both of those decisions. S. D. Ohio Civ. R. 72.3 provides "When an objection is filed to a Magistrate Judge's ruling on a non-case dispositive motion, the ruling remains in full force and effect unless and until it is (1) stayed by the Magistrate Judge or a District Judge, or (2) overruled by a District Judge." Since the Magistrate Judge's *Pinholster* ruling remains in effect, the exhibits will not be considered in rendering this Report.

**Exhaustion, Procedural Default, and Waiver**

Petitioner argues that he has exhausted all available state court remedies and that he has neither procedurally defaulted nor waived any of his claims (ECF No. 77, PageID 14107-33).

**Resentencing**

Petitioner contends that "whatever may have been used to determine the facts for the counts upon which Petitioner was resentenced, was obtained from uncharged other-acts" (Reply, ECF No. 77, PageID 14133).

> It appears that the trial court at resentencing considered facts for each count that were different from the facts considered by the Court at the time of sentencing and which were different than the facts considered by the jury for conviction. A court is without jurisdiction to impose a sentence for an offense not charged in the indictment. *United States v. Cotton,* 535 U.S. 625 [(2002)].

*Id.* at PageID 14134.  And again

> At resentencing on March 27, 2018, the defense requested the Court provide the parties with the underlying factual basis for each count for which Appellant was convicted so that the defense could properly argue the respective sentencing issues (Doc. 28-3, PageID 6541, Tp. 15). The trial court refused the request and failed to provide the facts underlying each count.

*Id.* at PageID 14142.

**Claims and Issues Assertedly Not Challenged or Addressed by Respondent**

Petitioner asserts there are some claims he has made which Respondent has not addressed. "Aside from some general reference Respondent does not appear to provide any specific analysis

to Petitioner's claims of Fair Trial, Prosecutorial Misconduct, or constructive amendment of the charging document." (ECF No. 77, PageID 14147).

# Analysis

The following table sets forth the relationships, as the Magistrate Judge understands them, between accusers, counts of the Indictment and the verdicts.

| Accuser | Counts Charged | Verdict |
|---------|----------------|---------|
| CC | 1, 2, 3 | Guilty on Count 2 – sentenced to time served<br>Acquitted on Counts 1 & 3 |
| LG | 4, 5 | Acquitted |
| AC | 6,7 | Acquitted |
| KR | 8 | convicted |
| LM | 9, 10, 11, 12, 13, 14, 15, 16, 17, 18 | Guilty on 10, 14, 15, 16, 17 & 18 (5 & 10 merged) ¶ 48<br>Acquitted on 9, 11, 12, 13 |

**Ground One:  Conviction on Insufficient Evidence**

In his First Ground for Relief, Petitioner claims he was convicted on insufficient evidence on Counts 2, 3, 8, 10, 14, 15, 16, 17, and 18.  As noted above, because Petitioner's custody on Count 2 ended before he filed his Petition, any claims regarding that count are no longer cognizable in habeas corpus and Count Two will not be considered further.  *Maleng v. Cook*, 490 U.S. 488 (1989).

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d

36

987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order

for a conviction to be constitutionally sound, every element of the crime must be proved beyond a

reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the
> light most favorable to the prosecution, any rational trier of fact
> could have found the essential elements of the crime beyond a
> reasonable doubt . . . . This familiar standard gives full play to the
> responsibility of the trier of fact fairly to resolve conflicts in the
> testimony, to weigh the evidence and to draw reasonable inferences
> from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting

*Jackson*). This standard "must be applied with explicit reference to the substantive elements of the

criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324). This rule was

recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law

which determines the elements of offenses; but once the state has adopted the elements, it must

then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after

enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110

Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner
> challenges the constitutional sufficiency of the evidence used to
> convict him, we are thus bound by two layers of deference to groups
> who might view facts differently than we would. First, as in all
> sufficiency-of-the-evidence challenges, we must determine
> whether, viewing the trial testimony and exhibits in the light most
> favorable to the prosecution, any rational trier of fact could have
> found the essential elements of the crime beyond a reasonable doubt.
> See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.
> Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-
> evaluate the credibility of witnesses, or substitute our judgment for
> that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th
> Cir. 1993). Thus, even though we might have not voted to convict a
> defendant had we participated in jury deliberations, we must uphold

> the jury verdict if any rational trier of fact could have found the
> defendant guilty after resolving all disputes in favor of the
> prosecution. Second, even were we to conclude that a rational trier
> of fact could not have found a petitioner guilty beyond a reasonable
> doubt, on habeas review, we must still defer to the state appellate
> court's sufficiency determination as long as it is not unreasonable.
> See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus

case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to

the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*,

541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc);

*Parker v. Matthews*, 567 U.S. 37, 43 (2012).

> We have made clear that *Jackson* claims face a high bar in federal
> habeas proceedings because they are subject to two layers of judicial
> deference. First, on direct appeal, "it is the responsibility of the jury
> -- not the court -- to decide what conclusions should be drawn from
> evidence admitted at trial. A reviewing court may set aside the jury's
> verdict on the ground of insufficient evidence only if no rational trier
> of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.
> S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam).
> And second, on habeas review, "a federal court may not overturn a
> state court decision rejecting a sufficiency of the evidence challenge
> simply because the federal court disagrees with the state court. The
> federal court instead may do so only if the state court decision was
> 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S.
> ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43

(2012) (per curiam). The federal courts do not make credibility determinations in reviewing

sufficiency of the evidence claims. *Brooks v. Tennessee,* 626 F.3d 878, 887 (6th Cir. 2010).

*Thompson v. Skipper*, 981 F.3d 476 (6th Cir., 2020). "To evaluate a sufficiency-of-the-evidence

claim, we consider 'whether, after viewing the evidence in the light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime beyond

a reasonable doubt.' *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson v. Virginia,*

443 U.S. 307, 319 (1979)). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id*. (quoting *Jackson*, 443 U.S. at 324)."

The state court's application "must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *Nagy*, 962 F.3d at 199 (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014)). In other words, "relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *Woodall*, 572 U.S. at 427 (quoting *Harrington v. Richter,* 562 U.S. 86, 103 (2011)).

Together, *Jackson* and AEDPA's two layers of deference dictate that "a federal court's 'review of a state-court conviction for sufficiency of the evidence is very limited.'" *Tackett v. Trierweiler,* 956 F.3d 358, 367 (6th Cir. 2020) (quoting *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018)).

A habeas court cannot consider post-trial evidence in deciding a *Jackson v. Virginia* claim. *McDaniel v. Brown*, 558 U.S. 120 (2010).

> In order to demonstrate that the state court's decision was based on an unreasonable determination of the facts under § 2254(d)(2), a petitioner must both establish the "unreasonable determination" and show "that the resulting state court decision was 'based on' that unreasonable determination."

*Titlow v. Burt*, 680 F.3d 577, 585 (6th Cir. 2012)(rev'd on another issue *Burt v. Titlow*, 571 U.S. 12, 20 (2013). *quoting Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011).

Petitioner does not state in the Second Amended Petition itself what elements of the convicted crimes were not supported by sufficient evidence. However, in his Reply he claims the State failed to prove that the location of the offenses with which he was charged was in Franklin

County, Ohio, as alleged in the Indictment (Reply, ECF No. 77, PageID 13949). He asserts the Tenth District Court of Appeals, in order "to avoid reversing the convictions, . . . simply ignored the sufficiency issue raised by Petitioner." Further, he claims, the "location of the crime charged is a material "fact" that the state is required to prove." *Id.* citing *Knight v. State*, 54 Ohio State 365 (1896) [the location of the crime is an essential fact and essential element that must be proven beyond a reasonable doubt because it is the place of the commission of the offense charged].

Petitioner correctly notes that it is state law which determines the elements of a crime which must be proven beyond a reasonable doubt to satisfy the *Jackson* standard (Reply, ECF No. 77, PageID 13950, citing *In re Winship*, 397 U.S. 358 (1970)).

Petitioner asserts he presented this location-of-the-crime claim to the Tenth District on direct appeal, but that court decided a different claim, a location-of-the-trial claim (Reply, ECF No. 77, PageID 13950-52).

On appeal Armengau presented the relevant sufficiency of the evidence claim as Assignment of Error VI:

> [VI.] The trial court erred in denying Javier Armengau's Crim.R. 29 motion for acquittal, and violated his rights to due process and a fair trial when, in the absence of sufficient evidence, it convicted him of counts 8, 10, 14, 15, 17, and 18.

*Armengau I* at ¶ 53, quoting Armengau's appellate brief (State Court Record, ECF No. 72, Ex. 8). The Brief sets forth the following Issue Presented for Review as to this Assignment of Error: "Is a conviction based upon insufficient evidence when venue is not proved beyond a reasonable doubt as charged in the indictment?" *Id.* at PageID 7730. Thus Petitioner himself (through counsel) characterized the issue presented as one of "venue."

In arguing Assignment of Error VI, Petitioner made it clear that his objection was that the State had presented no evidence that the offenses alleged in Counts 8, 10, 14, 15, 17, and 18

were committed in Franklin County as alleged in the indictment. *Id.* at PageID 7857. That was because, he claimed, "'Venue'" has two applications-locale and element. Locale venue is governed by R.C. 2901.12. But that statute has no impact on element venue. Element venue is controlled by the indictment and the evidence," *Id.* at PageID 7859, relying on *State v. Hampton,* 134 Ohio St.3d 447, ¶¶ 23-24 (2012).

The Tenth District decided Assignment of Error VI as follows:

### Venue

{¶ 104} Appellant's sixth assignment of error asserts that appellant's convictions under Counts 8, 10, 14, 15, 17, and 18 of the indictment must be reversed because the state failed to present evidence to support venue for those crimes as charged in the indictment, and the trial court accordingly erred in denying appellant's Crim.R. 29 motion made after the state rested. We disagree.

{¶ 105} Under Crim.R. 29(A), a court "shall order the entry of a judgment of acquittal of one or more offenses * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." Because a Crim.R. 29 motion questions the sufficiency of the evidence, "[w]e apply the same standard of review to Crim.R. 29 motions as we use in reviewing the sufficiency of the evidence." *State v. Hernandez*, 10th Dist. No. 09AP-125, 2009-Ohio-5128, 2009 WL 3090423, ¶ 6; *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37; *State v. Hubbard*, 10th Dist. No. 11AP-945, 2013-Ohio-2735, 2013 WL 3341171, ¶ 16. "Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict." *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, 2010 WL 1731238, ¶ 36, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In reviewing a challenge to the sufficiency of the evidence, an appellate court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. Where the evidence, "if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt," it is sufficient to sustain a conviction. *Id.*; *see also State v. Neil*, 10th Dist. No. 14AP-981, 2016-Ohio-4762, 2016 WL 3574549, ¶ 94;

*State v. Crosky*, 10th Dist. No. 06AP-655, 2008-Ohio-145, 2008 WL 169346, ¶ 43.

## 1. Legal Standards

{¶ 106} Venue commonly refers to the appropriate place of trial for a criminal prosecution within a state. "[J]urisdiction and venue are not the same, as the former denotes the power of the court to hear the case and the latter denotes the situs of trial." *State v. Giffin*, 62 Ohio App.3d 396, 403, 575 N.E.2d 887 (10th Dist. 1991), citing *State v. Loucks*, 28 Ohio App.2d 77, 274 N.E.2d 773 (4th Dist. 1971). Proper venue insures that "the state [does not] indiscriminately [seek] a favorable location for trial or [select] a site that might be an inconvenience or disadvantage to the defendant." *State v. Meridy*, 12th Dist. No. CA2003-11-091, 2005-Ohio-241, 2005 WL 123993, ¶ 12, quoting *State v. Gentry*, 61 Ohio Misc.2d 31, 34, 573 N.E.2d 220 (1990). The fact that venue is not a restriction on territorial jurisdiction is underscored by the provisions of Crim. R. 18(B) and R.C. 2901.12(K), which provide for a change of venue if the trial court finds that a fair and impartial jury cannot be seated in the court where the action is pending.

{¶ 107} Because venue is neither a jurisdictional nor a material element of a criminal offense, the indictment is only required to contain an allegation that the offense was committed within the jurisdiction of the court. *State v. Andrews*, 148 Ohio App.3d 92, 772 N.E.2d 167 (10th Dist. 2002). Even when multiple offenses are alleged in an indictment, an indictment is not rendered invalid where the "place has been stated once therein." *State v. Williams*, 53 Ohio App.3d 1, 557 N.E.2d 818 (10th Dist. 1988). While venue is not a material element of the offense as charged, it is a fact that the state must prove beyond a reasonable doubt unless waived by a criminal defendant. *State v. Hampton*, 134 Ohio St.3d 447, 2012-Ohio-5688, 983 N.E.2d 324, ¶ 22; *State v. Birt*, 2013-Ohio-1379, 5 N.E.3d 1000, ¶ 27. "Venue need not be proven in express terms; it may be established either directly or indirectly by all the facts and circumstances of the case." *State v. Jackson*, 141 Ohio St.3d 171, 2014-Ohio-3707, 23 N.E.3d 1023, ¶ 144.

{¶ 108} The indictment in the present case alleged for each count that the criminal conduct occurred "within the county of Franklin." (May 20, 2013 Indictment, Counts 1 through 18.) Appellant argues that for all but three of the counts for which he was convicted, the state failed to prove venue because it introduced no evidence at all that the crimes occurred in Franklin County: for Counts 8 (gross sexual imposition, K.R.), 10 (rape, L.M.), 14 (kidnapping, L.M.),

and 15, 17, and 18 (sexual battery, L.M.), the only evidence heard placed the offenses in Marion County. In contrast, for Counts 2 and 3 (public indecency and gross sexual imposition, C.C.), and Count 16 (sexual battery, L.M.), appellant concedes on appeal that the evidence supported venue in Franklin County. At the close of the state's case, the defense moved, unsuccessfully, for a Crim.R. 29 acquittal for those incidents for which the evidence established the location as Marion County. Appellant argues that the trial court erred when it denied his Crim.R. 29 motion.

{¶ 109} The state responds that any deficiency in the indictment was cured by subsequent amendment of either the indictment or the bill of particulars. We disagree. It is the language of the indictment that defines the venue for which the state bears the burden of proof. *Hampton, supra,* at ¶ 23. As stated above, the original indictment specified Franklin County as venue for all crimes. The state never amended the venue allegation in the indictment. Therefore, the state had to prove that venue was proper in Franklin County.

{¶ 110} The state also argues that all crimes took place as part of a course of criminal conduct across several jurisdictions, including Franklin County, establishing venue in Franklin County under the course of criminal conduct terms of R.C. 2901.12(H). We conclude that the state presented sufficient evidence to prove venue under the course of criminal conduct provisions in R.C. 2901.12(H).

## 2. Venue and Course of Criminal Conduct–R.C. 2901.12(H)

¶ 111} When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred. R.C. 2901.12(H). To establish a course of criminal conduct, the statute provides in relevant part:

(H) * * * Without limitation on the evidence that may be used to establish the course of criminal conduct, any of the following is prima-facie evidence of a course of criminal conduct:
(1) The offenses involved the same victim, or victims of the same type or from the same group.
(2) The offenses were committed by the offender in the offender's same employment, or capacity, or relationship to another.

43

(3) The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective.

(4) The offenses were committed in furtherance of the same conspiracy.

(5) The offenses involved the same or a similar modus operandi.

(6) The offenses were committed along the offender's line of travel in this state, regardless of the offender's point of origin or destination.

R.C. 2901.12(H).

{¶ 112} "R.C. 2901.12(G) and (H) are statutory reflections of the modern mobility of criminals to perform unlawful deeds over vast geographical boundaries." *State v. Draggo*, 65 Ohio St.2d 88, 90, 418 N.E.2d 1343 (1981). Consistent with this multi-county venue, "a grand jury of one county has authority to indict on offenses occurring in other counties provided that those offenses are part of a course of criminal conduct." *State v. Ahmed*, 8th Dist. No. 84220, 2005-Ohio-2999, 2005 WL 1406282, ¶ 11. The Supreme Court of Ohio confirmed the law as stated in *Ahmed* when it decided *Jackson* at ¶ 131:

> There is no constitutional or statutory provision that prohibited the Cuyahoga County Grand Jury from indicting Jackson for offenses that occurred in Erie and Lorain Counties as part of a course of criminal conduct that included crimes within Cuyahoga County. R.C. 2901.11 and 2901.12 permit a grand jury to indict an offender for offenses that occurred outside the county, provided that the offenses are part of the same course of criminal conduct that took place in the county in which the grand jury resides.

{¶ 113} The present case involves a series of offenses that fit four of the criteria enumerated in R.C. 2901.12(H). The victims were "of the same type, or from the same group" under R.C. 2901.12(H)(1), because they are associated with appellant's law practice as clients, relatives of clients, or employees. The offenses were committed "in the offender's same employment, or capacity, or relationship to another" under R.C. 2901.12(H)(2), again based on the centrality of appellant's law practice in his selection of victims. The offenses involved "the same or similar modus operandi" under R.C. 2901.12(H)(5), based on the grooming and exploitation of vulnerable female clients or relatives of clients. Finally, the offenses

44

were committed in furtherance of the same purpose or objective (sexual gratification). R.C. 2901.12(H)(3).

{¶ 114} A similar case involving abuse of clients in a professional practice is persuasively on point. In *Ahmed*, the defendant, a licensed obstetrician and gynecologist, operated medical offices in several counties. The grand jury in Cuyahoga County returned an indictment charging him with multiple counts of rape, sexual imposition, and sexual battery involving 37 former patients. The indictment specified that the offenses occurred at Ahmed's offices in Cuyahoga, Summit, and Geauga counties. After disposing of the preliminary question of whether the grand jury could return an indictment addressing the out-of-county crimes, the Eighth District Court of Appeals found that trial venue in Cuyahoga County for all offenses was appropriate: "The evidence at trial revealed that all of the victims were Ahmed's patients, all of the offenses occurred at his medical offices while the victims were seeking medical care from him, and while situated in a vulnerable position. Further, each victim identified the office location where the offense(s) occurred. Based on this evidence, we find that the State adequately proved that venue was proper." *Ahmed* at ¶ 18.

{¶ 115} *Ahmed* presented the same type of course of criminal conduct that the state alleges here. Based on this precedent and analysis of the applicable statutes governing venue, we conclude that the state proved venue was proper in Franklin County for Counts 8, 10, 14, 15, 17, and 18 of the indictment.

{¶ 116} Citing *Hampton*, appellant argues that because the indictment alleged the conduct associated with Counts 8, 10, 14, 15, 17, and 18 occurred in Franklin County, the state could only establish venue by proving that the alleged conduct occurred in Franklin County. We do not read *Hampton* so restrictively. *Hampton* involved a situation where all of the alleged criminal conduct occurred outside the county where the case was venued. Therefore, R.C. 2901.12(H) was not applicable. Moreover, the *Hampton* court noted that "[t]he General Assembly has given the state considerable flexibility with respect to establishing venue," citing R.C. 2901.12(G) as an example. *Hampton* at ¶ 23. *See also State v. Young*, 2017-Ohio-1400, 89 N.E.3d 175, ¶ 15–16 (finding no authority for proposition that an indictment must include "course of conduct" language when the state intends to proceed under R.C. 2901.12(H)). Lastly, appellant was on notice that the state would establish venue by proving the conduct occurred in Franklin County "or otherwise properly venued under R.C. 2901.12, the defendant, as part of a criminal course of conduct as defined in R.C.

45

2901.12(H)(1), which encompassed at least, Franklin and Marion Counties, Ohio." (June 1, 2014 Bill of Particulars at 6.) As previously noted, the indictment alleged and the state proved, that some of the alleged criminal conduct occurred in Franklin County and that the other offenses in Counts 8, 10, 14, 15, 17, and 18 were committed pursuant to a course of criminal conduct as defined in R.C. 2901.12(H).

**3. Conclusion**

{¶ 117} For all of these reasons, we overrule appellant's sixth assignment of error.

*Armengau I, supra.*

Armengau appealed to the Supreme Court of Ohio from this decision, represented by the same Assistant State Public Defender who had represented him before the Tenth District. He pleaded two relevant Propositions of Law:

> **First Proposition of Law:** This Court's decision in *Hampton* does not allow a defendant to be convicted of a crime when the indictment asserts the criminal conduct occurred in a specific county, and does not reference R.C. 2901.12, and all evidence presented demonstrates that the crime occurred in a different county than that named in the indictment. RC. 2901.12; *State v. Hampton*,134 Ohio St.3d 447, 2012-Ohio-5688, 983 N.E.2d 324.

> **Second Proposition of Law:** Revised Code 2901.12(1-1) is unconstitutional and violates Article I, Section 10 of the Ohio Constitution which requires that a criminal act be tried in the county in which it occurred. R.C. 2901.12(H); Article l, Section 10, Ohio Constitution.

(Memorandum in Support of Jurisdiction, State Court Record, ECF No. 72, Ex. 13, PageID 8041). Armengau admitted that the Ohio "intermediate appellate courts remain vexed by the import of *Hampton* and the precise requirements and legal effects set forth therein" and that the Tenth District had held Armengau's argument was "too restrictive a reading of *Hampton*." *Id.* at PageID 8046. He asked the Supreme Court of Ohio "accept this issue to determine whether an indictment that unequivocally represents a crime occurred in one county can be cured by R.C.2901.12." As

46

an alternative he asked the court to declare Ohio Revised Code § 2901.12(H) as interpreted by the Tenth District to be a violation of the Ohio Constitution. *Id.* at PageID 8047-48. The Ohio Supreme Court denied review in a form entry, *State v. Armengau*, 151 Ohio St. 3d 1511 (2018). (State Court Record, ECF No. 72, Ex. 14).

Petitioner presented this issue again to a different panel of the Tenth District on appeal from denial of his Presentence Motion for Acquittal on Resentencing. The Tenth District again denied relief based on *res judicata*, law of the case, and the failure of Armengau to persuade the appellate court that its prior decision on "venue" was in error. It noted that:

> {¶ 16} These are issues appellant could have raised in a motion to reconsider in *Armengau*, 2017-Ohio-4452.[4] Appellant did not file a motion to reconsider this court's decision in *Armengau*, 2017-Ohio-4452.

> {¶ 17} Appellant did, however, file an appeal with the Supreme Court. The Supreme Court did not accept his appeal for review. *See State v. Armengau*, 2018-Ohio-365. The Supreme Court also denied appellant's subsequent motion requesting reopening of appeal. *See State v. Armengau*, 2018-Ohio-1600. The Supreme Court denied another motion filed by appellant on April 30, 2018. Finally, the Supreme Court denied appellant's July 2, 2018 motion requesting the court grant motion and supplemental notice.

> {¶ 18} Finally, we note appellant has made another attempt to raise the same issues raised in this appeal and in his direct appeal in his appeal of the resentencing now pending before this court in *State v. Armengau*, 10th Dist. No. 18AP-300.

*Armengau II.* To the extent Petitioner believes *Armengau I* is a misinterpretation of *Hampton*, he has offered both the Tenth District and the Ohio Supreme Court ample opportunity to accept his view, without any success. This Court is therefore bound by the Tenth District's interpretation of *Hampton. Bradshaw, supra.*

"Venue" is a term that has, in recent years, come into common usage in American English to denote where some event has occurred or will occur. Thus Americans discuss "sports venues"

or "concert venues" in common parlance. Brian Garner writes that the word in legal usage means "(1) originally the neighborhood from which a jury had to be selected; (2) the county or other territorial unit over which a trial court had jurisdiction; or (3) the proper or a possible place for the trial of a lawsuit." Garner, A Dictionary of Modern Legal Usage 2nd, at 916 (Oxford Univ. Press 1995). None of these meanings fits comfortably with the claims Petitioner makes in his First Ground for Relief. Indeed, he criticizes the Tenth District for deciding what it labeled as a venue issue, but it was the same issue he had himself labeled "venue" in his appellate brief.

Instead of arguing about venue in any of these senses, Armengau is arguing about venue in the sense of location of the offense. In sum, he claims that the location of the offense as charged in the indictment is a material or substantive element which must be proved beyond a reasonable doubt. There is no dispute that the conduct charged as criminal in Counts 8, 10, 14, 15, 17, and 18 occurred (if at all[6]) in Marion County, Ohio, and not in Franklin County, Ohio. Nor is there any dispute that the indictment charged this conduct occurred in Franklin County and was never amended. The State did provide an amended bill of particulars prior to trial that alleged conduct in Marion County, but did not amend the indictment.

Under *Jackson v. Virginia, supra*, the State must prove all the substantial or material elements of a charged crime by proof beyond a reasonable doubt. Petitioner correctly asserts that it is state law which determines what are the elements. (Reply, ECF No. 77, PageID 13950, citing *Winship*).

Armengau relies principally on *State v. Hampton,* 134 Ohio St.3d 447 (2012). Hampton was indicted on charges he committed a home invasion and inflicted serious injuries in Franklin

---

[6] The jury found, applying the beyond a reasonable doubt standard, that the conduct occurred. Petitioner does not concede that point and the Magistrate Judge respects his denial with the phrase "if at all." It is not an expression of personal doubt, which would be inappropriate.

County, Ohio. During the State's case in chief, the lead detective testified "he had just learned that these offenses had occurred in Fairfield County, not in Franklin County." *Id.* at ¶ 5. The court took a motion for acquittal under Ohio R. Crim P. 29 under advisement, but granted it after defense rested without presenting evidence, holding the State had failed to prove "venue." The State appealed, but the Tenth District held the State had no right to appeal a judgment of acquittal. The Supreme Court of Ohio granted review on three propositions of law proposed by the State and decided:

{¶ 18} In the state's second proposition of law, the state suggests that lack of venue cannot result in an "acquittal" under Crim.R. 29 because motions under that rule are limited to claims of lack of proof of one or more material elements of the offense. Venue, the state argues, is not a material element of the offense.

{¶ 19} The Ohio Constitution, Article I, Section 10 provides an accused the right to "a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed." We have stated, "Section 10, Article I of the Ohio Constitution fixes venue, or the proper place to try a criminal matter * * *." *State v. Headley,* 6 Ohio St.3d 475, 477, 453 N.E.2d 716 (1983). We have also stated, "A conviction may not be had in a criminal case where the proof fails to show that the crime alleged in the indictment occurred in the county where the indictment was returned." *State v. Nevius,* 147 Ohio St. 263, 71 N.E.2d 258 (1947), paragraph three of the syllabus. We have also stated that "it is not essential that the venue of the crime be proven in express terms, provided it be established by all the facts and circumstances in the case, beyond a reasonable doubt, that the crime was committed in the county and state as alleged in the indictment." *State v. Dickerson,* 77 Ohio St. 34, 82 N.E. 969 (1907), paragraph one of the syllabus.

{¶ 20} Under Article I, Section 10 and R.C. 2901.12, evidence of proper venue must be presented in order to sustain a conviction for an offense. *Headley* at 477, 453 N.E.2d 716, citing *State v. Draggo,* 65 Ohio St.2d 88, 90, 418 N.E.2d 1343 (1981); *State v. Gribble,* 24 Ohio St.2d 85, 263 N.E.2d 904 (1970); *Nevius,* 147 Ohio St. 263, 71 N.E.2d 258.

{¶ 21} In *Nevius,* we affirmed the decision of the court of appeals as it related to the finding of insufficient evidence relating to venue,

49

but we then reversed the order of the court of appeals remanding the matter for a new trial, instead ruling that the trial court should have granted a directed verdict in favor of the defendant on count four of the indictment, and we discharged the defendant accordingly on that count. *Id.* at 266–267, 287, 71 N.E.2d 258. This common-law concept of a directed verdict has now been memorialized through Crim.R. 29.

{¶ 22} In arguing that insufficient proof of venue does not justify acquittal, the state would limit application of Crim.R. 29 to situations in which the elements of the offense have not been proved beyond a reasonable doubt. The plain language of the rule itself does not distinguish between "material" elements and "immaterial" elements. Instead, the plain language of the rule itself simply indicates that a judgment of acquittal is appropriate when "the evidence is insufficient to sustain a conviction of such offense or offenses." If the state fails to produce evidence of proper venue, then the evidence is insufficient to sustain a conviction of such offense or offenses. But, as stated above, Crim.R. 29 does not limit itself to elements or "material" elements of the offense. The question is whether "the evidence is *insufficient to sustain a conviction* of such offense." (Emphasis added.) Most jurisdictions place some burden upon the state to prove venue—whether it be beyond a reasonable doubt, by a preponderance of the evidence, or by some evidence— because it is a fact of the crime. *See* 4 LaFave, *Criminal Procedure,* Section 16.1(c), at 714 (3d Ed.2007). And Ohio has required proof of venue beyond a reasonable doubt to sustain a conviction. *Knight v. State,* 54 Ohio St. 365, 377, 43 N.E. 995 (1896); *Dickerson,* 77 Ohio St. 34, 82 N.E. 969, paragraph one of the syllabus; *Nevius,* 147 Ohio St. 263, 71 N.E.2d 258.

{¶ 23} Crim.R. 29 is clear and straightforward and does not limit its application to elements of the offense alone—the trial judge may grant an acquittal when there is a failure of proof to sustain a conviction. Nothing in the Constitution, statutes, or rules requires a defendant to raise the issue of venue before trial. The state has the obligation to ensure the proper venue within the indictment, for the indictment puts the defendant on notice and the state to its proof. The General Assembly has given the state considerable flexibility with respect to establishing venue when the state cannot determine the precise location at which the offense took place. *See, e.g.,* R.C. 2901.12(G), which allows for an offense that was committed in any of two or more jurisdictions to be charged in any of those jurisdictions.

> {¶ 24} Over a century of well-established jurisprudence clearly mandates that a motion for judgment of acquittal must be granted when the evidence is insufficient for reasonable minds to find that venue is proper. Here, it is undisputed that all of the events in question occurred in Fairfield County, not Franklin County, as alleged in the indictment. Under *Headley,* Crim.R. 29, R.C. 2901.12, and the well-established common-law rule set forth in cases like *Nevius,* a judgment of acquittal may be entered when the state has failed at trial to prove the venue of the offense as alleged in the indictment.

*Hampton, supra.*

*Hampton* conflates under the label "venue" the questions of the proper place for trial and location of the offense, but does hold location of the offense as alleged in the indictment must be proved beyond a reasonable doubt. On the other hand, it does recognize the General Assembly, presumably constitutionally, "has given the state considerable flexibility with respect to establishing venue when the state cannot determine the precise location at which the offense took place." The opinion provides no discussion of Ohio Revised Code § 2901.12(H), the statute relied on by the Tenth District in this case.

What is the proper application of *Hampton* to this case? That is a question of Ohio, not federal, law and on questions of state law, federal habeas courts are bound by state court rulings. *Bradshaw, supra.* The Tenth District plainly understood *Hampton* as relevant binding precedent, but did not believe the decision should be read as narrowly as Armengau insisted. It noted the *Hampton* court had recognized the flexibility the General Assembly had given counties in complying with the Ohio Constitution in course-of-conduct/multiple county situations and found Ohio Revised Code § 2901.12(H) applied in this case. It also noted that *Hampton* was a one offense indictment, not involving course of conduct, where all the charged misconduct occurred in a county other than the county of indictment.

*Hampton* was in part an enforcement of the Ohio Constitution, Article I, Section 10 which

51

provides an accused the right to "a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed." While the speedy and public trial and impartial jury requirements are embodied in the Sixth Amendment and all of these are made applicable to the States by the Fourteenth Amendment, the U.S. Constitution says nothing about trial in the same county where the offenses are alleged to have occurred[7]. Nor can Armengau's argument be successfully construed as a federal right to grand jury indictment for state crimes, because no such right exists. The Grand Jury Clause of the Fifth Amendment is not applicable to the States. *Hurtado v. California*, 110 U.S. 516 (1884); *Branzburg v. Hayes,*408 U.S. 665, 687-88 n. 25 (1972); *Gerstein v. Pugh,* 420 U.S. 103 (1975); *Williams v. Haviland*, 467 F.3d 527 (6th Cir. 2006)(*Apprendi* does not change this result).

Petitioner has no federal due process right to have this Court enforce his Ohio Article I, § 10, right. Failure to abide by state law is not itself a constitutional violation. *Roberts v. City of Troy*, 773 F.2d 720 (6th Cir. 1985). Violation by a State of its own procedural rules does not necessarily constitute a violation of due process. *Bates v. Sponberg*, 547 F.2d 325 (6th Cir. 1976); *Ryan v. Aurora City Bd. of Educ.*, 540 F.2d 222, 228 (6th Cir. 1976). "A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993).

There is no federal constitutional right to be tried for a crime in the same county where a grand jury charges the crime occurred. Armengau's First Ground for Relief should be dismissed as not cognizable in federal habeas corpus.

---

[7] The Vicinage Clause requires that federal criminal trials be held in the judicial district in which they are alleged to have occurred and that those districts be determined in advance.

**Ground Two:  Lack of Notice of Crimes Charged**

In his Second Ground for Relief in the Second Amended Petition, Armengau claims he was denied due process of law when the indictment did not adequately inform him of the "specific crimes" he was charged with committing in that the prosecutors changed the date range and the location(s) of the offense(s).

In the Reply, however, Armengau labels Ground Two as being about "Notice, Defective Indictment & Other Acts" (ECF No. 77, PageID 14005).  He argues

> What Ohio law doesn't permit is the use of "other acts" to form the factual basis of any charged crime. By Respondent's own admission[8], the convictions in Petitioner's case cannot stand as the factual basis for each crime was established by the introduction and substitution of "other act" evidence.
>
> * * *
>
> Respondent fails to note for this Court where Petitioner was provided notice that he would have to defend allegations for Counts 8, 10, 14, 15, 16, 17 or 18 that occurred in Marion, Ohio or that for counts 10 and 14 through 18, that he would have to defend allegations in 1998, 1999 or 2000.

*Id.*

Petitioner begins his argument in the Reply on this claim by alleging he was subjected to a constructive amendment of the indictment (ECF No. 77, PageID 14006).  He asserts that under both Ohio law and the United States Constitution, constructive amendments are forbidden.  This argument misses an important distinction.  The Ohio Constitution requires a grand jury indictment for state felonies to be tried in Ohio courts.  Likewise the Fifth Amendment of the United States Constitution requires grand jury indictment for federal felonies to be tried in federal courts.  The

---

[8] Petitioner gives no record reference for this alleged admission.

prohibition against constructive amendment enforces the grand jury requirement in each set of courts. However, the Fifth Amendment grand jury clause is not applicable to the States. *Hurtado v. California*, 110 U.S. 516 (1884); *Branzburg v. Hayes,*408 U.S. 665, 687-88 n. 25 (1972); *Gerstein v. Pugh,* 420 U.S. 103 (1975); *Williams v. Haviland*, 467 F.3d 527 (6th Cir. 2006)(*Apprendi* does not change this result). Nor is the Ohio grand jury requirement enforceable in habeas corpus. Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). Armengau's constructive amendment argument is not cognizable because constructive amendments do not violate any federal right to and jury indictment in state courts.

Petitioner notes that his "other acts" argument under this Ground for Relief is not about the use of such evidence to convict a defendant by proving he has a bad character or has a propensity to crime, the usual argument against "other acts" evidence. Rather, his claim here is that "other act" evidence was substituted mid-trial for evidence of the crimes charged in the indictment (Reply, ECF No. 77, PageID 14008-36).

Respondent asserts Armengau has procedurally defaulted in presenting Ground Two as a federal constitutional claim to the Supreme Court of Ohio (Return, ECF No. 73, PageID 13896). Petitioner responds that "[t]he 'other-act' issues were raised in Propositions III, IV, V and VI to the Ohio Supreme Court." (Reply, ECF No. 77, PageID 14007). Those propositions of law as pleaded are as follows:

> **Third Proposition of Law:** If the purpose for which 404(B) evidence is sought to be introduced is already established by properly admitted evidence in the State's case-in-chief, then Evid.R. 403 precludes admission of those prior bad acts. R.C. 2945.59; Evid.R. 404(13); Evid.R. 403(H); *State v. Lowe,* 69 Ohio St.3d 527, 530, 1994-0hio-345, 63 N.E.2d 616; *State v. Burson*, 38 Ohio St.2d

157, 158,311 N.E.2d 526 (1974); *State v. Hector,* 19 Ohio St.2d 167, 249 N.E.2J 912 (1969); *State v. DeMarco,* 31 Ohio St.3d 191; 194, 509 N.E.2d 1256 (1987); *State v. Williams,* 134 Ohio St.3d 521, 2012-0hio-5695, 983 N.E.2d 1278.

**Fourth Proposition of Law:** Strictly construing prior bad acts evidence against admissibility does not allow the admission of testimony or evidence regarding non-criminal, consensual sexual encounters, absent highly specific, idiosyncratic facts such as those presented in *Williams.* R.C. 2945.59; Evid.R. 404(B); Evid.R. 403(8); *State v. Lowe,* 69 Ohio St.3d 527, 530, 1994-Ohio-345, 634 N.E.2d 616; *State v. Burson,* 38 Ohio St.2d 157, 158, 311 N.E.2d 526 (1974); *State v. Hector,* 19 Ohio St.2d 167, 249 N.E.2d 912 (1969); *State v. DeMarco,* 31 Ohio St.3d 191, 194, 509 N.E.2d 1256 (1987); *State v. Williams,* 134 Ohio St.3d 521, 2012~Ohio-5695, 983 N.E.2d 1278.

**Fifth Proposition of Law:** Strictly construing prior bad acts evidence against admissibility does not allow the admission of testimony or evidence regarding non-criminal, consensual sexual encounters, absent highly specific, idiosyncratic facts such as those presented in *Williams.* R.C. 2945.59; Evid.R. 404(8); Evid.R. 403(8); *State v. Lowe,* 69 Ohio St.3d 527, 530, 1994-Ohio-345, 634 N.E.2d 616; *State v. Burson,* 3R Ohio t.2d 157, 158, 31 J N.E.2d 526 (1974); *State v. Hector,* 19 Ohio St.2d I 67, 249 N.E.2d 912 (1969); *State v. DeMarco,* 31 Ohio St.3d 191, 194, 509 N.E.2d 1256 (l987); *State v. Williams,* 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278

**Sixth Proposition of Law:** When the State cannot provide a defendant with accurate information regarding the timeframe in which the alleged criminal conduct occurred, where it occurred, or the conduct at issue until its witness has testified at trial, a defendant is misled and prejudiced, and is entitled to mistrial. Crim.R. 7(D).

(Memorandum in Support of Jurisdiction, State Court Record, ECF No. 72, Ex. 13, PageID 8041-

42). On their face, these Propositions of Law do not present federal constitutional claims. Instead,

they exhibit the usual objections to other acts evidence, to wit, that it is "propensity" evidence,

used to convict a defendant because of his or her bad character. All of the case law cited is Ohio

case law. In the body of his Memorandum in Support of Jurisdiction, Armengau argued

Propositions of Law Three, Four, and Five together. *Id.* at PageID 8048-53. Nowhere in that argument does he claim the "other acts" evidence was substituted for the indicted conduct. Instead, the argument is all in terms of the propensity impact of other acts evidence. The Federal Constitution is not mentioned at all nor are any federal cases cited.

In arguing the Sixth Proposition of Law, Armengau states "[i]n his direct appeal, Mr. Armengau asserted that this course of litigation functioned to deny him his rights to a fair trial, due process of law, and double jeopardy protections." *Id.* at PageID 8056. Nowhere else in this argument does he mention any federal right or cite any federal case law or state case law referencing the United States Constitution.

To preserve a federal constitutional claim for presentation in habeas corpus, the claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995); *Riggins v. McMackin,* 935 F.2d 790, 792 (6th Cir. 1991). The claim must be fairly presented at every stage of the state appellate process. *Wagner v. Smith,* 581 F.3d 410, 418 (6th Cir. 2009).

A claim is fairly presented if the petitioner

> (1) relied upon federal cases employing constitutional analysis; (2) relied upon state cases employing federal constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law.

*Hand v. Houk,* 871 F.3d 390, 418 (6th Cir. 2017); *Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987); *accord*, *Whiting v. Birt*, 395 F.3d 602 (6th Cir. 2005); *McMeans v. Brigano,* 228 F.3d 674,

681 (6th Cir. 2000).

Merely using talismanic constitutional phrases like "fair trial" or "due process of law" does not constitute raising a federal constitutional issue. *Slaughter v. Parker,* 450 F.3d 224, 236 (6th Cir. 2006); *Franklin v. Rose,* 811 F.2d 322, 326 (6th Cir. 1987); *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000), *citing Petrucelli v. Coombe,* 735 F.2d 684, 688-89 (2nd Cir. 1984). Mere use of the words "due process and a fair trial by an impartial jury" are insufficient. *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006); *Blackmon v. Booker,* 394 F.3d 399, 400 (6th Cir. 2004)(same). "A lawyer need not develop a constitutional argument at length, but he must make one; the words 'due process' are not an argument." *Riggins v. McGinnis,* 50 F.3d 492, 494 (7th Cir. 1995).

Petitioner did not fairly present his convicted-on-other-acts evidence claim as a federal constitutional claim to the Supreme Court of Ohio. The claim is therefore procedurally defaulted and Ground Two should be dismissed.

**Ground Three: Denial of Due Process and Double Jeopardy Protection by Allowing Constructive Amendment and Refusing Unanimity Instruction**

In his Third Ground for Relief, Petitioner claims he was denied due process and double jeopardy protection when the trial court allowed constructive amendment of the indictment and refused a requested unanimity instruction. Those are at least the issues on the face of Ground Three in the Second Amended Petition. In the Reply, however, Armengau argues Ground Three together with Ground Six. In the Sixth Ground for Relief he claims he was denied due process "when he was tried and convicted for crimes for which he was never charged or indicted or noticed and for which the court failed to obtain subject matter jurisdiction." To make matters more confusing, he argues both Grounds for Relief under the label "Constructive Amendment, Double Jeopardy, Jury

Instructions, Defective Indictment & Notice" and then asserts "This issue is inextricably related to the sufficiency [of the evidence] arguments set-forth above."  (ECF No. 77, PageID 14036).

The combined argument on these two Grounds for Relief then occupies forty-five pages of the Reply (PageID 14036-81).  He begins with an argument about a criminal defendant's entitlement to notice of the "approximate time frame and at minimum, the general location as to where the crime(s) occurred. A defendant must also be advised of what he did (conduct)" *Id.* at PageID 14036.  Armengau asserts it is not only the indictment which is defective, but that no court has given him notice of the facts upon which he was convicted. "Petitioner has been deprived of his Constitutional right to notice before trial, during trial, during sentencing and after resentencing."  *Id.* at PageID 14041.

Petitioner then switches to his jury unanimity argument:

> A jury has a duty to unanimously agree to a particular set of facts. *United States v. Echeverry*, 698 F.2d 375 (9th Cir. 1983). The U.S. Constitution does require a unanimous verdict in state prosecutions. A jury must be unanimous in what facts are being considered to determine guilt.  Respondent does not dispute that as of today no one knows what "act or incident" constitutes any of the crimes for which Petitioner is imprisoned.

(Reply, ECF No. 77, PageID 14042).  Petitioner then argues the bill of particulars was insufficient to provide notice. *Id.* at PageID 14045-51.  He then switches back to a jury instruction argument. At PageID 14067, *et seq.*, he raises double jeopardy issues.  Then, without any notice of a change of direction, Petitioner turns back to notice issues.  *Id.*

Returning to the double jeopardy claim, Armengau asserts:

> United States Supreme Court decisions are clear that the charging document itself must, on its face, protect a defendant from double jeopardy. Such holdings confirm that the federal constitutional requirement of double jeopardy protection is preemptive and must be reflected in the charging document.
>
> * * *

> Clearly established federal law requires the protection be provided
> at the inception of the filing of the criminal charge.

*Id.* at PageID 14079.  However instead of citing any Supreme Court decisions, he cites instead to *State v. Freeman,* 2010-Ohio-3714 (Ohio App. 8th Dist. 2010), and *Isaac v. Grider*, 211 F.3d 1269 (6th Cir. 2000).  In a single line at the conclusion of this section of the Reply, he asserts without any cited authority "The trial court in Petitioner's case never had jurisdiction for any alleged crime in Marion, Ohio[,] in 1998, 1999 or 2000 because the state never charged Petitioner with any such crime."  PageID 14081.

"[T]here is no constitutional right in a state prosecution to a grand jury indictment with particular specificity."  *Williams v. Haviland*, 467 F.3d 527, 534 (6th Cir.  2006) citing *Rose v. Mitchell*, 443 U.S. 545, 557, n. 7 (1979).  "Due process mandates only that the indictment provide the defendant with 'fair notice of the charges against him to permit adequate preparation of his defense.'" *Williams* at 535, quoting *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984).

*Russell v. United States*, 369 U.S. 749 (1962), holds the sufficiency of a **federal** indictment is to be measured by the following criteria:

> These criteria are, first, whether the indictment "contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet,'" and, secondly, "'in case any other proceedings are taken against him for a similar offense whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.'"

369 U.S. at 763-64.  While the right to grand jury indictment has not been extended to the States, the Sixth Circuit has held these criteria are applicable as a matter of due process.  *Valentine v. Konteh,* 395 F.3d 626, 631 (6th Cir. 2005).  In *Valentine* the defendant faced twenty carbon-copy counts of rape of a minor and twenty carbon-copy counts of gross sexual imposition.  Judge Merritt wrote for the court:

> The problem in this case is not the fact that the prosecution did not provide the defendant with exact times and places. If there had been singular counts of each offense, the lack of particularity would not have presented the same problem. Instead, the problem is that within each set of 20 counts, there are absolutely no distinctions made. Valentine was prosecuted for two criminal acts that occurred twenty times each, rather than for forty separate criminal acts. In its charges and in its evidence before the jury, the prosecution did not attempt to lay out the factual bases of forty separate incidents that took place. Instead, the 8–year–old victim described "typical" abusive behavior by Valentine and then testified that the "typical" abuse occurred twenty or fifteen times. Outside of the victim's estimate, no evidence as to the number of incidents was presented.

*Id.* at 632-33.

This is not a case like *Valentine*. Armengau was charged with separate incidents involving separate victims, dates, and places. Testimony at trial varied from the dates and places in the indictment. Some of the variations in date were dealt with by amendment to the indictment at trial; the difference in location had been dealt with by an amended bill of particulars. As the Tenth District noted, Petitioner was not presenting alibi or impossibility defenses which would have been defeated by date changes.[9]

Thus *Valentine* does not read directly on the indictment in this case. More importantly, *Valentine* is not "clearly established federal law, as determined by the Supreme Court of the United States." The Supreme Court has held, since *Valentine*, that a circuit court may not use circuit precedent "to refine or sharpen a general rule of Supreme Court jurisprudence into a specific rule that" the Supreme Court has not announced. *Lopez v. Smith*, 574 U.S. 1 (2014)(per curiam); *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013)(per curiam). However, "an appellate panel may, in

---

[9] Several times in his pleadings, Petitioner asserts he "established" during trial that he could not have committed the offenses alleged because he was not at the place or there at the time alleged. Facts are not established finally during the course of trial absent a stipulation or mid-trial dismissal. The Magistrate Judge therefore reads Petitioner's use of the word "established" as meaning Petitioner had presented evidence which he believed was convincing on certain dates and places, forcing the prosecutors to shift focus or make amendments.

accordance with its usual law-of-the-circuit procedures, to ascertain whether it has already held that the particular point in issue is clearly established by Supreme Court precedent, see, e.g., *Tolliver v. Sheets*, 594 F.3d 900, 916, n.6 ("We are bound by prior Sixth Circuit determinations that a rule has been clearly established"); *Chambers v. McDaniel*, 549 F.3d 1191, 1199 (9th Cir. 2008); it may not canvass circuit decisions to determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to this Court, be accepted as correct. See *Parker v. Matthews*, 567 U.S. 37 (2012); *Renico v. Lett*, 559 U.S. 766, 778-779 (2010)." *Marshall*, 569 U.S. 58, 64 (2013).

The *Valentine* Court did not limit itself to the question whether the rule it adopted was clearly established by Supreme Court precedent. Instead, it opined,

> [T]he "clearly established Federal law" relevant under AEDPA encompasses "the **governing legal principle** or principles set forth by the Supreme Court at the time the state court renders its decision." See *Lockyer v. Andrade,* 538 U.S. 63, 71–72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). The Supreme Court has established a clear and consistent path for the courts regarding the due process sufficiency of criminal charges, and the Ohio Court of Appeals has strayed so far from that path as to warrant habeas relief. *See id.* at 72, 123 S.Ct. 1166.

*Valentine,* 395 F.3d at 638 (Emphasis supplied). This formulation is inconsistent with later Supreme Court precedent requiring a tighter fit between Supreme Court holdings and the rule sought to be enforced in habeas.

In *Valentine* itself, the court held "that a court is permitted to review the indictment, the bill of particulars, and the evidence presented at trial to determine whether any defects in the indictment are cured." 395 F. 3d at 634.

In addition to not receiving from the indictment the notice to which he claims he is entitled, Petitioner also asserts the indictment provides insufficient double jeopardy protection. The Double

Jeopardy Clause of the Fifth Amendment to the United States Constitution affords a defendant three basic protections:

> It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

*Brown v. Ohio,* 432 U.S. 161, 165 (1977), quoting *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969). The Double Jeopardy Clause was held to be applicable to the States through the Fourteenth Amendment in *Benton v. Maryland,* 395 U.S. 784, 794 (1969). The State of Ohio has not re-indicted Petitioner for any sexual misconduct allegedly occurring within the span of years eventually covered by this prosecution; no such indictment is threatened and its content is purely speculative. It is clear that the Double Jeopardy Clause prohibits a second trial and not just a second conviction for the same offense. *Abney v. United States,* 431 U.S. 651 (1977). For that reason, a double jeopardy claim is cognizable in federal habeas corpus prior to the "second" trial. *Justices of the Boston Municipal Court v. Lydon,* 466 U.S. 294 (1984); *Reimnitz v. State's Attorney of Cook County,* 761 F.2d 405, 408 (7th Cir. 1985); *Malinovsky v. Court of Common Pleas of Lorain County,* 7 F.3d 1263 (6th Cir. 1993). To put it another way, a habeas petitioner with a double jeopardy claim is not required to exhaust the remedy of direct appeal from a verdict at a second trial before invoking our habeas jurisdiction. Should a new indictment be filed, a habeas court would compare both the indictment in this case and the evidence adduced at trial to determine whether the Double Jeopardy Clause was being violated. The Supreme Court has never held that a state indictment must be so precise as to preclude a second indictment while examining only the face of the first indictment. *Valentine*, which reaches that conclusion, is not Supreme Court precedent and has never been followed by the Sixth Circuit itself in a habeas corpus case. *Lawwill v. Pineda*, 2011 WL 1882456 (N.D. Ohio 2011).

Respecting jury unanimity, Armengau argues "[a] jury has a duty to unanimously agree to a particular state of facts . . . . A jury must be unanimous in what facts are being considered to determine guilt." (Reply, ECF No. 77, PageID 14042, citing *United States v. Echeverry*, 698 F.2d 375 (9th Cir. 1983)). At numerous points in his Reply, Petitioner argues that no court has been able to tell him what facts the jury relied upon to convict him of which offenses.

Petitioner is correct that the United States Constitution requires that jury verdicts in criminal cases be unanimous. *Ramos v. Louisiana*, 590 U. S. ___, 140 S. Ct. 1390, 206 L. Ed. 2d 583 (2020). However *Ramos* does not apply retroactively to cases on collateral review, such as this one. *Edwards v. Vannoy*, 593 U.S. ___, 141 S. Ct. 1547 (2021). Prior to *Ramos*, the Supreme Court had held nonunanimous verdicts were permissible. *Apodaca v. Oregon*, 406 U.S. 404 (1972). These cases, however, involved States (Oregon and Louisiana) which expressly allowed majority verdicts.

Petitioner, however, insists on something more: unanimity on the facts supporting a verdict. How would a State achieve such a result? A possibility would be to sever counts of an indictment and try them one at a time, but Petitioner does not suggest that is constitutionally required, nor does he claim he ever asked for severance in the trial court.

We instruct a jury that its verdict on each count must be unanimous and we enforce that requirement by requiring each juror to sign the verdict and allowing jurors to be polled in open court on their vote. In this case the verdicts of the jury were returned and read in open court on July 7, 2014 (Transcript, State Court Record, ECF No. 72-2, PageID 13702, et seq.). In each case the bailiff announced that the form was signed by all jurors. When the reading was complete, Petitioner's trial counsel asked that the jury be polled and they were, all answering that the verdicts as read were verdicts they had voted for and signed. *Id.* Thus the usual methods of ensuring jury

unanimity were employed and the jurors affirmed their verdicts.

In *Echeverry*, the Ninth Circuit disapproved an ambiguous jury instruction in a federal conspiracy case which left the jury free to convict if they found a conspiracy existed "for some period of time" when the evidence would have permitted a finding that there had been both a December and a June conspiracy, but did not require a unanimous finding as to either one. Nothing in the case suggests that the defendant could have, after the fact, required the jury or an appellate court to tell him what facts they found unanimously. To put it somewhat differently, a state criminal trial is not like a federal civil jury trial where a jury can be required to return special verdicts. See Fed.R.Civ.P. 49. Much less can a state appellate court be compelled, in the interest of jury unanimity, to make such separate findings.

Finally, Petitioner's jury unanimity claim is procedurally defaulted because it was not presented to the Tenth District as a federal constitutional claim. The Tenth District noted that this claim had been presented as a jury unanimity claim under Ohio R. Crim. P. 31(A).

> {¶ 62} Finally, appellant argues that the complex, and allegedly mismatched, assemblage of facts, testimony, indictment, and amendments of the bill of particulars allowed the jury to produce a "patchwork" verdict in violation of Ohio's requirement of jury unanimity, under Crim.R. 31(A). Pursuant to that rule, jurors must unanimously agree not only on the defendant's guilt, but as to proof as to each element of the crime.

Petitioner's Third Ground for Relief should therefore be dismissed.

## Ground Four: Erroneous Jury Instructions

In his Fourth Ground for Relief, Armengau asserts he was denied due process of law when the trial court "denied a requested unanimity instruction and the instructions allowed a non-unanimous verdict and a verdict upon uncharged alleged conduct." (Second Amended Petition, ECF No. 70,

PageID 4067).

Respondent asserts this claim is procedurally defaulted. The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). "Absent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009). This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L.Ed. d 659 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman* [*v. Thompson*], 501 U.S. [722,] 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640 [(1991)]. The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine. See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). "[A] federal court may not review federal claims that were procedurally defaulted in state courts." *Theriot v. Vashaw*, 982 F.3d 999 (6th Cir. 2020), citing *Maslonka v. Hoffner*, 900 F.3d 269, 276 (6th Cir. 2018) (alteration in original) (quoting *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017)).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Barton v. Warden, S. Ohio Corr. Facility,* 786 F.3d 450, 464 (6th Cir. 2015), *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

Petitioner's trial counsel requested a particular instruction on unanimity which was not given.

However, he "did not object to the jury instructions as given." *Armengau I* at ¶ 64. The Tenth

District therefore reviewed Armengau's jury instruction claims under a plain error standard. *Id.*

Petitioner does not dispute that Ohio has a procedural rule that requires a litigant to preserve

an alleged jury instruction error by objecting to the instruction as given nor does he dispute the

Tenth District's factual finding that no such objection was made here. Instead he asserts the Tenth

District did not enforce the rule.

> Petitioner respectfully suggests to this Court that the Court of
> Appeals did not rely on the "procedural bar" and in any event,
> notwithstanding defense counsel's failure to lodge an objection,
> notwithstanding the denial of his requested instruction, the Court of
> Appeals proceeded to analyze the issue in the same manner it would
> have had an objection been made.

(Reply, ECF No. 77, PageID 14082, citing *Keeton v. Bradshaw,* 2006 U.S. Dist.LEXIS 102076

(fn7)(N.D. Ohio, Jul. 20, 2006), adopted, 2006 U.S. Dist. LEXIS 64342 (N.D. Ohio, Sept. 8, 2006)).

In *Keeton* Magistrate Judge Veccharelli analyzed procedural default differentially as to different

claims. As to the claim referenced in footnote seven, cited by Petitioner, she found the Ohio Court of

Appeals had not actually enforced the relevant procedural rule. But as to Ground Three regarding

excuse of jurors, she wrote:

> In dismissing this claim, the Court of Appeals indicated that
> Keeton's trial counsel did not object to the dismissal of the
> prospective jurors for cause and reviewed the claim for plain error.
> The Court of Appeals held that the trial court did not commit plain
> error.
>
> The Court of Appeals expressly relied upon and enforced the
> contemporaneous objection rule, a state procedural bar, to dismiss
> this claim. The Court of Appeals' plain error review does not excuse
> the court's reliance on the state procedural rule in dismissing the
> claims. See *Scott*, 209 F.3d at 868. Further, the Sixth Circuit has held
> the contemporaneous objection rule is an "adequate and
> independent" state ground. *Id.* at 869.

2006 U.S. Dist. LEXIS 102076 *16.

In this case the Tenth District did as the appellate court had in *Keeton*: it noted the failure to object and then reviewed for plain error. *Armengau I* at ¶ 64. As Judge Veccharelli noted, the Sixth Circuit has frequently recognized that Ohio's contemporaneous objection rule is an adequate and independent state ground of decision. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012), *citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982). *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.), *cert. denied*, 562 U.S. 876 (2010).

The Sixth Circuit has also held that Ohio appellate review for plain error is enforcement of the contemporaneous objection rule and not a waiver of it. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle*, 271 F.3d 239 (6th Cir. 2001).

Petitioner also asserts that the failure to object does not prevent this Court from considering his constitutional claim. (Reply, ECF No. 77, PageID 14083, citing *Osborne v. Ohio*, 495 U.S. 103 (1990)). In *Osborne* the Supreme Court enforced a procedural default consisting of failure to object to omission of a *scienter* instruction, but disregarded a similar default on an instruction on "lewdness" because trial counsel had sufficiently pushed the issue of overbreadth to satisfy the state interest in giving the state courts a fair opportunity to correct constitutional error. 495 U.S. at 123-24. Thus the Supreme Court found an excusable default in the factual complexities of the

*Osborne* case and did not announce a general rule which would apply here.

Respondent asserts Armengau further procedurally defaulted this jury instruction claim by failing to present it to the Supreme Court of Ohio as a federal constitutional claim (Return, ECF No. 73, PageID 13896). Petitioner responds by asserting:

> With regard to Respondent's claim that the jury instruction issue was not fairly presented, a claim of defective indictment, patchwork and non-unanimous verdict and a double jeopardy claim, by necessity, implicates a jury instruction issue.
>
> Jury instructions are directly related to the sufficiency evaluation for an indictment, evidence and corresponding notice issues and these issue [sic] were raised in Propositions I and VI to the Ohio Supreme Court (Doc. 72, PageID 8046-8047, 8053-8058, PageID 610-622). Those issues by necessity extend to the jury instructions.

(Reply, ECF No. 77, PageID 14082-83).

The referenced Propositions of Law read:

> **First Proposition of Law:** This Court's decision in Hampton docs not allow a defendant to be convicted of a crime when the indictment asserts the criminal conduct occurred in a specific county, and does not reference R.C. 2901.12, and all evidence presented demonstrates that the crime occurred in a different county than that named in the indictment. RC. 2901.12; *State v. Hampton,* 134 Ohio St.3d 447, 2012-0hio-5688, 983 N.E.2d 324
>
> **Sixth Proposition of Law:** When the State cannot provide a defendant with accurate information regarding the time frame in which the alleged criminal conduct occurred, where it occurred, or the conduct at issue until its witness has testified at trial, a defendant is misled and prejudiced, and is entitled to a mistrial. Crim. R. 7(D).

(Memorandum in Support of Jurisdiction, State Court Record, ECF No. 72, Ex. 13, PageID 8041-42). Neither of these Propositions of Law mentions jury instructions at all or any provision of the United States Constitution. Nor do the arguments on these propositions mention jury instructions or cite any federal law.

Because Petitioner did not fairly present his jury instruction claim to the Supreme Court of

Ohio as a federal constitutional claim, it is procedurally defaulted on that basis as well.

Because Petitioner's Fourth Ground for Relief is procedurally defaulted twice over, the Court cannot reach the merits of the claim. *Davila, supra.* The jury instructions claim should be dismissed as procedurally defaulted.

## Ground Five: Prosecutorial Misconduct

In his Fifth Ground for Relief, Petitioner asserts he was deprived of due process and a fair trial by prosecutorial misconduct when "he was tried, convicted, and resentenced for convictions upon the admission of other-act evidence that was unindicted, uncharged, and unnoticed prior to trial and which was presented by prosecutors to intentionally circumvent the defenses to the actually indicted alleged crimes."

Respondent asserts this Ground for Relief is procedurally defaulted because the admission of other acts evidence claim was presented to the Tenth District as an issue of trial court error rather than prosecutorial misconduct (Return, ECF No. 73, PageID 13896). Petitioner's Reply asserts that the Return did not address his claim of prosecutorial misconduct and therefore does not respond to this defense (ECF No. 77, PageID 14147).

The Magistrate Judge finds the defense well taken. The relevant Assignment of Error on appeal argued trial court error, not prosecutorial misconduct. *Armengau I,* ¶ 68. The Sixth Circuit has articulated the relevant standard for habeas claims of prosecutorial misconduct as follows:

> "In the evaluation of a claim for prosecutorial misconduct, it is not enough that the prosecutor's comments were improper, but '[t]he relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." ' " *Smith*, 567 F.3d [246] at 255 [6th Cir. 2009] (quoting *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986)) (quoting *Donnelly v. DeChristoforo*, 416

70

U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). In other words, "[i]n order to satisfy the standard for prosecutorial misconduct, the conduct must be both improper and flagrant." *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir.2006), cert. denied, 549 U.S. 1255, 127 S.Ct. 1376, 167 L.Ed.2d 165 (2007). To determine whether improper conduct is flagrant, we consider four factors:

> (1) the likelihood that the remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) the total strength of the evidence against the defendant.

*Bates v. Bell*, 402 F.3d 635, 641 (6th Cir.), *cert. denied*, 546 U.S. 865, 126 S.Ct. 163, 163 L.Ed.2d 150 (2005).

*Goff v. Bagley*, 601 F.3d 445, 480 (6th Cir. 2010). See also *LaMar v. Houk*, 798 F.3d 405, 430 (6th Cir., 2015).

The usual claim of prosecutorial misconduct involves a prosecutor's improper comment on evidence, presentation of perjured testimony, or failure to comply with *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. Here the claim is the prosecutors deliberately relied on inadmissible other acts evidence. The first step in analyzing any claim of prosecutorial misconduct is to determine that the prosecutor's conduct was improper. *Bowling v. Parker*, 344 F.3d 487, 512-13 (6th Cir. 2003). Here the Tenth District determined admission of the other acts evidence was not improper. It cannot be improper conduct for a prosecutor to offer admissible evidence.

Petitioner's Fifth Ground for Relief should be denied as procedurally defaulted and without merit.

**Ground Six: Lack of Subject Matter Jurisdiction**

In his Sixth Ground for Relief, Petitioner argues the Franklin County Court of Common Pleas never "obtained" subject matter jurisdiction to try his case (Amended Petition, ECF No. 70, PageID 7651). As noted above, Armengau combined arguments about Ground Six with his arguments on Ground Three. Other than the subject matter jurisdiction claim, these issues are dealt with above under Ground Three.

Respondent treats this claim as of a piece with Armengau's other objections to the indictment and dismisses it with the assertion that there is no federal constitutional right to grand jury indictment in state courts (Return, ECF No. 73, PageID 13881, citing, *inter alia*, *Hurtado)*. Other than adverting to the fact that he has alleged lack of subject matter jurisdiction, Armengau does nothing in his Reply to argue the issue. Nor does it appear Armengau raised this issue on direct appeal.

Lack of subject matter jurisdiction was a basis for granting habeas corpus relief long before those bases were broadened to any constitutional error in *Brown v. Allen*, 344 U.S. 443 (1953). See *Ex parte Lange*, 85 U.S. (18 Wall.) 163 (1873); *Ex parte Siebold*, 100 U.S. 371 (1880). However, in Ohio, the common pleas courts are the courts with subject matter jurisdiction to try felony criminal cases. See Ohio Rev. Code 2931.03; *State v. Lauharn*, 2012-Ohio-1572, ¶ 22, 2012 Ohio App. LEXIS 1382, **12 (2nd App. Dist. 2012); *Leyman v. Bradshaw*, 2015-Ohio-751, ¶ 13, 2015 Ohio App. LEXIS 699, **4 (5th App. Dist. 2015). Petitioner has not pled or proved any basis on which the Franklin County Court of Common Pleas lacked subject matter jurisdiction over his case. Ground six should therefore be dismissed on the merits.

**Ground Seven:  Denial of Equal Protection**

In his Seventh Ground for Relief, Petitioner claims he was denied his Fourteenth Amendment right to equal protection of the laws when the Tenth District Court of Appeals and the Supreme Court of Ohio "intentionally disregarded the law set by their respective courts and the United States Supreme Court in order to affirm the convictions."   His theory is that "[t]he holdings and rulings in Petitioner's case are contrary to established precedent."

Respondent asserts this claim is not cognizable in federal habeas corpus, arguing "[a]lleged errors involving a state court's interpretation of its own law or procedure are not cognizable in federal habeas corpus review (Return, ECF No. 73, PageID 13889, citing *Simpson v. Jones*, 238 F.3d 399, 406-07 (6th Cir. 2000); *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)).

Petitioner responds that

> The Equal Protection Clause of the Fourteenth Amendment is essentially a direction that all persons similarly situated should be treated alike. *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432 (1985). The *sine qua non* of an equal protection claim is dissimilar treatment of persons similarly situated. The Equal Protection Clause embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly.
>
> * * *
>
> Petitioner respectfully suggests that the case law he has cited throughout his petition and this reply specifically identifies him as similarly situated to defendants who have obtained relief under identical issues and material facts and that the court system has disregarded the law they have established in order to affirm the convictions.

(Reply, ECF No. 77, PageID 14087-88).  He then proceeds to discuss at length other allegedly similarly-situated defendants who have obtained relief in similar circumstances. *Id.* at PageID 14089-91.

It is of course fundamental to our American system of case law that like cases should be decided alike. Garner, et al., The Law of Judicial Precedent § A.1(2016). Garner's treatise is devoted to explicating the doctrine of precedent which enables deciding like cases alike. Petitioner's premise – that equal protection doctrine must overlay the doctrine of precedent – seems an appropriate extension of the law in both of these areas. The Magistrate Judge therefore disagrees with Respondent's argument that only state law questions are involved. If, for example, a municipal judge intentionally applied a different standard to deciding red light cases depending on the race of the defendant, it is not difficult to see the equal protection issue involved.

At the same time, the entire doctrine of precedent cannot be constitutionalized; such a system would not be administrable. See *Levine v. Torvik, supra.* The Supreme Court has stated that the Equal Protection Clause "embodies the general rule that States must treat like cases alike but may treat unlike cases accordingly." *Vacco v. Quill*, 521 U.S. 793, 799 (1997). The States cannot make distinctions which either burden a fundamental right, target a suspect class, or intentionally treat a person differently from others similarly situated without any rational basis for the difference. *Id.; Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005).

Considering the general standards for establishment of an equal protection violation, Petitioner has not articulated, much less presented, a case which would support such a finding. He never presented a case to the Ohio courts for selective prosecution. Indeed, his allegation is that the Ohio appellate courts, not the prosecution, discriminated against him. He does not suggest an invidious basis such as race for deciding his case one way and other similarly-situated cases differently. Although he claims there are other similarly-situated cases, what are the similarities? Are there other men accused of sexual misconduct by multiple women who have not been

prosecuted because they were not successful criminal defense lawyers?

In sum, while the Magistrate Judge agrees that an intentional misapplication of the doctrine of precedent on an invidious basis could violate the Equal Protection Clause, Armengau did not present such a case to either the Tenth District or the Supreme Court of Ohio. As with "fair trial" and "due process," mere recitation of the talismanic phrase "equal protection" is not an argument. Petitioner's Seventh Ground for Relief should be dismissed as procedurally defaulted because never fairly presented to the Ohio courts. It is also without merit in the form presented to this Court.

**Ground Eight: Actual Innocence**

In his Eighth Ground for Relief, Armengau claims he is actually innocent of the crimes of which he was convicted and is entitled to habeas corpus relief on that basis. In habeas corpus parlance, this is denominated a "stand alone" actual innocence claim to distinguish it from the "gateway" actual innocence claim recognized by the Supreme Court in *Schlup v. Delo*, 513 U.S. 298 (1995).

Case law in the Sixth Circuit establishes that the Supreme Court of the United States has never recognized a free-standing or substantive actual innocence claim. *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007), *citing Zuern v. Tate*, 336 F.3d 478, 482, n.1 (6th Cir. 2003), and *Staley v. Jones*, 239 F.3d 769, 780, n.12 (6th Cir. 2001).

Even if a stand-alone claim were to be recognized, Petitioner has not submitted evidence of the quality required by *Schlup* to qualify. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be

exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Souter v. Jones,* 395 F.3d 577, 590 (6th Cir. 2005), citing *Schlup*, 513 U.S. at 324.

The Supreme Court has also noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). Having committed the acts which the jury found to be sexual misconduct in Marion County as opposed to Franklin County does not amount to a claim of factual innocence.

Petitioner's Eighth Ground for Relief should be dismissed for failure to state a claim upon which habeas corpus relief can be granted.

**Ground Nine: Lack of Jury Unanimity**

This claim has been dealt with under Ground Three above.

**Ground Ten: Denial of Right to Trial by Jury**

In his Tenth Ground for Relief, Petitioner asserts he was denied his right to trial by jury because the factual bases of his convictions were determined by the trial and appellate judges instead of the jury. As Petitioner made clear when moving to amend to add this claim, he believes he suffered from a violation of the doctrine in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), where the Supreme Court held "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that

increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt."

This is not a classic *Apprendi* case where some punishment beyond that authorized by the statute of conviction can be imposed upon a separate finding by the trial judge. For example, in *Apprendi* the Supreme Court was dealing with a statute which increased the penalties for a crime if the court determined it to be a "hate" crime. Nothing of that sort happened here.[10] Rather Ground Ten is a variant on Petitioner's claim that facts found by the jury's general verdicts were reassigned by the Tenth District upon resentencing. Petitioner points to no clearly established Supreme Court precedent violated by what occurred on re-sentencing. His Tenth Ground for Relief should therefore be denied on the merits.

**Additional Claims**

At the end of his Reply**,** Petitioner asserts that he has made other claims which Respondent has not addressed, to wit, fair trial, prosecutorial misconduct, and constructive amendment (Reply, ECF No. 72, PageID 14147).

As noted in the analysis of Ground Five, the Respondent did address the specific prosecutorial misconduct claim made here by noting it had not been presented in that form to the Tenth District, but rather as a claim of trial court error.

Case law prohibiting constructive amendments of indictments during trial are designed to protect a defendant's constitutional right to grand jury indictment. A state defendant's grand jury

---

[10] Armengau was ordered to serve some sentences consecutively. However, the Supreme Court has exempted the findings which may be needed for consecutive sentences from the application of *Apprendi*. *Oregon v. Ice*, 555 U.S. 160 (2009).

right is protected by the Ohio Constitution, but violations of the Ohio Constitution do not state a claim for violating the federal Constitution, because there is no federal constitutional right to indictment in the state courts. *Hurtado, supra.* A federal defendant's grand jury right, protected by the Fifth Amendment, is protected by forbidding constructive amendments in federal trials. All the authority relied on by Petitioner in this section of his Reply was enforcing the federal grand jury right in federal cases. Because the Fifth Amendment Grand Jury Clause has not been incorporated into the Fourteenth Amendment, there is no federal constitutional prohibition on constructive amendments in state trials.

Petitioner has not pleaded a separate ground for relief based on his claim of denial of a fair trial.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice. Reasonable jurists could disagree with the proposed disposition of Grounds One (sufficiency of the evidence) and Three (double jeopardy); Petitioner should therefore be granted a certificate of appealability as to those Grounds. Because reasonable jurists would not disagree with dismissal of the other Grounds for Relief, it is also recommended that Petitioner be denied a certificate of appealability as to those Grounds. Petitioner should be permitted to proceed on appeal *in forma pauperis*.

November 2, 2021.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. #

Record references in any objections or responses must comply with Magistrate Judge Deavers' Order that "[a]ll papers filed in the case [after the State Court Record is filed] by each party shall include record references to the PAGEID number."  (ECF No. 8, PageID 240).