# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

JAVIER H. ARMENGAU,

|  |  |  |  |
|---|---|---|---|
| | Petitioner, | : | Case No. 2:19-cv-1146 |
| - vs - | | | Chief Judge Algenon L. Marbley<br>Magistrate Judge Michael R. Merz |

WARDEN, London
  Correctional Institution,

                                  :

      Respondent.

---

## SUPPLEMENTAL REPORT AND RECOMMENDATION

---

This habeas corpus case is before the Court on Petitioner's Objections (ECF No. 103) to the Magistrate Judge's Report and Recommendation recommending that the Petition in this case be dismissed with prejudice (ECF No. 97). Petitioner has, with Court permission, supplemented his Objections (ECF No. 106-07) and case authority in support of his Petition (ECF No. 112). Chief Judge Marbley has recommitted the case to the Magistrate Judge for reconsideration in light of the Objections (Recommittal Order, ECF No. 114). Respondent has neither objected to the proposed disposition of the case nor responded to Petitioner's Objections.

A litigant who objects to a Magistrate Judge's report and recommendation on a dispositive matter is entitled to a *de novo* review by a District Judge of all substantial objections. Faced with objections, a District Judge is authorized by Fed.R.Civ.P. 72 to recommit a case to the Magistrate Judge for further consideration, as Chief Judge Marbley has done here, leaving ultimate *de novo* review until after a second report and recommendations.

1

Petitioner presents fifteen numbered Objections in 215 pages. Many of the Objections, instead of being limited to asserted errors on one ground for relief, jump back and forth between various claims. Indeed, at many places Petitioner argues that his claims are sufficiently "intertwined" that referring to one also refers to all or almost all of the others. This Supplemental Report will therefore discuss the Objections *seriatim*, as they are presented by Petitioner, rather than attempting to impose some court-chosen re-ordering on them.

Petitioner's first (unnumbered) objection is to the Magistrate Judge's finding that he should be granted a certificate of appealability on Grounds One and Three upon a finding that "[r]easonable jurists could disagree with the proposed disposition of Grounds One (sufficiency of the evidence) and Three (double jeopardy); Petitioner should therefore be granted a certificate of appealability as to those Grounds." Petitioner objects

> [W]ith all due respect, based on the opinions and decisions in the cases cited by Petitioner, the overwhelming majority which have been omitted from the R&R, each respective judge's decision in each case appears to have decided the particular issue within the case differently than the magistrate has or would in this specific case.

(Objections, ECF No. 103, PageID 15150). In other words, Petitioner believes that the Magistrate Judge is not only wrong on Grounds One and Three, but that no reasonable jurist would agree with the Magistrate Judge's recommendations on those Grounds. This is not a substantial objection which the Court must resolve because Petitioner has already won on the issue of a certificate of appealability on these two Grounds.

In the quoted paragraph, Petitioner complains that the Report omits discussing the "overwhelming majority" of the opinions and decisions cited in the Reply. Petitioner's 226-page Reply is so prolix that the Court granted him leave to file a summary (ECF No. 80). That summary itself is thirty-three pages long and has a Table of Cases that is 543 citations long (ECF No. 81,

PageID 14176-99). Most of those citations contain neither the identity of the deciding court nor the date of the decision, ordinary components of a case citation necessary for an initial assessment of its authority. No sensible allocation of the scarce judicial resources available to this Court would suggest reading and discussing such an agglomeration of case law. The Magistrate Judge believes the original Report as supplemented here discusses all the relevant case law.

**Petitioner's Introduction**

Petitioner introduces his Objections by asserting "Any challenge to a sufficiency of the evidence claim under state law also presents a federal due process claim, (Objections, ECF No. 103, PageID 15151, citing *Riner v. Edwards,* 2008 U.S. Dist. LEXIS 113139 (D. Va. Sept. 26, 2008)). The Supreme Court of Ohio agrees, holding that "a conviction based on legally insufficient evidence constitutes a denial of due process." *State v. Thompkins,* 78 Ohio St. 3d 380 (1997), citing *Tibbs v. Florida*, 457 U.S. 31 (1982), *citing Jackson v. Virginia,* 443 U.S. 307 (1979).

However, Petitioner then proceeds to argue, without citation, that "*The federal and state standards applicable to Petitioner's claims are identical as to sufficiency, notice of the charges, constructive amendment, double jeopardy, fair trial and due process."* (Objections, ECF No. 103, PageID 15152; italic in original). The fact that the sufficiency of the evidence standards are the same under both Ohio and federal law does not imply that they are the same for these other rights. As an example outside Petitioner's list, jury unanimity has always been required under Ohio law, but it was only incorporated from the Sixth Amendment into the Fourteenth in *Ramos v. Louisiana*, 590 U. S. ___, 140 S. Ct. 1390, 206 L. Ed. 2d 583 (2020).

Petitioner argues the Supreme Court of Ohio has held the protections against double

jeopardy in the federal and Ohio Constitutions are coextensive (Objections, ECF No. 103, PageID 15152).  The Magistrate Judge agrees.  *State v. Martello*, 97 Ohio St.3d 398 (2002), citing *State v. Gustafson*, 76 Ohio St.3d 425, 432 (1996).  Petitioner then "suggest[s]" that by specifically citing to the *specific rights* guaranteed under the United States Constitution that pertain to his claims, his "fair presentation" was more precise than required.  That claim will be evaluated with respect to each separate assertion by Respondent of lack of fair presentation.

Petitioner ends this section of his Objections by reminding the Court that he has been in prison for over seven years and by quoting Justice Brett Kavanaugh as saying "Judges do not make decisions to reach a preferred result. Judges make decisions because the law and Constitution, as we see them, compel the results." (ECF No. 103, PageID 15153, referring to THE EDUCATION OF BRETT KAVANAUGH: AN INVESTIGATION, by Robin Pogrebin and Kate Kelly, 2019).[1]

**Petitioner's Statement of Facts**

Petitioner next gives a sixteen-page narrative of what he regards as the relevant facts (Objections, ECF No. 103, PageID 15154-15169).  This narrative is included, Petitioner avers

> because of the omissions and factual inaccuracies present in the Court of Appeals' decision and due to his burden to rebut the facts that are subject to deference. In addition, through selective inclusion and selective omission of facts, decisions often portray a false narrative or an appearance that based on the "selective facts" a Petitioner does not state valid claims for relief, when an accurate factual detail and legal analysis proves different.

---

[1] The quotation appears at p. 107 of the book and is taken from Justice Kavanaugh's opening remarks at his confirmation hearing.  These kinds of comments are a necessary paean to popular American mythology about judging and similar statements can undoubtedly be found in the confirmation hearing of, say, Chief Justice Roberts.  What is perhaps ironic is that the quotation should come from a proud alumnus of the law school which generated Legal Realism, a jurisprudence that radically questions the truth of the statement.  See Laura Kalman, LEGAL REALISM AT YALE 1927-1960.

(Objections, ECF No. 103, PageID 15154).

In federal habeas corpus, facts found by the state courts are presumed to be correct unless rebutted by clear and convincing evidence in the state court record. 28 U.S.C. § 2254(e). Petitioner has not structured his Statement of Facts in such a way as to demonstrate that any particular state court finding is clearly and convincingly wrong.

For example, Petitioner avers that

> Petitioner was arrested at gunpoint by approximately twelve (12) SWAT officers (Doc. 72-2, PageID 12830-12831, Tp. 3064-3065) for two (2) probationable offenses, Gross Sexual Imposition (F4) and Public Indecency, a misdemeanor. Police did not attempt to interview Petitioner prior to arresting him in order to obtain his statement regarding any accusation (Tp. 3073, Doc. 72-2 PageID 12839).

(Objections, ECF No. 103, PageID 15154). The transcript references are to Petitioner's own testimony on direct examination in which he estimates there were ten to fifteen SWAT officers involved in his arrest. Thus there is testimony in the trial transcript to support the factual averments made in the quoted paragraph. But Petitioner makes no effort to relate those averments either to any findings of fact by the state courts or any of such findings relied on in the Report.

Why offer this testimony in the first place and then quote it years later in objections to a habeas report and recommendation? Presumably because Petitioner believes the listener or reader will empathize with him for being confronted with such overwhelming police force. But that is not a valid basis for objecting to the Report. Whether Petitioner was arrested by two or twenty-two armed officers is legally irrelevant, particularly at this stage of these proceedings. By relying on these sympathetic but irrelevant facts, Petitioner is doing what he just told the Court Justice Kavanaugh warns against: asking a judge to decide this case on the basis of a preferred outcome (redressing the manner of arrest) instead of the law.

Petitioner does make one averment of fact contrary to a Tenth District finding. He says the Tenth District implied one of his accusers came to Petitioner's office because he asked her to do so to discuss her son's case (Objections, ECF No. 103, PageID 15155). The relevant finding is "On April 4, 2013, C.C. received a call from appellant's secretary asking her to come to appellant's Columbus office to discuss the upcoming trial." *State v. Armengau*, 2017-Ohio-4452 (10th Dist. Jun. 22, 2017)(*Armengau I*)) This does indeed imply that C.C. came to Petitioner's office at his request; ordinarily one expects that a lawyer's secretary sets appointments at times and places of the lawyer's choosing.

Petitioner contests the implication. He avers "Petitioner's client (Jeff Collins) requested Petitioner meet with his mother to discuss why Petitioner was recommending the plea." (Objections, ECF No. 103, PageID 15155). Petitioner offers record references that corroborate his claim that Jeff Collins wanted Armengau to meet with C.C.; he offers no reference to show error in the Tenth District's finding that Armengau's secretary called C.C. on April 4, 2013. Again, to rebut a state court finding of fact, a habeas petitioner must show is it clearly and convincingly in error.

Moreover, the charges involving C.C. as a named victim are not before this Court. Armengau was only convicted of public indecency involving C.C. and his thirty-day time-served sentence on that charge expired long before he brought this case. As the Report concluded, since Petitioner was no longer in custody on that charge when he filed here, this Court lacks jurisdiction to consider the public indecency conviction (Report, ECF No. 97, PageID 15059, n. 1)[2].

The next place at which the Objections challenge the factual findings of the Tenth District is at PageID 15160.

---

[2] Petitioner objects to that conclusion. See discussion *infra* of *Maleng v. Cook*, 490 U.S. 488 (1989).

> Reviewing the decision in [*Armengau I*] as to Count 8, the court at one point noted the actual testimony which completely omitted any reference to force or threat of force (decision, P. 8, ¶28, Doc. 72, PageID 7996-7997, Doc. 73, PageID 13847 and PageID 631, 6208, Doc. 50, PageID 6941) and later in reconstructing the facts for that same exact alleged incident, the Court intentionally misrepresented the testimony it already acknowledged in order to add the elements of force (P. 38, ¶ 120, Doc. 72, PageID 8026 and PageID 661, 6238, Doc. 50, PageID 7007) (See also, Trial Tp. 1338-1339, Doc. 72-2, PageID 11104-11105 and PageID 3464-65).

(Objections, ECF No. 103, PageID 15160).

The description of Petitioner's behavior at ¶ 28 reads "Before her trial in September 2008, K.R. testified they met in appellant's Marion office, where he offered her a drink, rubbed her shoulders, and began feeling her breasts," while at ¶ 120 it reads "K.R. testified that, while in appellant's office, appellant closed the door, pulled her to the couch, and then touched her breasts without permission. [This] description is sufficient to establish force necessary to prove gross sexual imposition."

The fact that the Tenth District added the language "pulled her to the couch" to ¶ 120 does not show that the court "intentionally misrepresented the testimony." K.R. actually testified "he stood me up, he took my hand and stood me up, and pulled me like led me into the other room where the couch was and asked me if I would have intercourse with him." (Trial Transcript, ECF No. 72-2, PageID 11105). Petitioner has not shown that the finding of "pulling" is rebutted by clear and convincing evidence.

The Statement of Facts then has a long section detailing Petitioner's version of his relationship with Luz Melean (PageID 15161-68). Nothing in these pages purports to be a rebuttal of any fact found by the Tenth District.

At the end of this section, Petitioner asserts the undersigned erred in finding that an affidavit of Diane Campbell he relies on was not part of the State Court Record and gives three

record references:  ECF No. 92-1, PageID 14391-14393; ECF No. 72, PageID 14391-14393; and ECF No. 1-5, PageID 171-74 (Objections, ECF No. 103, PageID 15168).  However, at the place where he first relied on this Affidavit (Reply, ECF No. 77, PageID 13929), he only gave one record reference "The affidavit is referenced by Petitioner as Doc. 1-5, PageID 171-174."  While that is an accurate reference, it does not refer to the Affidavit as part of the State Court Record; attachments to a habeas petition do not thereby become part of the State Court Record.  The Campbell Affidavit is in fact in the State Court Record at ECF No. 92-1, PageID 14391-93 as an attachment to Petitioner's Motion for Leave to file a delayed motion for new trial.  Had Petitioner provided an accurate record reference as required by Magistrate Judge Deavers' Order to Answer (ECF No. 8, PageID 240), the undersigned would have seen it.  But the Court cannot be expected to search through a fifteen-thousand-page record to find a document that a party-attorney has miscited.

The concluding portion of Petitioner's Statement of Facts does not include any other factual findings of the Tenth District which Petitioner claims are clearly erroneous.

Viewed as a whole, Petitioner's Statement of Facts in his Objections is Petitioner's alternative narrative of the case.  Litigants, particularly lawyer-litigants, understandably want to re-state the facts in a light favorable to the outcome they seek.  While that is common in initial briefs on appeal, it misses the point in objections to a proposed disposition of a habeas corpus case.  At this stage of the case in dealing with the facts, a habeas court is limited to deciding whether a petitioner has overcome the presumption of correctness that attaches to a state court's findings.  To the extent Petitioner has addressed the correct question, he has failed, for the reasons given, to persuade the Magistrate Judge that the Tenth District's factual findings are clearly erroneous.

**Objection No. 1: Sufficiency of the Evidence as Raised in Ground One for Relief.**

In his First Ground for Relief, Petitioner claims he was convicted on insufficient evidence on Counts 2[3], 3, 8, 10, 14, 15, 16, 17, and 18. Each of these Counts alleged Armengau committed a sexual offense of a certain type against a named victim and that the offense occurred in Franklin County, Ohio. Petitioner's claim is that the location of the offense is a material element of the crime and the State did not prove the offenses alleged in these Counts occurred in Franklin County.

On appeal to the Tenth District, Armengau characterized this as an issue of "venue." In his brief on appeal, he wrote as an issue presented for review: *"Is a conviction based upon insufficient evidence when **venue** is not proved beyond a reasonable doubt as charged in the indictment?"* (Amended Merit Brief, State Court Record, ECF No. 72, PageID 7730). He now insists it is not an issue of venue, but of sufficiency of the evidence under *Jackson v. Virginia*, 443 U.S. 307 (1979). The Tenth District decided that issue on the merits and its decision is entitled to deference under 28 U.S.C. § 2254(d)(1).

Petitioner concedes that it is state law which determines what are the element of a crime (Objections, ECF No. 103, PageID 15170, citing *In re Winship*, 397 U.S. 358 (1970)). In its decision in this case the Tenth District expressly held that location of the offense ("venue" as Petitioner was then calling it) is not a material element of any offense. *Armengau I* at ¶ 107. Petitioner attempts to capitalize on the equivocal use of the word "venue" to claim the Tenth District decided only a venue (in the sense of location of trial) claim, rather than the issue he presented.

The Tenth District agreed with Petitioner that "[i]t is the language of the indictment that

---

[3] As noted above, the Court no longer has jurisdiction to consider Count 2 since Petitioner was released from custody on that count before filing his petition. Although Petitioner objects to this conclusion, he has not shown how the Court has jurisdiction in light of *Maleng v. Cook, supra.*

defines the venue for which the state bears the burden of proof." *Armengau I* at ¶ 109, citing *State v. Hampton*,134 Ohio St.3d 447 (2012) at ¶ 23. It also held "[b]ecause venue is neither a jurisdictional nor a material element of a criminal offense, the indictment is only required to contain an allegation that the offense was committed within the jurisdiction of the court." *Id.* at ¶ 107, citing *State v. Andrews*, 148 Ohio App.3d 92 (10th Dist. 2002). Even though venue is not a material element of a crime in Ohio, "it is a fact that the state must prove beyond a reasonable doubt unless waived by a criminal defendant." *Id.*, citing *Hampton, supra.*

The court then addressed directly Petitioner's claim that he was entitled to acquittal on those counts where there was no evidence the crime occurred in Franklin County as charged. It rejected the State's argument that amendments of the Indictment or bills of particulars cured the problem. *Id.* at ¶ 109. However, the State prevailed on a different argument:

> {¶ 110} The state also argues that all crimes took place as part of a course of criminal conduct across several jurisdictions, including Franklin County, establishing venue in Franklin County under the course of criminal conduct terms of R.C. 2901.12(H). We conclude that the state presented sufficient evidence to prove venue under the course of criminal conduct provisions in R.C. 2901.12(H).

*Id.* at ¶ 110. The Tenth District explained how Petitioner's course of conduct fit the language and intent of Ohio Revised Code § 2901.12(H) at ¶¶ 111-114. It distinguished *Hampton*, on which Petitioner relied, in that all of the conduct at issue in *Hampton* occurred in a county other than the county of indictment. *Id.* at ¶ 116. On that basis, it rejected Petitioner's sufficiency of the evidence claim. *Id.* at ¶ 117.

Petitioner appealed to the Supreme Court of Ohio specifically relying on *Hampton* and arguing Ohio Revised Code § 2901.12(H) violated the Ohio Constitution (Memorandum in Support of Jurisdiction, State Court Record, ECF No. 72, Ex. 13, PageID 8041), but that court declined jurisdiction. *State v. Armengau*, 151 Ohio St. 3d 1511 (2018).

The Report found that the question of whether Ohio Revised Code § 2901.12(H) applied to the facts of this case was a question of Ohio law on which this Court is bound by the decision of the Ohio courts (ECF No. 97, PageID 15108, relying on *Bradshaw v. Richey*, 546 U.S. 74 (2005). On that basis the Report recommended Ground One be dismissed. *Id.* at PageID 15109.

Petitioner agrees that we are bound by decisions of Ohio courts on questions of Ohio law (Objections, ECF No. 103, PageID 15172, citing particularly *West v. American Tel. & Tel. Co.,* 311 U.S. 223 (1940)).

*West* in its historical context is very instructive for this case in terms of what state law is binding in federal court. The decision was handed down only two years after the landmark ruling in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). *Erie* overruled *Swift v. Tyson*, 41 U.S. 1 (1841). In *Swift* and for two centuries thereafter, the Supreme Court had held, following Justice Story, that "the laws of the several states" in the Judiciary Act of 1789 means only the **statutory** law of the States. *Erie* overturned that precedent and held "the laws of the several states" includes the States' decisional law as well.

In *West* the Sixth Circuit had refused to follow the decision of an intermediate Ohio appellate court. Reversing, Justice Stone wrote for the Court[4]:

> The Circuit Court of Appeals in this case, in which jurisdiction rests exclusively on diversity of citizenship, declined to follow the ruling in *West v. American Telephone & Telegraph Co.,* 54 Ohio App. 369, 7 N.E.2d 805, 7 O.O. 363, of the Cuyahoga County Court of Appeals, an intermediate appellate court of Ohio. The question for decision is whether, in refusing to follow the rule of law announced by the state court, the court below failed to apply state law within the requirement of § 34 of the Judiciary Act of 1789, 28 U.S.C.A. § 725, and of our decision in *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

311 U.S. at 231. In *West* the Supreme Court held a federal court is not free to disregard an

---

[4] The Court was unanimous on the holdings for which it is quoted; Justice Roberts dissented on a separate point.

intermediate appellate court ruling on what state law is:

> [A]s was intimated in the *Erie Railroad* case, the highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified, limited or restricted. See *Wichita Royalty Co. v. City National Bank of Wichita Falls*, 306 U.S. 103, 107, 59 S.Ct. 420, 421, 83 L.Ed. 515. But the obvious purpose of § 34 of the Judiciary Act is to avoid the maintenance within a state of two divergent or conflicting systems of law, one to be applied in the state courts, the other to be availed of in the federal courts, only in case of diversity of citizenship. That object would be thwarted if the federal courts were free to choose their own rules of decision whenever the highest court of the state has not spoken.
>
> A state is not without law save as its highest court has declared it. There are many rules of decision commonly accepted and acted upon by the bar and inferior courts which are nevertheless laws of the state although the highest court of the state has never passed upon them. In those circumstances a federal court is not free to reject the state rule merely because it has not received the sanction of the highest state court . . .

311 U.S. at 236.

> Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise. [citations omitted] This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court. . . Even though it is arguable that the Supreme Court of Ohio will at some later time modify the rule of the *West* case, whether that will ever happen remains a matter of conjecture. In the meantime the state law applicable to these parties and in this case has been authoritatively declared by the highest state court in which a decision could be had.

311 U.S. at 237-38.

This case presents a precise parallel to *West*. Petitioner wants us to disregard the Tenth

12

District's application of Ohio Revised Code § 2901.12(H) to his case and instead wants us to apply his interpretation of *Knight v. State*, 54 Ohio State 365 (1896), and *State v. Hampton,* 134 Ohio St.3d 447 (2012). *West* instructs us we may not do that. The Tenth District discussed *Hampton* in its decision in this case and noted that Ohio Revised Code § 2901.12(H) was not even arguably applicable there, since all of the offenses being tried in *Hampton* occurred outside Franklin County. Here, as in *West*, the Ohio Supreme Court was given an opportunity to adopt, if it chose, Petitioner's interpretation of Ohio Revised Code § 2901.12(H) and *Hampton*. It chose not to do so. To paraphrase Justice Stone in *West*, the Ohio Supreme Court may at some future date decide to consider whether Ohio Revised Code § 2901.12(H) applies to a situation like Petitioner's, but until and unless it does so, the Ohio law, as announced by the Tenth District in this case, is that a case involving a course of conduct such as Petitioner's may be tried in any county in which any of the offenses occurred.

Petitioner persistently misconstrues the Report on this issue. He argues, for example, "*The recommendation to dismiss is based on the issue of trial location and not on the state's failure to prove what is required for a criminal conviction.*" (Objections, ECF No. 103, PageID 15187; italics in original.) That is simply not so. What the Tenth District decided was that the location of the offense, a required fact to be proven in a criminal case, could be proven in a course of conduct case under Ohio Revised Code § 2901.12(H) case by showing that at least one of the offenses was committed in the jurisdiction of indictment and trial. There was certainly sufficient evidence that at least one of the crimes charged in the Indictment was committed in Franklin County. The Report recommended dismissal because that is a question of Ohio law on which the Tenth District's decision in this very case is binding in habeas corpus.

**Objection No. 2**

In his Second Objection "Petitioner objects to the magistrate's determination that Count 16 is not included in or subject to the sufficiency analysis in Objection No. 1 and that the alleged crime of conviction occurred in Franklin County for Count 16." (Objections, ECF No. 103, PageID 15198). Armengau argues that this omission was the result of a clerical or typographical error by his appellate counsel who omitted Count 16 when it should have been included in the relevant assignment of error.

The Magistrate Judge is persuaded that the omission was the result of a typographical error by Petitioner's appellate attorney.

**Objection No. 3**

In his Third Objection, Petitioner claims that the Report incorrectly reports that he was acquitted on Count Three when he was in fact convicted on that Count (Objections, ECF No. 103, PageID 15202). Review of the relevant verdict form confirms the accuracy of this objection: Petitioner was indeed convicted on Count Three (Verdict, State Court Record, ECF No. 92-1, PageID 14318).

**Objection No. 4**

Petitioner objects to the Magistrate Judge's determination that this Court does not have

jurisdiction to consider his conviction for public indecency. "Petitioner respectfully suggests that the due process right to a fundamentally fair trial applies to **all** counts for which a person is convicted." (Objections, ECF No. 103, PageID 15202).

The Report recommends dismissal of Count 2, the misdemeanor charge of public indecency, because Petitioner was no longer in custody on that charge when he filed this case (ECF No. 97, PageID 15059, citing *Maleng v. Cook*, 490 U.S. 488 (1989)). The Objections offer no analysis of *Maleng* or of the jurisdictional custody requirement for habeas jurisdiction. The Supreme Court in *Maleng* held that when a sentence expires before a habeas petition is filed, the petitioner is not sufficiently in custody to invoke the federal habeas jurisdiction. There is no exception for claims that the trial was unfair. The Petition should therefore be dismissed for lack of jurisdiction insofar as it seeks relief on Count 2.

**Objection No. 5**

For his Fifth Objection, Petitioner complains of "the magistrate's determination that Petitioner failed to present his constitutional issues regarding notice of the charges and his denial of relief on the notice issue in Ground II." (ECF No. 103, PageID 15202). The Warden pleaded that Ground Two was procedurally defaulted by failure to fairly present it to the Ohio Supreme Court as a federal constitutional issue (Return of Writ, ECF No. 73, PageID 13896). Having discussed the law of "fair presentation," the Report concluded Armengau had not fairly presented these claims as required by that body of law (ECF No. 97, PageID 15112-14).

Petitioner objects that ["t]he magistrate's position appears to be based on the Memorandum in Support of Jurisdiction filed with the Ohio Supreme Court in 2017." (Objections, ECF No. 103,

PageID 15203).  That is correct.  In his Reply, responding to the lack of fair presentation defense, Armengau referenced Propositions of Law Propositions III, IV, V and VI, as pleaded on appeal to the Supreme Court of Ohio, to show he had fairly presented these claims. (See Reply, ECF No. 77, PageID 14007).  Rejecting that claim, the Report quoted those Propositions of Law III, IV, and V verbatim and noted that "[o]n their face, these Propositions of Law do not present federal constitutional claims."

> As to Proposition of Law VI, the Report noted
>
> > In arguing the Sixth Proposition of Law, Armengau states "[i]n his direct appeal, Mr. Armengau asserted that this course of litigation functioned to deny him his rights to a fair trial, due process of law, and double jeopardy protections." *Id*. at PageID 8056. Nowhere else in this argument does he mention any federal right or cite any federal case law or state case law referencing the United States Constitution.

(ECF No. 97, PageID 11513). The Report concluded that mere mention of the phrases "fair trial," "due process," and "double jeopardy" did not constitute a fair presentation of federal constitutional claims (Report, ECF No. 97, PageID 15114, citing *Slaughter v. Parker,* 450 F.3d 224, 236 (6th Cir. 2006); *Franklin v. Rose,* 811 F.2d 322, 326 (6th Cir. 1987); *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000), citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2nd Cir. 1984); and *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004))(same). Particularly pertinent here is *Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995) which held "A lawyer need not develop a constitutional argument at length, but he must make one; the words 'due process' are not an argument.

In his Objections, Armengau refers the reader back to Proposition of Law VI and claims the "lack of specificity" in the indictment was raised there (ECF No. 103, PageID 15203).  In the text of the argument on that Proposition of Law, one reads:

> In his direct appeal, Mr. Armengau asserted that this course of litigation functioned to deny him his rights to a fair trial, due process of law, and double jeopardy protections. Specifically, Mr. Armengau asserted that the nature of the amendments to the indictment demonstrated he was tried on facts not presented to the grand jury thus he was tried on unindicted offenses, or alternatively that the State withheld temporal information from the defense. Additionally, Mr. Armengau contended that the indictment, bills of particular, and testimony were not sufficiently specified, such that a patchwork verdict was the result, and the jury's verdict was unlikely to have been unanimous as applied to a multiple-acts case.

(Memorandum in Support of Jurisdiction, State Court Record, ECF No. 72, Ex. 13, PageID 8056).

Armengau has failed to demonstrate how this constitutes a fair presentation of these claims, rather than mere talismanic incantation of constitutional phrases. For example, a claim that one has been tried on unindicted charges does not state a federal claim because there is no federal constitutional right to grand jury indictment in state court. *Hurtado v. California*, 110 U.S. 516 (1884); *Branzburg v. Hayes,* 408 U.S. 665, 687-88 n. 25 (1972); *Gerstein v. Pugh,* 420 U.S. 103 (1975); *Williams v. Haviland*, 467 F.3d 527 (6th Cir. 2006)(*Apprendi* does not change this result).

Armengau also mentions he raised the specific constitutional claim that he received a non-unanimous verdict (Objections, ECF No. 103, PageID 15203). But non-unanimous verdicts were not federally unconstitutional when Armengau was tried and the later incorporation of that right into the Fourteenth Amendment is not retroactively applicable to his case. *Ramos v. Louisiana*, 590 U.S. ___, 140 S. Ct. 1390, 206 L. Ed. 2d 583 (2020); *Edwards v. Vannoy*, 593 U.S. ___, 141 S. Ct. 1547 (2021). One searches the argument on Proposition of Law VI in vain for any citation to federal law at all.

Petitioner rejects the Report's characterization of his argument as merely invoking

"talismanic" constitutional phrases:

> Petitioner did not use "talismanic constitutional phrases"; rather, Petitioner cited three (3) specific Constitutional rights which are guaranteed under the United States Constitution and he also presented the facts and arguments that are within the mainstream of constitutional litigation and, Petitioner respectfully suggests that he has framed his claims in a manner that is sufficiently particular to allege a denial of a *specific constitutional right.*

(Objections, ECF No. 103, PageID 15205).  Yet Armengau used the exact same words – "fair trial" and "due process" – that are condemned in the cited precedent as insufficient.  As for "double jeopardy," Armengau was not claiming on appeal that he was being tried a second time for the same offense.  What, then, is his double jeopardy argument?  It is certainly not to be found in the text of Proposition of Law VI.

Armengau argues he satisfied the fair presentation requirement by "present[ing] a pattern of facts that fall within a mainstream of constitutional litigation." (Objections, ECF No. 103, PageID 15205).  The vast majority of habeas corpus cases are brought *pro se* and we are required to read the pleadings of *pro se* prisoners liberally.  *Haines v. Kerner*, 404 U.S. 519 (1972); *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001).  Although Armengau is proceeding *pro se* and was *pro se* before the Ohio Supreme Court, he is a trained attorney with a specialization in criminal defense work and long experience.  It is certainly not unfair to expect him to do more than claim denials of a "fair trial" and "due process" in an appellate challenge to a conviction.

Armengau relies on *Nian v. Warden*, 994 F.3d 746 (6th Cir. 2021), to show he made a fair presentation of his claims.  In that case the court reiterated the standard for fair presentation from *Hand v. Houk*, 871 F.3d 390, 418 (6th Cir. 2017).  Applying that precedent, the court held:

> It is less clear whether Nian fairly presented his claim to the Ohio Supreme Court, as is required. Nian's *pro se*[4] brief to the Ohio Supreme Court presents a close call on whether he fairly presented his Sixth Amendment claim. That is because Nian did not rely upon state or federal cases employing federal constitutional analysis or

18

explicitly allege, as he had before, that he was denied his right to a fair and impartial panel of jurors. Instead, Nian claimed he was denied his rights to a fair trial. This Court has generally found procedural default when a petitioner made bare assertions of denial of "rights to a fair trial" or "due process." *See, e.g.*, *Blackmon v. Booker*, 394 F.3d 399, 401 (6th Cir. 2004) ("To escape procedural default, claims that the rights to due process and to a fair trial have been violated must of themselves be fairly presented, rather than functioning as catchall language appearing within the presentation of other non-constitutional arguments.").

Nonetheless, Nian's circumstances present a different sort of case because he did not use "rights to a fair trial" as "catchall language." Instead, as Nian argues in his brief: "Mr. Nian was Denied his Rights to a Fair Trial when Prejudicial Extraneous Evidence was presented to the Jury during Deliberations without the Court's approval[.]" (R. 6-1 PageID 208.

994 F.3d at 753. The Sixth Circuit found there was no procedural default because Nian did not use "fair trial" as catchall language, but particularized the way in which he claimed he was denied a fair trial, to wit, by presenting a claim that the jury had been presented with prejudicial information not admitted in evidence. Nian's use of a particularized claim of denial of a fair trial contrasts markedly with Armengau's blank assertion that he was denied a "fair trial" and "due process." And Judge Donald conceded Nian's case was a "close call" on the fair presentation issue. *Id.* at 752.

Petitioner objects that his *"entire argument is of a constitutional nature."* (ECF No. 103, PageID 15208). But which constitution? For example, Armengau has an Ohio constitutional right to indictment, but not a federal right applicable in state court in state court. *Hurtado, supra.* At the time of trial he had an Ohio constitutional right to a unanimous verdict, but not a parallel federal right in state court. *Apodaca v. Oregon*, 406 U.S. 404 (1972), overruled, *Ramos v. Louisiana*, 590 U. S. ___, 140 S. Ct. 1390, 206 L. Ed. 2d 583 (2020). It does not constitute fair presentation of a federal constitutional claim to cite a right arising only under the relevant state constitution.

Petitioner next proceeds for more than thirty pages to argue the merits of his insufficient

indictment claim (Objections, ECF No.103, PageID 15208-41).  But the Report did not address the merits of Ground II because it found Petitioner did not fairly present that ground for relief to the Ohio courts.  The Magistrate Judge has addressed above the objections made to his fair presentation analysis, but no amount of argument now on the merits of Ground II can overcome Petitioner's failure to fairly present those arguments to the Supreme Court of Ohio.

**Objection No. 6**

In his Sixth Objection, Petitioner objects to the Magistrate Judge's recommendation that Ground III be dismissed for lack of fair presentation to the state courts (ECF No. 103, PageID 15241).

As the Report notes, on its face Ground Three as pleaded in the Petition claims Armengau was denied due process and double jeopardy protection when the trial court allowed constructive amendment of the indictment and refused a requested unanimity instruction (ECF No. 97, PageID 15114). But then in his Reply Armengau argued Ground III and Ground VI together under the label "Constructive Amendment, Double Jeopardy, Jury Instructions, Defective Indictment & Notice" and then asserts "This issue is inextricably related to the sufficiency [of the evidence] arguments set-forth above." (ECF No. 97, PageID 15114-15).

The Report recommends dismissal of Petitioner's jury unanimity claim because it was not presented to the Tenth District as a federal constitutional claim (ECF No. 97, PageID 15121). More importantly, Petitioner has repeatedly insisted that he has the right to have some court tell him what facts the jury agreed on as to each count of the indictment.  No such right exists.  While there is a right to jury unanimity, that right is enforced by giving an appropriate jury instruction,

insisting that all jurors sign the relevant verdicts, then allowing a poll of the jury before they are dismissed. There is no procedural mechanism for having a court, either trial or appellate, agree as to what facts the jury found.

Petitioner objects and

> respectfully suggests that the magistrate's position in that "[n]othing in the case suggests that the defendant could have, after the fact, required the jury or an appellate court to tell him what facts they found unanimously." (Doc. 97, PageID 15121). With such a holding Petitioner questions how allied offenses could ever be determined; how appellate review of a sufficiency of the evidence claim could ever be had; how an appellate court could ever determine whether a defendant was convicted upon an uncharged crime; or how could a court determine whether a defendant received multiple punishments for the same offense, or whether a defendant had been previously convicted of the "same crime based on the same facts".

(ECF No. 103, PageID 15248). The answer is that judges deciding these questions do not ask what facts a jury actually found. On the sufficiency of the evidence question, for example, the judge will evaluate what the jury heard and then decide whether a reasonable jury could have found the defendant guilty on the basis of that evidence. On allied offenses, again the decision is based on the evidence the jury heard, not what they agreed were the facts.

As the Report notes, as a federal constitutional matter, the right to jury unanimity was made applicable to the States only after Armengau's trial and the Supreme Court has declined to make it applicable retroactively to cases on collateral review. *Ramos v. Louisiana, supra; Edwards v. Vannoy, supra.* Armengau claims *Ramos* does apply to this case because his appeal from the decision on resentencing is not yet final (Objections, ECF No. 103, PageID 15246, citing the stay of his disbarment proceedings before the Supreme Court of Ohio). Armengau made this claim in his Objections filed here on November 28, 2021. The Supreme Court of Ohio's website shows that court declined to exercise appellate jurisdiction over the Tenth District's resentencing decision

21

in 18AP-300 (*Armengau II*) on October 13, 2020 (Entry, *State v. Armengau*, Case No. 2020-0889, available at www.supremecourt.ohio.gov, visited February 8, 2022).  It may well be, of course, that the Supreme Court has not dissolved its stay because these proceedings are not complete, but these are clearly collateral proceedings.

Petitioner next raises his claim of constructive amendment of the indictment during trial (Objections, ECF No. 103, PageID 15249-50).  Here again his argument fails to distinguish between state and federal Constitutions.  The Ohio Constitution requires that felonies be charged by indictment.  A constructive amendment – presenting evidence on a charge that has not been indicted – violates that Ohio constitutional right.  The United States Constitution in the Fifth Amendment requires that federal felonies – violations of **federal** criminal statutes – be charged by indictment of a federal grand jury.  But the federal Constitution does not require that state felonies be charged by indictment*.  Hurtado, supra.  A fortiori,* a constructive amendment of the indictment during trial in this case, if it happened, does not violate United States Constitution. *United States v. Mize,* 814 F.3d 401 (6th Cir. 2016), cited by Petitioner, is not to the contrary because it involved a federal, not a state trial.

Petitioner next raises his claim that other-acts evidence was improperly admitted against him and that this violates his due process rights (Objections, ECF No. 103, PageID 152550, citing *Katewski v. Greiner,* 212 F. Supp. 2d 78 (E.D.N.Y. 2002); also, *Malloy v. Royce,* 2020 U.S. Dist. LEXIS 171483 (N.D.N.Y. 2020)).  However, the only source of law on which a habeas court can rely for established law is the clear holdings of the United States Supreme Court and the Sixth Circuit has held "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting other bad acts evidence."  *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003), noting that the Supreme Court refused to reach the issue in *Estelle v. McGuire.* 502

U.S. 62 (1991).

The Report notes Armengau's counsel requested a particular jury unanimity instruction, but did not object when it was not given (ECF No. 97, PageID 15123-24).  Failure to object resulted in review for plain error which is, as the Sixth Circuit has repeatedly held, an enforcement of the contemporaneous objection rule and the jury unanimity claim is therefore procedurally defaulted. See cases cited at PageID 15125.

Petitioner argues a series of cases in which he cites state and federal precedent indiscriminately on the variance issue.  An example is *State v. Nickel*, 2009-Ohio-5996 (Ohio App. 6th Dist. Nov. 13, 2009)[5] which he cites for the proposition that "*state courts do apply* the Fifth Amendment indictment requirements to state prosecutions." PageID 15272.  It is true that the Sixth District in that case cites both the Ohio Constitution and the Fifth Amendment as to the requirements of an indictment.  But the citation to the Fifth Amendment is dictum in that the applicability of the Fifth Amendment was not at issue, this being a state prosecution where the Ohio requirements regarding indictments were sufficient to decide the case.  *Hurtado, supra,* which is the relevant holding that the Fifth Amendment Grand Jury Clause is not applicable to the States, is nowhere discussed.

Generalizing, Petitioner argues "[l]iberty interests that are created by state statutes are entitled to the procedural protections of the Due Process Clause of the Fourteenth Amendment." (Objections, ECF No. 103, PageID 15273, citing *Vitek* v. *Jones,* 445 U.S. 480 (1980)).  In *Vitek* Justice White wrote for the Court "We have repeatedly held that state statutes may create liberty

---

[5] This is the full formal citation to *Nickel* which the Magistrate Judge is supplying.  Petitioner's citation is merely "*State v. Nickel*, 2009-Ohio-5996."  PageID 15272.  Petitioner uses this shortened citation form for literally hundreds of case citations in his Objections.  This approach eschews ordinary legal citation practice and requires the reader to retrieve the full case report to make a basic evaluation of its authority – which court wrote the decision, when it was made, and whether it was published or not.  This adds substantially to the burden on the Court of evaluating Petitioner's pleadings.

interests that are entitled to the procedural protections of the Due Process Clause of the Fourteenth Amendment." 445 U.S. at 488.  But the fact that a state statute may create a liberty interest does not imply that every state statute or constitutional provision dealing with criminal cases creates a such a liberty interest.  The Sixth Circuit has held that state-created procedural rights that do not guarantee a particular substantive outcome are not protected by the Fourteenth Amendment, even where such procedural rights are mandatory.  *Pusey v. City of Youngstown*, 11 F.3d 652, 656 (6th Cir. 1993).  "A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable."  *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993).  Neither the Supreme Court nor the Sixth Circuit has ever held that Ohio criminal procedure law, whether embodied in the Ohio Constitution, the statutes, or indeed the Ohio Rules of Criminal Procedure adopted by the Ohio Supreme Court under the Modern Rules Amendment creates a liberty interest enforceable under the Due Process Clause of the Fourteenth Amendment.

Petitioner next "respectfully requests of this court that it consider the analysis of this very Court in *White v. McAninch,* 1998 U.S. [Dist.] LEXIS 23117 [(S.D. Ohio 1998)], to which the R&R makes no reference."  (Objections, ECF No. 103, PageID 15275).  In *White*, Judge Marbley, adopting the recommendation of Magistrate Judge Terry Kemp, found a trial attorney provided ineffective assistance of trial counsel when counsel elicited testimony about an uncharged act of sexual intercourse between defendant and the victim, his stepdaughter, who was under thirteen. The issue in *White* was whether it constitutes ineffective assistance of trial counsel for defense counsel to elicit testimony prejudicial to his client which was excludable under Ohio R. Evid. 404. No such issue exists in this case where Armengau has not claimed ineffective assistance of trial counsel for eliciting damaging testimony.  This is another example of Petitioner's citing case law

that is not in point, then objecting that the Report does not discuss it.

Petitioner next raises a constructive amendment argument:

> A constructive amendment implicates Fifth and Sixth Amendment notice issues. *United States v. Trennell,* 290 F.3d 881 (7th Cir. 2002). A defendant cannot be convicted for an offense outside the scope of the indictment. *United States v. Pierson,* 925 F.3d 913 (7th Cir. 2019). When a constructive amendment occurs and the court overrules the defendant's objections to the impermissible broadening, the error is "reversible per se". *Id* citing *United States v. Leichtnam,* 948 F.2d 370 (7th Cir. 1991).

(Objections, ECF No. 103, PageID 15277). Note that *Trennell*, *Pierson*, and *Leichtnam* are all federal precedents applying the Fifth Amendment to prosecutions in federal court. To repeat what has been said at least three times before in this Supplemental Report, the Fifth Amendment Grand Jury Clause is not binding on the States. *Hurtado, supra; Gerstein, supra.*

Petitioner asserts "The state and federal analysis regarding constructive amendments are identical." (Objections, ECF No. 103, PageID 15277). While federal and state courts may apply identical definitions of the term "constructive amendment," a constructive amendment of a state indictment does not violate the Fifth Amendment because Fifth Amendment Grand Jury Clause is not binding on the States. *Hurtado, supra; Gerstein, supra.* Only violations of the United States Constitution will support habeas corpus relief. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips,* 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983).

For the next four pages (Objections, ECF No. 103, PageID 15278-81), Petitioner cites and analyzes federal precedent analyzing asserted variance situations in federal prosecutions. All of these cases are irrelevant because they all involve application of the Grand Jury Clause to federal prosecutions. To beat a horse which by now should be thoroughly dead, the Grand Jury Clause

does not apply to state prosecutions. *Hurtado, supra; Gerstein, supra.*

**OBJECTION No. 7**

Petitioner's Seventh Objection is to the "magistrate's determination that the issue of defective jury instructions was not fairly presented and or that due to a lack of contemporaneous objection, the issue is barred by procedural default." (ECF No. 103, PageID 15281).

In his Fourth Ground for Relief, Armengau asserts he was denied due process of law when the trial court "denied a requested unanimity instruction and the instructions allowed a non-unanimous verdict and a verdict upon uncharged alleged conduct." (Second Amended Petition, ECF No. 70, PageID 4067). Respondent asserted this Ground for Relief was procedurally defaulted.

The Tenth District found that, although trial counsel requested a particular jury unanimity instruction, he did not object to the instruction actually given and thus waived all but plain error review. *Armengau I* at ¶ 64. Conceding Ohio's contemporaneous objection rule exists, Petitioner asserted the Tenth District had not enforced it (Reply, ECF No. 77, PageID 14082). The Report concluded plain error review constituted enforcement of the contemporaneous objection rule (Report, ECF No. 97, PageID 15125). Petitioner also asserted this Court could hear this claim regardless of the default. (Reply, ECF No. 77, PageID 14083, citing *Osborne v. Ohio*, 495 U.S. 103 (1990)), but the Report found *Osborne* distinguishable (Report, ECF No. 95, PageID 15125-26).

Respondent also argued Ground IV had not been fairly presented to the Supreme Court of Ohio as a federal constitutional claim. Petitioner relied on the language of Propositions of Law I and VI from his Memorandum in Support of Jurisdiction, but the Report concluded "[n]either of

26

these Propositions of Law mentions jury instructions at all or any provision of the United States Constitution" and found Ground Four procedurally defaulted on that basis. *Id.* at PageID 15126-27.

Petitioner objects to the Report's not discussing *Dorsey v. Ed Banks*, 2010 U.S. Dist. LEXIS 102901 (S.D. Ohio 2010)(Objections, ECF No. 103, PageID 15282). Although Petitioner claims this is an opinion of Judge Gregory Frost, it is in fact a report and recommendation of Magistrate Judge Terry Kemp. *Id.* at *1. The claim that was assertedly procedurally defaulted was a claim about the sufficiency of the indictment, not about jury instructions. Judge Kemp wrote

> Because the precise claim being raised here depends not only on the way in which the indictment was worded, but, as in *Valentine*, the way in which the State went about proving its case, this Court is not persuaded that this claim either could or should have been raised in a pre-trial challenge to the indictment.

*Dorsey* at *39-40. The procedural default being urged by the State in *Dorsey* – failure to raise a problem with the indictment pretrial – is entirely different from the default being urged here, to wit, failure to object to a jury instruction as given. Ohio law has long provided that failure to object to jury instructions as given waives, as a corollary to the contemporaneous objection rule, the right to complain of the omission of a requested instruction on appeal. The Tenth District enforced that rule against Petitioner. *Armengau I* at ¶ 64. The Sixth Circuit has repeatedly held Ohio's contemporaneous objection rule is an adequate and independent state ground of decision. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012), *citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000),

*citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982).  In sum, *Dorsey* does not speak to the procedural default found in this case by the Tenth District and upheld in the Report and the default in issue – failure to object to jury instructions as given – is an instance of a long-upheld Ohio procedural rule.

Petitioner's objection about *Dorsey* is typical of many complaints made by Armengau in his 215-page Objections.  He says in effect "I cited a case and the Report doesn't discuss it."  He offers no analysis of the case and makes no attempt to show its relevance to the point for which it is cited.  Because *Dorsey* is the opinion of a respected colleague on this Court, the undersigned felt obliged to read it, although it is over 100 pages long.  Ultimately, it is not relevant.

In the very next paragraph after the irrelevant citation to *Dorsey*, Petitioner writes:

> Petitioner respectfully suggests that fair presentation and or a claim of procedural default must also be evaluated by the proceedings pertaining to the March 27, 2018 resentencing hearing. The magistrate's "analysis" and dispensing of this claim ignores the actual and complete claim in Ground IV. In addition, Petitioner suggests that when constitutional claims regarding unanimity, sufficiency of the evidence, notice of the charges, double jeopardy and issues of constructive amendment are raised, jury instructions are implicated by extension. If a petitioner failed to raise any jury instruction claim but raised the aforementioned constitutional claims, a reviewing court by necessity would be forced to review and consider how a jury may have been instructed.

(Objections, ECF No. 103, PageID 15282).  In other words, Petitioner claims raising one constitutional claim raises all conceivable constitutional claims by implication and extension.  If that were the law, the precedent cited above finding "fair trial" and "due process" insufficient would be dead letter.  It would also completely undermine Ohio appellate practice requirements for specificity in pleading assignments of error.

After eight pages of discussing other issues (PageID 15282-89), Petitioner returns to his analysis of *Dorsey*, again attributing Judge Kemp's analysis to Judge Frost by citing to 2010 U.S.

Dist. LEXIS 10291.  Despite another six pages of discussion of *Dorsey*, Petitioner fails to acknowledge that *Dorsey* is about pre-trial objections to an indictment, not failure to object to a jury instruction as given, which is the default the Tenth District found in this case pursuant to a well-established Ohio procedural rule requiring contemporaneous objection.

At PageID 15296, Petitioner apparently switches to discussing his resentencing.  The Tenth District found that Petitioner's claims made in his motion to dismiss pre-resentencing were barred by *res judicata* and the law of the case.  *Armengau II* at ¶ 8.  Petitioner argues "Res Judicata cannot apply because the *resentencing errors* occurring from these constitutional violations could only be raised after resentencing." *Id.* at PageID 15297.  However, the contours of a State's *res judicata* doctrine are questions of state law on which we are bound, per precedent cited above, by the state court's decision.

**OBJECTION No. 8**

In his Eighth Objection Armengau "respectfully objects to the magistrate's determination denying Petitioner's claim that he was denied a fundamentally fair trial." (ECF No. 103, PageID 15299, citing the Report at Doc. 97, PageID 15127-15128).

The cited pages of the Report do not address some sort of freestanding denial of fair trial claim.   Instead, they recommend upholding Respondent's procedural default defense to Petitioner's prosecutorial misconduct claim, the Fifth Ground for Relief.  The Report found Armengau presented his other-acts evidence claim to the Tenth District as a trial court error claim, rather than a prosecutorial misconduct claim. *Id.* Armengau now claims that "based on the foundational arguments in Proposition VI, where Petitioner specifically described the course of litigation as depriving him of a fair trial and specifically asserting the constitutional right."

(Objections, ECF No. 103, PageID 15299, citing Memorandum in Support of Jurisdiction, State Court Record, ECF No. 72, PageID 8053-57).

The insufficiency of Proposition of Law VI in fairly presenting issues of constitutional law to the Supreme Court of Ohio is discussed above.  But what is at issue with this Ground for Relief is not fair presentation to the Ohio Supreme Court, but to the Tenth District, where, as noted, the other-acts claim was presented as a trial court error assignment.  Under habeas law, claims must be presented fairly at every stage of the state court proceedings.  *Wagner v. Smith,* 581 F.3d 410, 418 (6th Cir. 2009).

**Objection No. 9**

Petitioner objects in his Ninth Objection "to the magistrate's determination regarding Petitioner's challenge to subject matter jurisdiction."  (ECF No. 103, PageID 15300).  Petitioner raised this claim as part of his Sixth Ground for Relief and the Report recommends denying it on the merits because, fundamentally, the Common Pleas Court is the Ohio court with trial jurisdiction for felony offenses (ECF No. 97, PageID 15129).  The Report also notes Armengau never raised this claim on direct appeal.  *Id.*

Having pleaded this as a subject matter jurisdiction claim, Petitioner argues it in his Objections as a fair notice claim (ECF No. 103, PageID 15300-01). Armengau then makes the logical leap from lack of notice to lack of jurisdiction:  "Where an indictment fails to provide the accused with sufficient notice of the charges, a trial court does not possess jurisdiction. *State v. Allen*, 2018-0hio-878 [(Ohio App. 6th Dist. Mar. 9, 2018)]. See, *Davis v. Eppinger*, 2019 U.S.

Lexis 24501." *Id.*[6]  In *Allen*, the court rejected a claim, frequently made by *pro se* habeas petitioners, that there was no subject matter jurisdiction because he was directly indicted without a prior complaint in municipal court.  That was the issue being decided; the court's comment about sufficient notice in an indictment is dictum.  In *Davis* Judge Polster dismissed the habeas petition at the Rule 4 screening stage because Davis had not exhausted available state court remedies and jurisdiction is properly a question of state law.

In any event, Petitioner has not overcome his procedural default in failing to present his subject matter jurisdiction claim to the Ohio courts.

**OBJECTION No. 10**

In his Tenth Objection, Armengau objects to the Report's proposed disposition of his equal protection claim (ECF No. 103, PageID 15302).  Armengau's Seventh Ground for Relief claims he was denied equal protection of the laws when both the Tenth District and the Supreme Court of Ohio "intentionally disregarded the law set by their respective courts and the United States Supreme Court in order to affirm the convictions." His theory is that "[t]he holdings and rulings in Petitioner's case are contrary to established precedent." (Quoted in Report, ECF No. 97, PageID 15130).

> Petitioner respectfully suggests that the case law he has cited throughout his petition and this reply specifically identifies him as similarly situated to defendants who have obtained relief under identical issues and material facts and that the court system has disregarded the law they have established in order to affirm the convictions.

---

[6] This citation exemplifies Petitioner's carelessness with citations.  As cited in the Objections, *Davis* purports to be a decision of the United States Supreme Court.  Actually it is a decision of the United States District Court for the Northern District of Ohio; the correct LEXIS citation is 2019 U.S. **Dist**. LEXIS 24501

(Reply, ECF No. 77, PageID 14087-88). He then proceeds to discuss at length other allegedly similarly-situated defendants who have obtained relief in similar circumstances. *Id.* at PageID 14089-91.

Respondent argued that only state law questions were involved, but the Magistrate Judge disagreed. If a state court judge intentionally departed from precedent to convict Black defendants in red light cases, for example, that would be an Equal Protection violation. But the Report rejected Petitioner's Equal Protection claim on the ground it had not been fairly presented to the Ohio courts as a federal constitutional claim in this case (Report, ECF No. 97, PageID ECF No. 15132).

In his Objections, Petitioner relies on *Reyes v. Warden*, 2017 U.S. Dist. LEXIS 219670 (N.D. Ohio 2017), in which he claims

> [T]he United States District Court determined that the Ohio Court of Appeals violated petitioner's due process rights and his equal protection of the law by refusing to grant his post-conviction petition, when petitioner met the requirements under R.C. 2953.23 (A)(l). *The Equal Protection violation was based on a state-law issue.*

(ECF No. 103, PageID 15303). A more thorough misrepresentation of the holding of a case is hard to imagine. The Northern District found no violation of the Equal Protection Clause or any other constitutional protection. The Equal Protection Clause is not even mentioned in the opinion. The cited opinion is Magistrate Judge Greenberg's report and recommendation, but it was adopted by District Judge John Adams who also denied a certificate of appealability. 2018 U.S. Dist. LEXIS 51907 (N.D. Ohio Mar. 28, 2018). Why Petitioner believes *Reyes* supports his position is a complete mystery.

Even if *Reyes* or some other precedent supported Petitioner's Equal Protection theory, that would not overcome his failure to present the claim to the Ohio courts. The Magistrate Judge adheres to his prior recommendation: Petitioner's Equal Protection claim should be dismissed on

the merits and for failure to fairly present it to the Ohio courts as a federal constitutional claim.

In the midst of this argument, Petitioner accuses the Magistrate Judge of gratuitously insulting him:

> The issue isn't as the magistrate states as to whether others weren't charged with crimes (Are there other men accused of sexual misconduct by multiple women who have not been prosecuted because they were not successful criminal defense lawyers?) (Doc. 97, PageID 15132). The issue is whether others, charged with the same crimes, with the same legal issues, had the law applied differently than did Petitioner. The magistrate's opinion that Petitioner was not a successful criminal defense attorney does nothing with respect to the required analysis; it simply serves to confirm his desire to insult Petitioner, because he can.

(Objections, ECF No. 103, PageID 15304).  Petitioner misreads the Report in this regard.  He claimed several times in his pleadings that he was targeted because he **was** a successful criminal defense lawyer.  The usual equal protection claim in criminal cases is one of selective prosecution; a defendant alleges he was targeted for prosecution because of some invidious classification, such as race.  To have made out a case of selective prosecution here, Armengau would have had to show that other criminal defense lawyers who abused women were not prosecuted because they did not pose as much of a threat to law enforcement as Armengau.  Petitioner never made or attempted to make such a case.  And the Report intended no insult at all; it accepted Petitioner's hypothesis that he might have been targeted for prosecution because of his successful practice.

Petitioner then proceeds for four pages (PageID 15304-07) to argue why his case is no different from four others who obtained relief from the same constitutional violations he claims.  Such cases are appropriately evaluated under the doctrine of stare decisis.  Petitioner points to no Supreme Court holding that violation of stare decisis also violates the Equal Protection Clause.

At the end of this section, Armengau writes: "Aside from being similarly situated as other defendants facing the same charges, Petitioner is a Hispanic male and suggests he is in a protected

33

class and subject to the same equal protection as non-Hispanic defendants" (ECF No. 103, PageID 15306). The Fourteenth Amendment applies to all persons in the United States and certainly protects Hispanic persons from discrimination of the basis of their being Hispanic. But where in this case has Armengau every before claimed to have been the victim of discrimination against him on the basis of his being Hispanic?

**OBJECTION No. 11**

In his Eleventh Objection, Petitioner objects to the Magistrate Judge's determination that he does not qualify under the facts of this case for the actual innocence excuse of procedural default (ECF No. 103, PageID 15307). He concedes that he "has raised his actual innocence claim based not upon any post-trial or postconviction evidence that was newly discovered. But newly-discovered or at least newly-presented evidence is the absolute *sine qua non* of the actual innocence exception. *Schlup v. Delo*, 513 U.S. 298 (1995); *McQuiggin v. Perkins,* 569 U.S. 383 (2013); *Souter v. Jones,* 395 F.3d 577 (6th Cir. 2005).

**OBJECTION No. 12**

In his Tenth Ground for Relief, Petitioner asserts he was denied his right to trial by jury because the factual bases of his convictions were determined by the trial and appellate judges instead of the jury. Petitioner added this claim by amendment, asserting it arises under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The Report rejects this claim for lack of any clearly established Supreme Court law supporting it. The Objections contain no Supreme Court precedent to the contrary. No further analysis is needed.

**OBJECTION No. 13**

In his Thirteenth Objection, Petitioner "objects to the magistrate's R&R denying relief based upon Petitioner's unanimity claims as they pertain to both his convictions and sentencing/resentencing." (ECF No. 103, PageID 15315).

As the reader will have noticed, Petitioner argues his claims are "intertwined" and one claim is often re-presented as part of another claim. The Magistrate Judge will at this point attempt to deal with claims that are raised only in this portion of the Objections.

### Fair Presentation of the Juror Unanimity Claim

Petitioner first argues:

> The magistrate suggests the issue is procedurally defaulted because Petitioner presented the issue under Ohio Crim. P. R. 3l(A) and not as a federal Constitutional claim (Doc. 97, PageID 15120-15120). With all due respect, presenting one presents the other as raising an identical state law claim suffices to present the federal claim. The R&R fails to note the authority cited by Petitioner in support of this issue. See, *Nadworny v. Fair,* 872 F.2d 1093 (1st Cir.); *Verdin v. O'Leary,* 972 F.2d 1467 (7th Cir.) (Presenting a state law claim that is functionally identical to a federal law claim suffices to effectuate fair presentment of the latter claim).

(Objections, ECF No. 103, PageID 15315). The Report recommended dismissing the jury unanimity claim because it had not been fairly presented to the Tenth District as a federal constitutional claim, but rather under Ohio R. Crim. P. 31(A)(ECF No. 97, PageID 15121).

Petitioner asserts that presenting one presents both, relying on precedent from other circuits. In *Nadworny v. Fair,* 872 F.2d 1093 (1st Cir. 1989), a *pro se* non-lawyer petitioner overcame a lack of exhaustion defense as the First Circuit generated new law on the fair presentation question. Judge Selya wrote for the Court:

> In this area of federal-state relations, the exhaustion principle is the disputatious sentry which patrols the pathways of comity. A habeas petitioner must have presented both the factual and legal underpinnings of his claim to the state courts in order for us to find it exhausted. *Picard*, 404 U.S. at 276-77; *Martens v. Shannon,* 836 F.2d 715, 717 (1st Cir. 1988); *Gagne*, 835 F.2d at 7. The fair presentation of facts has generated little ado. Rather, as a legion of our cases attest, it is the latter prong of the *Picard* postulate - the sufficiency with which the applicant's legal theory was presented - which has much bedeviled courts. See, e.g., *Lanigan v. Maloney*, 853 F.2d 40, 44 (1st Cir. 1988); *Mele v. Fitchburg District Court,* 850 F.2d 817, 823 (1st Cir. 1988); *Martens*, 836 F.2d at 717; *Gagne*, 835 F.2d at 7; *Dyer v. Ponte,* 749 F.2d 84, 86-87 (1st Cir. 1984); *Dougan v. Ponte,* 727 F.2d 199, 200-01 (1st [*1097] Cir. 1984); *Williams v. Holbrook,* 691 F.2d 3, 6 (1st Cir. 1982). Though we believe our search for the legal substance of prior presentment has been relatively consistent, we acknowledge that our post-Picard peregrinations[7] have employed a varied vocabulary to describe the applicable standard. In the interests of uniformity, we sense that the time has come to crystallize our meaning.

872 F.2d at 1096-97. Because the key issue involved is comity between state and federal courts, the exhaustion doctrine seeks to assure the state courts have been given a fair opportunity to rule on the federal constitutional issue.

> A claim in state court may well present an echo of a federal claim, but one not "likely to alert the court to the claim's federal nature." *Daye*, 696 F.2d at 192. Comity, as we conceive it, would be ill-served if the presentation, while embodying a nascent federal claim, so focused attention on state-law aspects as to mask its federal qualities. Exhaustion necessarily requires "more than scatter[ing] some makeshift needles in the haystack of the state court record . . . [;] references which hint that a theory may be lurking in the woodwork will not turn the trick." *Martens*, 836 F.2d at 717. As the Court has decreed, a "constitutional claim [which] inhere[s] in th[e] facts" is insufficient; it must be "brought to the attention of the state courts." *Picard*, 404 U.S. at 277. The appropriate focus, therefore, centers on the likelihood that the presentation in state court alerted that tribunal to the claim's federal quality and approximate contours.

872 F. 2d at 1098. *Nawordny*, decided in 1989[8], is completely consistent with the Sixth Circuit's

---

[7] Judge Selya is well-known for his command of an extensive English vocabulary.

[8] Although *Nawordny* is consistent with *Hand*, applying pre-AEDPA precedent risks unintended consequences

standard on fair presentation from *Hand v. Houk*, 871 F.3d 390 (6th Cir. 2017):

> A claim is fairly presented if the petitioner
>
> (1) relied upon federal cases employing constitutional analysis; (2) relied upon state cases employing federal constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law.

*Id.* at 418. In the second extra-circuit precedent cited by Petitioner, the Seventh Circuit has held that both the operative facts and the controlling legal principles must be presented to the state court. *Verdin v. O'Leary*, 972 F.2d 1467 (7th Cir. 1992), *citing Picard v. Connor*, 404 U.S. 270, 277 (1971), and *Tamapua v. Shimoda*, 796 F.2d 261 (9th Cir. 1986)(Kozinski, J.).

In his alleged fair presentation of the jury unanimity issue as a federal constitutional issue, Armengau himself wrote:  "In Ohio, jury unanimity is required by Crim.R. 3l(A), **not the federal Constitution.** *State v. Gardner,* 118 Ohio St.3d 420, 2008-Ohio-2787, 889N.E.2d 995." (Emphasis added.)  Indeed, the Ohio Supreme Court expressly recognized that the United States Constitution did not require unanimous state court verdicts. 118 Ohio St. 3d at 426, citing *Apodaca, supra.* Citing *Gardner* to the Tenth District would plainly have directed its attention away from any federal constitutional claim.

The Magistrate Judge remains persuaded this claim is procedurally defaulted by failure to fairly present it to the Tenth District as a federal constitutional claim.

### Asserted Applicability of *Ramos*

Petitioner asserts that despite *Edwards v. Vannoy*, 593 U.S. ___, 141 S. Ct. 1547 (2021),

---

because AEDPA imposed both a new statute of limitations on habeas cases and a strengthened second-or-successive petition bar.  For example, before AEDPA a petitioner dismissed for lack of exhaustion could re-file after he had exhausted.  Now he faces a limitations issue.  See *Duncan v. Walker,* 533 U.S. 167 (2001)(a prior habeas petition is not an application for state collateral review and therefore does not toll the statute under § 2244), and *Rhines v. Weber*, 544 U.S. 269 (2005).

he is entitled to the benefit of *Ramos v. Louisiana*, 590 U. S. ___, 140 S. Ct. 1390, 206 L. Ed. 2d 583 (2020).  This issue is dealt with above.

**Objection No. 14**

In his Fourteenth Objection, Armengau objects generally to the Magistrate Judge's fair presentation analysis (ECF No. 103, PageID 15325, et seq.).  He claims he "cited three (3) specific guarantees (Due Process, Double Jeopardy and Fair Trial)" in his Memorandum in Support of Jurisdiction in Ohio Supreme Court Case No. 17-1074, his appeal from *Armengau I*.  Yet all of the relevant precedent, both from the Sixth Circuit and other precedent cited by Armengau himself (e.g. *Nawordny*) holds that "fair trial" and "due process" are not specific enough.  See, for example, *Nawordny*:

> [W]e have held that merely alleging the lack of a fair trial fails the particularity requirement of the third guideline. *Dougan*, 727 F.2d at 201; see also *Gagne*, 835 F.2d at 7 ("oblique" invocation of phrase "due process" not enough); *Dyer*, 749 F.2d at 86-87 ("cursory references" to due process and fourteenth amendment raise doubts about adequacy of presentment).

872 F. 2d at 1097.

Later in this Objection, Petitioner contends "In Petitioner's Propositions I, III, IV, V and VI, to the Ohio Supreme Court, issues regarding the admission of other-act evidence go directly and only to, issues of a fair trial and due process." (Objections, ECF No. 103, PageID 15332).  As noted above, the United States Supreme Court has never held admission of other acts evidence violates either the Due Process Clause or the right to a fair trial.  *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003), noting that the Supreme Court refused to reach the issue in *Estelle v. McGuire*. 502 U.S. 62 (1991).

38

Regarding fair presentation of his due process, double jeopardy and fair trial claims, Petitioner argues

> In Proposition VI, in addition to citing the specific guarantees provided by the United States Constitution, Petitioner referenced Crim.R. 7(D). Crim. R. 7(D) as defined by the Ohio Supreme Court, was derived out of due process, double jeopardy, notice and fair trial concerns in connection with indictments, bills of particulars and amendments.

(Objections, ECF No. 103, PageID 15333).  But the fair presentation requirement is not satisfied by pointing to state law and saying that it is "derived" from the same concerns as some federal constitutional provision.  What provision of the Ohio Rules of Criminal Procedure is not concerned with providing a fair trial or due process of law?

Applying the fair presentation requirement, the Sixth Circuit has recently held:

> Principles of comity require that we not seek to upset a state court conviction on the basis of an alleged constitutional violation that the state court never had an opportunity to correct. *See Rose v. Lundy*, 455 U.S. 509, 518 (1982). "Accordingly, we have required a state prisoner to present the state courts with the same claim he urges upon the federal courts." *Lyons v. Stovall*, 188 F.3d 327, 331–32 (6th Cir. 1999) (quoting *Picard v. Connor*, 404 U.S. 270, 276 (1971)).

*Allen v. Mitchell*, 953 F.3d 858 (6th Cir. 2020).

Petitioner's fair presentation arguments often have an "any d----- fool can see" quality to them.  For example, he contends "It is difficult to conceive that a judge or justice would not be alerted to a federal and state constitutional problem when they are specifically told that a prosecutor is seeking conviction for crimes they admit they *never indicted."* (ECF No. 103, PageID 15340).  There is no "federal constitutional problem" with trying a person on a crime for which he or she has not been indicted, because the Grand Jury Clause of the Fifth Amendment does not apply to the States.  *Hurtado, supra; Gerstein, supra.*

The Objections have not shown error in the Report's fair presentation analysis and Objection Fourteen should therefore be overruled.

**Objection No. 15 – Resentencing**

Regarding re-sentencing Petitioner asserts:

> The R&R dispenses with any and every constitutional challenge raised by Petitioner with regard to his resentencing proceedings, ignoring United States Supreme Court precedent and Ohio Supreme Court precedent, holding that Constitutional due process does apply to sentencing proceedings. Fundamental principles of due process and fundamental fairness apply with no less force at a sentencing phase than at trial.

(Objections, ECF No. 103, PageID 15346).  Prior to re-sentencing, Petitioner filed motions to dismiss based on most of the claims he makes here.  Both the trial court and the Tenth District held these arguments were foreclosed by *res judicata* and the law of the case doctrine.  *Armengau II* at ¶ 8.  Petitioner responds that "[a]n incorrect application of a state *res judicata* rule does not constitute reliance on an adequate and independent state ground."  (Objections, ECF No. 103, PageID 15348, citing *Wogenstahl v. Mitchell*, 668 F.3d 307 (6ᵗʰ Cir. 2012)[9].  While the Sixth Circuit endorsed the proposition for which Petitioner *Wogenstahl*, it also held the Ohio courts' application of *res judicata* in that case was correct under Ohio law and it affirmed denial of the claim in question as procedurally defaulted.

*Wogenstahl* turned on Ohio's distinction in adjudicating ineffective assistance of trial counsel claims on the appellate record as opposed to evidence dehors the record, i.e. direct appeal for claims based on the appellate record, post-conviction for claims based on evidence dehors the

---

[9] *Wogenstahl* is a capital habeas corpus case arising out of this Court.

record. Petitioner here cites no basis on which this Court could find that the Tenth District did not correctly apply Ohio *res judicata* law or law of the case doctrine.

**Conclusion**

Having reconsidered the case in light of the Objections, the Magistrate Judge again respectfully recommends that the Petition be dismissed with prejudice. Reasonable jurists could disagree with the proposed disposition of Grounds One (sufficiency of the evidence) and Three (double jeopardy); Petitioner should therefore be granted a certificate of appealability as to those Grounds. Because reasonable jurists would not disagree with dismissal of the other Grounds for Relief, it is also recommended that Petitioner be denied a certificate of appealability as to those Grounds. Petitioner should be permitted to proceed on appeal *in forma pauperis*.

February 14, 2022.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.