**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **JAVIER ARMENGAU,** | : | |
| | : | |
| **Petitioner,** | : | |
| | : | **Case No. 2:19-cv-01146** |
| **v.** | : | |
| | : | **Chief Judge Algenon L. Marbley** |
| **WARDEN, LONDON CORRECTIONAL** | : | **Magistrate Judge Michael R. Merz** |
| **INSTITUTION,** | : | |
| | : | |
| **Respondent.** | : | |

## OPINION & ORDER

### I.    INTRODUCTION

In 2014, Petitioner Javier Armengau was convicted by a jury in the Franklin County Court of Common Pleas for nine (9) counts of sex-related crimes, including public indecency, gross sexual imposition, rape, and sexual battery. Armengau, formerly a criminal defense attorney, was found to have coerced employees, clients, and clients' family members and loved ones to engage in sexual relations with him. Consistent with the practices of his past profession, Armengau has filed numerous appeals seeking to have his convictions overturned or, in the alternative, to have a new trial granted. Having met with little success in state appellate courts, he now seeks federal collateral review in this Court.

This matter is now before the Court on Petitioner's Second Amended Petition (ECF No. 70) and the considerable number of Magistrate Judge recommendations and Petitioner objections that have been filed subsequently. Specifically, Petitioner has filed objections to the Magistrate Judge's Report and Recommendation (ECF No. 97), which recommended dismissing Petitioner's amended petition for writ of habeas corpus on all grounds. (ECF No. 103 ("Initial Objections")).

He has also filed a second set of objections to the Magistrate Judge's Supplemental Report and Recommendation (ECF No. 118), which analyzed and addressed Petitioner's Initial Objections. (ECF No. 123 ("Supplemental Objections")).  Finally, Petitioner has objected three times to the Magistrate Judge's decisions to exclude various exhibits filed by Petitioner.  (ECF Nos. 78, 111, 117).  For the reasons set forth below, Petitioner's Objections (ECF Nos. 78, 111, 117) to the denial of exhibits and exclusion of supplemental authority are **OVERRULED** and the Magistrate Judge's Substituted Decision and Order Regarding Exhibits (ECF No. 71), Order Denying Petitioner's Motion to Add Exhibit X (ECF No. 110), and Supplemental Memorandum Opinion (ECF No. 116) are **ADOPTED**.  Petitioner's Objections (ECF Nos. 103, 123) are **OVERRULED**; accordingly, the Magistrate Judge's Report and Recommendation (ECF No. 97) and Supplemental Report and Recommendation (ECF No. 123) are **ADOPTED AS MODIFIED**.  Petitioner's Second Amended Petition (ECF No. 70) is **DISMISSED WITH PREJUDICE**.

## II.    BACKGROUND

### A.    Factual Background

Petitioner was indicted on May 13, 2013, by the Franklin County, Ohio, Grand Jury on three counts of kidnapping, in violation of Ohio Rev. Code § 2905.01, one count of public indecency in violation of Ohio Rev. Code § 2905.09, three counts of gross sexual imposition in violation of Ohio Rev. Code § 2905.05, six counts of rape in violation of Ohio Rev. Code § 2905.02, and five counts of sexual battery in violation of Ohio Rev. Code § 2905.03.  (ECF No. 73 at 12).  The Ohio Tenth District Court of Appeals recounted the proceedings of Petitioner's jury trial as follows:[1]

---

[1] This Court presumes that the state appellate court's determination of the facts of Petitioner's case is correct. *See* 28 U.S.C. § 2254(e)(1).  Petitioner has also produced his own account of the underlying facts, which does not add new information relevant to his claims and generally appears crafted to demonstrate the alleged insufficiency of the

## I. PROCEDURAL BACKGROUND

{¶ 2} During the period of the indicted offenses, appellant was an attorney licensed in Ohio, with a central Ohio general practice that over time became focused on criminal defense work. The women who accused him of sexual misconduct were clients or relatives of clients; two of the accusers also worked in appellant's law offices.

{¶ 3} Columbus police began investigating appellant in 2013 after one of the accusers, C.C., hired appellant to represent her son in criminal proceedings and complained of appellant's unwanted physical advances. After appellant's arrest at the termination of that investigation, other accusers began coming forth, leading to an 18-count indictment issued by the Franklin County Grand Jury alleging crimes victimizing five different women: Counts 1, 2, and 3 alleged kidnapping, public indecency, and gross sexual imposition involving accuser C.C., all occurring on or about April 4, 2013. Counts 4 and 5 alleged rape and kidnapping involving accuser L.G., arising out of a single incident occurring between August 1 and August 31, 2008. Counts 6 and 7 alleged sexual battery and gross sexual imposition involving accuser A.C., occurring between January 1, 1998, and December 31, 2010. Count 8 alleged gross sexual imposition involving accuser K.R., occurring between August 8 and September 17, 2008. Counts 10 through 13 alleged rape involving accuser L.M. Count 14 alleged kidnapping involving L.M. in connection with one of the rape counts. Counts 15 through 18 alleged sexual battery against L.M. All the counts involving L.M. alleged conduct occurring between January 1, 2002, and December 31, 2008. All counts involving all accusers alleged that the criminal conduct occurred in Franklin County, Ohio.

{¶ 4} The state provided a bill of particulars on June 1, 2014, amended it on the eve of trial on June 6, 2014, and further amended it at the close of the state's case on June 22, 2014. The state, over objection, also verbally amended the indictment during trial to conform to certain testimony. The specifics of these amendments are more extensively developed below in connection with appellant's first and sixth assignments of error.

## II. TRIAL PROCEEDINGS

---

evidence presented at trial, rather than simply stating the facts of the case. (*See* ECF No. 103 at 6–21; ECF No. 123 at 7–23). The Magistrate Judge noted that Petitioner only made one assertion of fact contrary to a Tenth District finding, but did not support that assertion with clear and convincing evidence. (ECF No. 118 at 6). Petitioner's statement of facts in his Supplemental Objections (ECF No. 123 at 7–23) appear to be taken verbatim from the corresponding section of his Initial Objections (ECF No. 103 at 6–21), except for an introductory paragraph; in other words, the Supplemental Objection does not add new information not considered by the Magistrate Judge in the Supplemental Report and Recommendation, nor does it alter the conclusion that Petitioner's sole dispute of fact is not supported by clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998). Accordingly, this Court does not supplement the Tenth District's summary with Petitioner's commentary.

{¶ 5} The prosecution relied chiefly on the testimony of the five accusers. In addition, three other similarly situated women testified as other-acts witnesses regarding events that did not give rise to further criminal charges. Two of these described appellant's conduct in connection with consensual sexual relationships, and one testified regarding appellant's offensive conduct or statements towards her.

{¶ 6} The first accuser that testified at trial was C.C. She stated that she hired appellant to represent her son in a criminal matter, and met with appellant at his office on South High Street in Columbus. On April 4, 2013, C.C. received a call from appellant's secretary asking her to come to appellant's Columbus office to discuss the upcoming trial. During the course of their interview, appellant retrieved a legal file and sat next to C.C., brushing up against her. Appellant then opened the file, C.C. testified, and when the file fell to the floor, he gripped C.C.'s left arm firmly and put his right arm down her shirt, pulling her bra away from her breasts. C.C. testified that she was unable to move during this episode because of appellant's physical restraint. C.C. then attempted to readjust her clothing, and realized that appellant had stood up and unzipped his pants, placing his penis before her face. C.C. was offended, and quickly left the office, calling a friend to pick her up. She later called her sister, K.C., to complain of the episode.

{¶ 7} K.C. herself testified to confirm the phone call from C.C. She described her sister as frantic during the call, which prompted K.C. to advise C.C. to call the police.

{¶ 8} After C.C. reported the incident to the Columbus police, investigators contacted C.C. and asked her to set up further meetings with appellant that could be recorded as evidence. She exchanged several recorded phone calls with appellant and eventually met him at a restaurant, where their conversation was recorded and observed by police. During this meeting, appellant again made unwanted advances towards C.C. by repeatedly putting his hand on her thigh, and did not deny his prior conduct during their meeting at his office. In the course of C.C.'s testimony, these recordings were played for the jury in open court.

{¶ 9} Officer Jeffrey Cain, of the Columbus Division of Police, testified that he went to C.C.'s apartment on April 4, 2013, to take the report of a sexual assault.

{¶ 10} Corporal Jeff Zech, of the Franklin County Sheriff's Office, testified regarding the technical aspects of the audio recording process used for the restaurant meeting between C.C. and appellant.

{¶ 11} Detective Jason Sprague, of the Columbus Division of Police, testified regarding the preparations for the restaurant meeting between C.C. and appellant. He was in the vicinity during the meeting but had difficulty picking up the conversation because recording sound was poor. After appellant's arrest upon leaving the restaurant, Detective Sprague participated in a recorded interview with appellant at the police station.

4

{¶ 12} During Detective Sprague's testimony, the recording of appellant's post-arrest interview was played in open court.  In this interview, appellant described in detail his recent meeting with C.C. at his office regarding her son's case.  He denied any inappropriate conduct on his part towards C.C. on that or any other occasion.  He professed to be baffled by some of C.C.'s text messages and phone calls that contained flirtatious or sexual references, and stated that he had previously asked her to refrain from such comments.

{¶ 13} Detective Jeffery Ackley, of the Columbus Division of Police, testified about his participation in the investigation.  He acted as security backup and an observer during the restaurant meeting.  His visual observations corroborated C.C.'s testimony regarding appellant's physical actions, although the ambient noise prevented him from overhearing their conversation directly.  He was able to make a partial video recording of the meeting using his personal recording device, and this was later transferred to CD by investigators.  The video was partially played for the jury but did not include any of appellant's alleged physical advances.

{¶ 14} On cross-examination of C.C., defense counsel played a video recording made in Columbus police facilities during a telephone conversation between C.C. and her incarcerated son, who was awaiting trial for aggravated murder and other charges.  In the recorded conversation, C.C. several times assured her son that, due to the developing conflict with appellant, the son would receive not only new defense counsel but a different prosecutor and judge for his case.  Upon further questioning, C.C. testified that she felt that these changes would benefit her son, because she was dismayed by the harsh 43–year sentence offered to her son in plea discussions, and doubted whether appellant had obtained the best available result.

{¶ 15} In his testimony at trial regarding C.C.'s accusations, appellant denied any inappropriate conduct towards C.C.  He described his representation of her son against several extremely serious charges, including aggravated murder.  Appellant testified that his primary contact was with other family members or his jailed client via telephone, because C.C., after two brief initial meetings, made herself unavailable.  While other family members came to various court hearings, C.C. did not.  After several months, in April 2013, the trial date approached and appellant advised his client that the prosecution's 43–year offer was preferable to trial and a life sentence.  Appellant felt that the state had put together a very solid investigation and his client would have little chance in front of a jury, and a plea to the indictment without an agreed sentence would result in more time.

{¶ 16} Appellant testified that prior to the April 4 meeting, he instructed his assistant to contact C.C. and arrange a meeting to update C.C. regarding the case.  The meeting was arranged for April 4, and C.C. arrived as agreed.  Her behavior struck him as odd.  He asked about an individual that she had previously introduced to him as her husband, and she laughed and stated that she had this individual arrested.  They then discussed her son's case, and C.C. expressed extreme disappointment with the plea offer.  Appellant explained the situation to her and

5

showed her some of his case notes. He denied sitting next to her on the office couch or touching her in any way. He was taken aback when C.C., on leaving the office, asked if he would like to have dinner some time.

{¶ 17} Appellant testified that the next day he learned from his client, C.C.'s son, that the client no longer wanted to accept the plea deal. C.C. then called him, and, in one of the conversations that he later learned was recorded by her at police request, asked for a dinner meeting to further discuss her son's plea. During the phone call, C.C. made several flirtatious or sexually charged remarks, which appellant deflected. He was not particularly put off by this because he considered C.C. to be somewhat unstable or unpredictable, and in any case he had experienced flirtatious comments from other clients and could usually steer such conversations back to business without difficulty. Appellant then described the meeting with C.C. at the restaurant, and denied putting his hand on her thigh or touching her inappropriately.

{¶ 18} The defense called S.K., C.C.'s former roommate. She testified that, in March 2013, C.C. approached her about blackmailing appellant. C.C. appeared frustrated by appellant's representation and the poor plea offer made by the state in her son's murder case. C.C. was also upset about the amount of money she had paid appellant for her son's representation. C.C. told S.K. that she had lied regarding the sexual incident so that she could sue appellant and get a new attorney for her son. She promised to give S.K. a car if S.K. would participate in the blackmail scheme. S.K. refused to participate when she learned that appellant had been arrested, whereupon C.C. kicked S.K. out of their shared apartment.

{¶ 19} The second accuser to appear at trial was A.C. She testified that she began working for appellant in the late 1990's, during the time that appellant represented her in a custody dispute. Appellant's principal office at the time was in Marion, Ohio. A.C. worked for appellant for over seven years, and she eventually resided in one of his rental properties. Early in the working relationship, A.C. testified appellant approached her when she was working in his Marion office, rubbed her shoulders, put his hands down her shirt, and eventually requested that she perform oral sex. She acquiesced. These incidents went on for some time, including an incident when she was in his Columbus office during 2005 or 2006. She could provide no specific dates for any of the incidents except for one occurring on September 11, 2001. On direct and cross-examination, A.C. agreed that she has a lengthy history of disabling mental illness and experienced many civil and criminal legal difficulties as a result. She stated that the sexual activity with appellant was "to an extent" consensual, but that at the time she felt she had little choice but to comply with his demands. (Tr. at 834.)

{¶ 20} Appellant testified that he first met A.C., as she had testified, during representation of her in a custody matter in 1999. He agreed that she had worked for him off and on over the years and had rented a home from him. Appellant denied having any sexual relationship of any kind with A.C. He represented her on

numerous legal matters, some arising from her mental health issues, which often led to run-ins with police. This legal representation ended when A.C. complained that appellant was taking too long obtaining a dissolution for her.

{¶ 21} The third accuser to testify was L.G., who testified that she met appellant in 2006 or 2007 when she retained appellant to represent her son in a legal matter. Their interactions began professionally, but she claimed appellant soon began acting inappropriately. She claimed that at one point, appellant demanded oral sex in exchange for a promise to help her son. On several occasions he stripped naked in front of her in his office and masturbated. Later, on the eve of her son's court appearance in September or October 2007, she went to appellant's office for a meeting. Appellant and another man were drinking in the office. L.G. claimed appellant offered her a drink and suggested that if she performed oral sex on both men, her son's case would have a better outcome. L.G. refused and left the office.

{¶ 22} L.G. testified that next day, while in court attending her son's sentencing hearing, she realized that the man she had seen the night before with appellant was, in fact, the judge in her son's case. She was extremely upset when the judge imposed the maximum sentence on her son at this hearing. After the hearing, L.G. claimed appellant forced her to perform oral sex on him in an attorney conference room in the courthouse, physically restraining her from leaving. She claimed that after this, she was violently ill as she rejoined her family outside. L.G. testified that she had made a police report about the incident in 2009 and refiled it in 2013 when learning of appellant's arrest.

{¶ 23} Prosecution witness S.W. testified that she was L.G.'s aunt and had observed interaction between L.G. and appellant. She advanced some funds for appellant's fees in the defense of L.G.'s son and later took L.G. to retrieve paperwork from appellant's office after L.G. had terminated the attorney-client relationship on behalf of her son. S.W. observed a heated confrontation between L.G. and appellant, prompted in part by appellant's refusal to return the son's case file. At some point in the conversation, L.G. called appellant a rapist. From appellant's office, they drove to the Columbus police department, where L.G. went inside for at least two and one-half hours while S.W. remained in the car. On previous occasions, S.W. had accompanied L.G. for case conferences, and felt that appellant was upset that L.G. was not alone and would not come up to his office alone.

{¶ 24} Prosecution witness J.B. testified that she was L.G.'s de facto mother-in-law, as L.G. had lived with her son for 24 years even though the two were not married. She attended a meeting with L.G. at appellant's office in 2009 and observed an argument or scene in which L.G. called appellant a rapist. Thereafter, she rode in the car with L.G. and S.W. to the police station, and testified that L.G. was in the police station only 15 or 20 minutes. On another occasion, J.B. attended a hearing for her grandson at the courthouse and waited outside in the hall during proceedings. J.B. testified that, at some point, L.G. emerged from the courtroom

and became violently ill. When J.B. asked what was the matter, L.G. replied "if you only knew." (Tr. at 1291.)

{¶ 25} On cross-examination of L.G., the defense offered the dates and results of L.G.'s son's criminal cases, and the dates of appellant's representation in those cases, to impeach her testimony. In particular, the defense introduced court records indicating that her son had received only community control, rather than prison, in his appearance before the trial judge she identified as associating with appellant.

{¶ 26} In his testimony regarding his contact with L.G., appellant agreed that he had represented her son in a criminal case. He also noted that he had represented her personally in several criminal cases in 2006, as well as her other son during the same period. Appellant denied all allegations by L.G. regarding sexual conduct. He testified that his representation of her son ended when the son received probation in the cases on which appellant worked, but that she asked him to appear at sentencing involving the son's other case. On that occasion, appellant spoke briefly with L.G. before leaving after the son's current counsel, a public defender, arrived.

{¶ 27} Attorney Emily Huddleson testified for the defense regarding L.G.'s accusations. She stated that she was the public defender who represented L.G.'s son at the sentencing hearing in question. She testified that after sentencing, she and L.G. walked out in the lobby together, were met by an older woman, and the three discussed the sentence and the reasoning behind it for 20 or 30 minutes. Despite the fact that Huddleson was assigned counsel for all four cases involving L.G.'s son that day, L.G. complained to Huddleson that she had paid appellant a lot of money and felt he should still be there. Huddleson testified that appellant was initially present at the hearing but not there for the conclusion when the judge imposed a prison sentence on L.G.'s son. Huddleson described L.G. as furious after her son received prison time. Huddleson did not observe L.G. crying, being sick to her stomach, or going into a courthouse conference room with appellant or anyone else after the hearing.

{¶ 28} The fourth accuser to testify was K.R. K.R. testified that appellant represented K.R.'s boyfriend in a case in which he had been accused of domestic violence against K.R. Despite being the victim of the domestic violence at issue, K.R. met with appellant to pursue dropping the charges. Appellant subsequently represented K.R. in a criminal matter of her own. Before her trial in September 2008, K.R. testified they met in appellant's Marion office, where he offered her a drink, rubbed her shoulders, and began feeling her breasts. K.R. refused to have sex with appellant, whereupon appellant began masturbating in front of her. K.R. told her mother about the incident, and reported the incident to the bar association, police, and a judge of the Marion County common pleas court. After the incident, she obtained new representation. Despite the statement that she gave to police and court, she heard nothing more from local authorities. Her own criminal case concluded with a guilty plea and a one-year sentence in prison. The Columbus Bar

Association referred her complaint to the Supreme Court of Ohio, and a representative of the Supreme Court interviewed her regarding her allegations. To her knowledge, nothing came of the matter. After learning of appellant's 2013 arrest involving similar allegations, she contacted a detective with the Columbus police to renew her allegations in the matter.

{¶ 29} Regarding K.R., appellant testified that he recalled representing her in 2008, when they disagreed about a plea offer from the prosecution. She terminated representation when he refused to seek a continuance on what he felt were unwarranted medical grounds. He was later summoned to court for a pretrial and was requested by the prosecution and the judge to arrive early. When he arrived, the judge and prosecutor informed him that K.R. had reported a sexual assault. He withdrew from her case, and a new lawyer was appointed. Appellant denied any sexual misconduct with K.R.

{¶ 30} The final accuser to testify was L.M., who described a long history of coerced sexual relations with appellant. Her testimony with regard to dates was generally vague, and often established only by reference to the age of her young daughter, born in 1997, during the various incidents described.

{¶ 31} L.M. described her background as an immigrant from Venezuela with limited English. She came to America with her Venezuelan fiancé, and after they married in Florida he took a job in Ohio. She testified that she first retained appellant in late 1998 or early 1999 to represent her in divorce proceedings. She selected him based on his ability to communicate in Spanish. She also had difficulties with her immigration status, which was solely based on her then-husband's student visa, and appellant advised her to delay the divorce while dealing with these immigration issues. As a result, the divorce action went on for a considerable time, and L.M. met many times with appellant. She traveled from her home in Groveport, in southeast Franklin County, to appellant's office in Marion for these meetings, which appellant usually scheduled for Friday afternoon or Saturday. At first she brought her infant daughter along, but approximately three months after taking the case appellant requested that she not bring the child to meetings.

{¶ 32} The first incident she claimed occurred about four or five months after she retained appellant. She testified that during an office conference at appellant's Marion office, appellant offered L.M. a cup of coffee, and thereafter she lost consciousness. She awoke alone on appellant's office couch with her clothes in disarray and indications that she had experienced sexual intercourse. She felt confused, as if drugged or drunk. After a short time, appellant returned to the room and told her she had fainted. As a result of this incident, L.M. avoided seeing appellant for the next two months.

{¶ 33} L.M. resumed contact with appellant after a series of phone calls from him in which he advised that she was at risk of deportation and would lose custody of

9

her daughter. Around this time in 1999, appellant provided a tenant reference that helped L.M. move from Groveport to an apartment in Dublin, in northern Franklin County and thus closer to Marion. She claimed that she met again with appellant in his Marion office at this time, and another assault occurred. After briefly discussing her case, appellant suddenly approached her and pulled down his pants. Appellant threatened a poor result in her legal matters if she did not perform oral sex. He placed his hands behind her head, thereby "restraining [her] head against his penis," told her to "do it," and forced his penis into her mouth. (Tr. at 1483.)

{¶ 34} L.M. testified that after that incident sexual conduct between appellant and L.M. was frequent over approximately the next three years, always under the implied threat that if he dropped her case she would lose her immigration status and custody of her daughter. These events first took place at appellant's Marion office, where appellant eventually hired her to do office work to help pay her legal bills. Later appellant kept a residential apartment in Marion and took her there. Some incidents also took place at her apartment in Dublin, where appellant would ask L.M. to lock her daughter in another room. Although L.M.'s testimony did not provide details of any specific instances for most of the abuse occurring after the two specific incidents described above, she did testify in more detail about later events that formed the basis for two of the rape charges: sometime in 2000 or 2001, appellant drove L.M. in a white truck from his Marion office to a rural field where he forced her to have vaginal sex. Six months later, he repeated the offense.

{¶ 35} L.M. testified that around the time that her daughter was three and one-half or four years old, L.M. became pregnant by appellant and appellant insisted that she have an abortion. The last time she claimed she had sexual contact with appellant was 2003. This was the year in which she obtained her permanent U.S. residency, and with her immigration status settled she no longer felt compelled to submit to appellant's demands.

{¶ 36} L.M. learned of appellant's arrest in 2013 when her daughter emailed a link to a newspaper story. From this she learned that she was not the only person who claimed to suffer appellant's advances. After discovering this, L.M. called appellant to tell him that she was glad that the arrest would prevent him from taking advantage of other women. L.M. then contacted the Columbus police detective named in the news story to complain of the past incidents.

{¶ 37} On cross-examination, L.M. denied that appellant had ceased representing her in her divorce case by 2001. Defense counsel offered docket items to establish that a different attorney appeared on her behalf in the domestic action after that time. L.M. responded that many attorneys had represented her in different matters through this time, but she felt certain that appellant continued to act on her behalf. She acknowledged that her original divorce action was dismissed and she eventually divorced under a new case filed in 2003 by another attorney. She also acknowledged that, despite her professed hatred for appellant arising from past abuse, she had often approached appellant for informal assistance with legal or

10

practical matters over the years during and after the abusive conduct. She stated that she viewed this assistance as repayment for past abuse: "I wanted to take advantage of him because he abused me so—for so long. * * * So he abusing [me] so long, so he has to do it for me." (Tr. at 1645.)

{¶ 38} Generally, appellant testified that he had a long-standing professional relationship with L.M., beginning when L.M. approached him for representation in a divorce matter. Even after his representation of her in her divorce matter terminated in approximately 2001, appellant testified L.M. repeatedly sought his assistance in several legal and non-legal matters. Regarding the duration of his legal representation, appellant testified that he filed L.M.'s divorce paperwork in December 1999 and withdrew from representation in 2001. Other attorneys took her case thereafter. In 2004, appellant and his wife separated briefly, and appellant and L.M. dated for about two weeks. Appellant denied ever having any type of sexual contact with L.M. at any other time during their relationship. Their brief dating relationship ended abruptly when L.M. told appellant she was pregnant, and appellant, who had undergone a vasectomy, understood that she had been seeing other men. He denied arranging an abortion for her.

{¶ 39} The next witness was L.L., who was not the object of any indicted offenses, but testified as to appellant's conduct when he represented her in 2009 as she faced a murder charge. The defense objected unsuccessfully to this "other acts" evidence.

{¶ 40} L.L. testified that during one of her pre-trial meetings with appellant in a jailhouse conference room, appellant illustrated his views on witness credibility by stating that "he could rape [her] in 13 the room and it would be [her] word against his and nobody would be the wiser." (Tr. at 1794.) Appellant also stated on that occasion that L.L. could crawl under the table and perform oral sex on him because there were no correction officers around, and it would be only her word against his if she complained.

{¶ 41} In his testimony, appellant denied making any such comments to L.L.

{¶ 42} M.H. was another witness offered by the prosecution for "other acts" testimony, again over objection. M.H. testified that appellant represented her as her attorney for over a decade, beginning when she was 17 years old and incarcerated in the juvenile detention facility. Upon initial release, she and appellant met at his Marion office, went to dinner, and went back and had sex in his office. Over the ensuing 12 years, appellant represented M.H. on multiple cases but she never paid him. They continued to have sex during this time, and M.H. accompanied appellant on a vacation to Florida.

{¶ 43} Appellant testified that he met M.H. at the very beginning of his legal career, when he substituted for an attorney who had failed to appear at the Marion County Juvenile Center. M.H. was 17 and charged with a felony. She later approached appellant for representation in a divorce. Rather than going on a dinner date

11

followed by sex, as described by M.H., appellant recalled that they had dinner with M.H.'s stepfather and mother, and he left that dinner meeting alone. Appellant adamantly denied ever having sex with M.H. He agreed that he continued to represent her in various criminal matters for 12 years after the initial case.

{¶ 44} C.P. testified over objection as the third and final "other acts" witness. She testified that she met appellant about handling her divorce. He did not do so because she eventually proceeded with a dissolution in another state. She then retained him to represent her boyfriend in a criminal case. C.P. acted as a liaison between the boyfriend and appellant while the boyfriend was incarcerated. During one jail call, which was recorded, C.P. told the boyfriend that appellant had slapped her buttocks while she was leaving appellant's office one day. Appellant learned of this conversation and told her he was upset about this both because it would create friction with his client and because he knew that all jailhouse calls were recorded. Later, after appellant was removed from the boyfriend's case because he was a potential witness, C.P. and appellant began a consensual sexual relationship. This continued intermittently until just prior to appellant's trial.

{¶ 45} Appellant's testimony with respect to C.P. denied any sexual conduct between them. He testified that in the course of his criminal defense practice, his office routinely obtained and reviewed audio discs of recorded jailhouse phone conversations involving many of his clients. After reviewing the recorded jailhouse phone call in which C.P. told her boyfriend that appellant had slapped or groped her buttocks, appellant asked for a meeting to explain why she would make such a false statement to his client. She stated that she was upset by reports of the boyfriend's past infidelity and merely wished to make the boyfriend jealous. He then advised her to be cautious with such conversations.

{¶ 46} In addition to his testimony addressing the specific accusations presented by the state's witnesses, appellant testified in his case-in-chief regarding his background. He stated that he graduated from Capital Law School in 1998 as an older, nontraditional student with a growing family. He clerked with an experienced criminal defense attorney in Marion, Ohio, during law school, and shared space in that office for one year after passing the bar. He then secured his own space and began his own practice in Marion and, eventually, in Columbus, Mansfield, and Cleveland. His practice, general at first, eventually focused on criminal defense with a smaller proportion of domestic and civil litigation. He testified that he believed the accusations against him were the result of a coordinated campaign by the Franklin County Prosecutor's Office, the Attorney General, and the Columbus police to remove him from the practice of law because of his effective advocacy in criminal cases.

{¶ 47} The defense presented testimony from several current or former female employees and clients of appellant's practice. These witnesses testified that they had never experienced or witnessed any misconduct by appellant. The defense also sought to attack the credibility of the accusers by introducing testimony,

12

photographs, and documentary evidence that conflicted with the accuser's descriptions of appellant's office locations and interior furnishings.

{¶ 48} With respect to the charges involving L.M., the jury returned guilty verdicts on Count 10 of the indictment (rape), Count 14 of the indictment (kidnapping), and Counts 15, 16, 17, and 18 of the indictment (sexual battery). The court merged Counts 15 and 10 of the indictment for sentencing purposes, and the prosecution elected to sentence on Count 10 of the indictment for rape. The court declined to merge any other counts involving L.M., in particular, finding that the rape and kidnapping counts, although arising out of the same transaction, were driven by a separate animus.

{¶ 49} The jury returned a guilty verdict on Count 2, public indecency, involving C.C. The trial court addressed this in a separate misdemeanor sentencing entry imposing 30 days jail time with full credit for time served.

{¶ 50} The jury returned a guilty verdict on Count 3 of the indictment (gross sexual imposition) involving C.C. The jury also returned a guilty verdict on Count 8 of the indictment (gross sexual imposition) involving K.R.

{¶ 51} The court imposed sentences of 15 months on Count 3 of the indictment, 15 months on Count 8 of the indictment, 9 years on Count 10 of the indictment, 4 years on Count 14 of the indictment, and 30 months each on Count 16, 17, and 18 of the indictment. The terms for Counts 3 and 8 of the indictment were to be served concurrently with each other and with Counts 10 and 14 of the indictment. Terms for Counts 10 and 14 were consecutive to each other but concurrent to Counts 16, 17, and 18, themselves concurrent with each other, for a total sentence of 13 years.

*State v. Armengau*, 2017-Ohio-4452, 93 N.E.3d 284, 291–300 (Ohio Ct. App. 2017) (hereinafter

"*Armengau II*"). Additionally, Petitioner was found to be a Tier III sex offender. (ECF No. 72 at

13).

## B.    Procedural Background

### *1.  State Court Proceedings*

The history of this case is long and tortured. Prior to the jury verdict, Petitioner filed

motions for mistrial and to impound verdict, which were denied by the trial court. (State Court

Record Ex. 4, Decision and Entry Denying Motion for Mistrial and Motion to Impound Verdict,

ECF No. 72 at 36–40). Petitioner sought both a direct appeal of his sentence and a new trial. The

trial court denied Petitioner's motion for new trial, in which he alleged that he had newly discovered evidence. (*See* State Court Record Ex. 22, Motion for Leave to File Motion for New Trial Instanter and Motion for New Trial, ECF No. 72 at 626–82). His appeal of that decision was dismissed by the Tenth District. *See Armengau*, 93 N.E.3d at 300–01 (referring to *State v. Armengau*, 2017-Ohio-197, 2017 WL 237834 (Ohio Ct. App. Jan. 19, 2017) ("*Armengau I*"). The Supreme Court of Ohio declined to review his appeal of the Tenth District's dismissal.

On direct appeal, a divided panel of the Tenth District Court of Appeals of Ohio affirmed Petitioner's conviction on June 22, 2017, but sustained his third and eight assignments of error, thus finding that: (1) for sentencing purposes, the trial court should have merged Count 10 (rape) with Count 14 (kidnapping) and erred in merging Count 15 with the rape conviction instead of Count 17; and (2) the trial court erred in classifying Petitioner as a Tier III sex offender. *Id.* at 319, 320. Accordingly, the Tenth District remanded the case to the trial court to resentence Petitioner as to Counts 10, 14, 15, and 17 according to the proper merger analysis and to apply the sex offender classification under the law in effect at the time of the offenses. Petitioner set forth six Propositions of Law in his timely notice of appeal to the Supreme Court of Ohio (*see* State Court Record Ex. 13, Memorandum in Support of Jurisdiction of Appellant Javier Armengau, ECF No. 72 at 364–82), which declined to review the Tenth District's decision. *See State v. Armengau*, 151 Ohio St.3d 1511, 2018-Ohio-1600, 96 N.E.3d 296 (Ohio 2018).

Before resentencing, Petitioner, proceeding *pro se*, sought a reconsideration of the denial of a new trial or, in the alternative, a second opportunity to motion for new trial. (State Court Record Ex. 55, Defendant's Pro Se Post-Appeal Motion for Reconsideration on Motion on Leave, ECF No. 72-1 at 186). This, too, was denied by the trial court, a decision which the Tenth District affirmed in October 2018. *See State v. Armengau*, 2018-Ohio-4299, 2018 WL 5279367 (Ohio Ct.

App. Oct. 23, 2018) ("*Armengau III*"). The Supreme Court of Ohio again declined to review the Tenth District's decision.

Petitioner also sought to dismiss Counts 8, 10, 14, 15, 16, 17, and 18 pursuant to Ohio R. Crim. P. 29 before his resentencing. (State Court Record Ex. 70, Presentence Motion for Dismissal, ECF No. 72-1 at 500). The trial court denied Petitioner's motion on March 26, 2018, and the Tenth District again affirmed, overruling Petitioner's two assignments of error. *See State v. Armengau*, 2019-Ohio-1010, 2019 WL 1313217 (Ohio Ct. App. Mar. 21, 2019) ("*Armengau IV*"). The Tenth District denied Petitioner's motion for reconsideration in May 2019, and the Ohio Supreme Court declined to review Petitioner's appeal from this decision as well. *State v. Armengau*, 157 Ohio St.3d 1405, 2019-Ohio-3731, 131 N.E.3d 72 (Ohio 2019).

Upon resentencing, on March 27, 2018, the trial court adhered to the Tenth District's edict in *Armengau II* and "merged the kidnapping count (Count 14) with the rape count (Count 10), and exchanged the sexual battery counts, merging Count 17 with Count 10 rather than Count 15." *State v. Armengau*, 2020-Ohio-3552, ¶ 8, 154 N.E.3d 1085, 1089–90 (Ohio Ct. App. 2020) ("*Armengau V*"). The trial court refused to specify what incident formed the factual basis for each count, but did indicate that the sexual battery counts in Counts 15 and 18 were separate incidents. *Id.* at 1089. The court, in resentencing Petitioner, appeared to determine the lengths of the sentences for Counts 10 and 15 based on its desire to impose a total of 13 years, consistent with the original sentence under the "sentencing package" doctrine. On appeal of the new sentence, the Tenth District agreed that Counts 15 and 18 did refer to different incidents but found that the 48-month sentence imposed by the trial court for Count 15 was based on inappropriate factors. *Id.* at 1092. Accordingly, the case was again remanded to the Franklin County Court of Common Pleas for resentencing. Petitioner's appeal of the decision was not accepted for review by the Ohio Supreme Court, *State*

*v. Armengau*, 160 Ohio St.3d 1419, 2020-Ohio-4811, 154 N.E.3d 101 (Ohio 2020), nor his motion

for reconsideration. *State v. Armengau*, 160 Ohio St.3d 1498, 2020-Ohio-5634, 159 N.E.3d 290

(Ohio 2020). On October 19, 2022, the trial court resentenced Petitioner to a 36-month sentence

on Count 15 (instead of 48-months), and credited Petitioner with 30-months of time served, based

on the decision in *Armengau V*. (*See* ECF No. 131).

### 2. *Federal Habeas Petitions*

In addition to Petitioner's state court appeals of his 2014 conviction, he has also sought

habeas relief in federal court. In 2015, Petitioner filed a petition for writ of habeas corpus in this

Court, alleging the state courts' denial of his request for release violated his due process and equal

protection rights. (*See* 2:15-cv-02603). Both this Court and the U.S. Court of Appeals for the

Sixth Circuit denied Petitioner's request for relief. *See Armengau v. Warden*, 2016 WL 3906279

(S.D. Ohio July 19, 2016); *Armengau v. Bradley*, 2018 WL 4008371 (6th Cir. Mar. 22, 2018).

After the initial re-sentencing but before the Tenth District affirmed in part and reversed in

part the new sentence in *Armengau V*, Petitioner filed a second petition for writ of habeas corpus

in this Court. (ECF No. 1). Respondent Warden's motion to dismiss (ECF No. 11) was denied by

this Court in November 2020. (ECF No. 34). After the parties engaged in considerable motions

practice, Petitioner later submitted a Second Amended Petition (ECF No. 70) on June 13, 2021,

which raised the following grounds for relief:[2]

> **Ground One**: Petitioner was denied his Constitutional Rights to Due process and
> Fundamental Fairness when he was convicted, sentenced and resentenced upon
> **insufficient evidence** and convicted and **resentenced for unindicted and
> uncharged alleged conduct** in Counts 2, 3, 8, 10, 14, 15, 16, 17 and 18 in violation
> of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution
> and contrary to the United States Supreme Court's holding in *Jackson v. Virginia*,

---

[2] All emphases (including italicized and bolded text) and footnotes in the following excerpt are taken directly from Armengau's Second Amended Petition.

443 U.S. 307 (1979) and the Ohio Supreme Court's holdings in *State v. Hampton*, 2012-Ohio-5688,[3] *Knight v. State*, 54 Ohio St. 365 (1896), and *State v. Jenks*, 61 Ohio St. 3d 259.[4]

**Supporting Facts:** Petitioner was indicted in Counts 8, 10, 14, 15, 16, 17 and 18 for specific alleged incidents that occurred in Columbus, Ohio (Franklin County) on unknown dates but sometime between January 1, 2002 and December 31, 2008. During trial Petitioner established that he did not commit the *indicted* crimes. Prosecutors *then*, mid-trial, *added* three (3) years of *unindicted* and *uncharged* allegations to the indictment by amendment to circumvent the defense. After adding three (3) years to the indictment, Petitioner was able to establish that he could not have committed *any of the indicted alleged crimes* because by the relevant part of the expanded time frame, Petitioner had never been to the locations where the "victims" first claimed the indicted crimes occurred. Prosecutors then, *mid-trial*, changed the locations to Marion, Ohio, to circumvent the defense. *No evidence* was presented as to the elements of the factual incidents supporting the indictment.

**Ground Two:** Petitioner was denied his right to **due process of law** and **notice of the specific offenses (charges)** for which he was required to defend and for which he was convicted, sentenced and resentenced in Counts 2, 3, 8, 10, 14, 15, 16, 17 and 18, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Petitioner's Constitutional rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution were further violated where the **charging document/instrument failed to adequately inform him of the specific crime** for which he was indicted and for which he would be tried, convicted, sentenced and resentenced in Counts 2, 3, 8, 10, 14, 15, 16, 17 and 18.

**Supporting Facts:** Petitioner was indicted in Counts 8, 10, 14, 15, 16, 17 and 18 for specific alleged incidents that occurred in Columbus, Ohio on unknown dates but sometime between January 1, 2002, and December 31, 2008. During trial Petitioner established that he did not commit the indicted crimes. Prosecutors then added three (3) years of unindicted allegations to the indictment to circumvent the defense. After adding three years to the indictment, Petitioner was able to establish that he could not have committed any of the indicted alleged crimes because by the relevant part of the expanded time frame, Petitioner had never been to the locations where the alleged victims initially claimed the incidents occurred. Prosecutors then changed the locations to Marion, Ohio, mid-trial, to circumvent the defense. *The indictment, jury instruction nor the verdict forms identify any specific factual basis for conviction.* During trial prosecutors were substituting 404(B) and "other act" evidence for the charged crimes that were never mentioned prior to trial. Petitioner

---

[3] *Hampton* is strictly and exclusively a sufficiency of the evidence case specifically dealing with the essential element identified by petitioner of the indicted crime.

[4] *Jenks* was cited by the Court of Appeals in the June 22, 2017 decision which references *Jackson v. Virginia*, 443 U.S. 307 as the standard for sufficiency determination.

was ultimately being tried for factual bases that were not part of the indictment. During resentencing the trial court didn't know what factual basis was applied by prosecutors to any of the counts subject to resentencing and couldn't determine what incidents the jury considered and thereafter resentenced Petitioner to prison for alleged incidents that never resulted in conviction and which even prosecutors never asked the jury to consider. The Court of Appeals in 14 AP 679 confirmed that the alleged crimes for which Petitioner has supposedly been convicted were not the crimes for which he was indicted (¶ 56-61, June 22, 2017 decision). With regard to Counts 2 and 3, evidence was introduced which if believed allowed the jury to convict for an allegation that was "other-act" evidence. This alleged incident was not noticed in the indictment or bills of particulars. That claim was alleged to have occurred on April 10, 2013, at a different location. The probability that for Count 2 and 3 the jury considered the unindicted other-act of April 10, 2013 is supported by several facts. The jury acquitted Petitioner of the kidnapping with respect to the April 4th incident. Although legally not dispositive, logically and factually, the acquittal rendered the conviction for the April 4th alleged Gross Sexual Imposition an impossibility as the acquittal for the kidnapping negated the proof beyond a reasonable doubt required for "force" or "threat of force". In light of this fact, Petitioner's testimony, Jennifer Young's testimony, Leslie Todd's testimony and Shirley Koval's testimony, acknowledging that the alleged "victim" admitted her claims were untrue, the jury may have rejected the April 4th alleged incident and considered the April 10th allegation where the alleged "victim" testified that Petitioner squeezed her thigh several times and where Detective Jeff Ackley testified to witnessing and video-taping the incident. Ackley testified that while he video-taped the entire incident, due to a malfunction, the part where Petitioner was supposedly touching the alleged "victim" was not recorded. The indictment in Petitioner's case informed him of alleged offenses that he would not have to defend. Another fact that confirms the lack of constitutionally required notice, lack of unanimity, and violation of Petitioner's Sixth Amendment *Apprendi* claim is the material disagreement between what the Court of Appeals claims are the facts supporting Count 16 and the facts prosecutors assert support Count 16. The Court of Appeals claims that Count 16 is an alleged unspecified incident that occurred in Franklin County and prosecutors who indicted and tried the case assert that the incident supporting Count 16 occurred in Marion County, Ohio.

**Ground Three:** Petitioner was denied his right to **due process** of law and protections against **double jeopardy** as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution when the court allowed the state to **constructively amend the indictment** to add unindicted, uncharged, and unnoticed conduct and where the trial court refused a requested unanimity instruction and failed to **instruct the jury** that the proof beyond a reasonable doubt standard had to be applied to one factual incident and where after resentencing, Petitioner remains unable to plead a conviction or acquittal to Counts 2, 3, 8, 10, 14, 15, 16, 17 and 18 and where the factual basis for conviction cannot be determined as decided by the jury and where Petitioner has been resentenced for

18

alleged crimes with which he was never charged and in several counts with crimes for which he wasn't even convicted.

**Supporting Facts:** Petitioner was indicted in Counts 8, 10, 14, 15, 16, 17 and 18 for specific alleged incidents that occurred in Columbus, Ohio on unknown dates but sometime between January 1, 2002, and December 31, 2008. The alleged "victim" in Counts 9-18 couldn't provide a date, week, month or year for any alleged assault. During trial Petitioner established that he did not commit the indicted crimes. Prosecutors then added three (3) years of unindicted allegations to the indictment to circumvent the defense. After adding three (3) years to the indictment, Petitioner was able to establish that he could not have committed any of the indicted alleged crimes because by the relevant part of the expanded time frame, Petitioner had never been to the locations where the "victim" initially claimed the indicted crimes occurred. Prosecutors then changed the locations to Marion, Ohio, rather than Columbus, Ohio, to circumvent the defense. The indictment, jury instructions nor the verdict forms identify any specific factual basis for conviction. During trial prosecutors were substituting other-act evidence for the charged crimes. The Court of Appeals confirmed that Petitioner was ultimately being tried for *factual bases that were not part of the indictment*. As Petitioner was able to present facts to defend the accusations, prosecutors simply kept amending the indictment and bill of particulars mid-trial to circumvent the defense. After trial and even after resentencing, Petitioner does not know what alleged facts resulted in conviction for any count for which Petitioner is imprisoned, *according to the jury's findings*. The Court of Appeals confirmed that the crimes for which Petitioner was convicted were not the alleged crimes for which he was indicted or charged. Petitioner was acquitted on Count 11, which is an identical charge to Count 10; Count 14 was indicted as the restraint involved in Count 9. The Court of Appeals confirmed that *no evidence was presented of the indicted* Count 9 and Count 14 incident. The trial court permitted prosecutors to arbitrarily reassign the Count 14 kidnapping to Count 10. *Petitioner was not indicted with any kidnapping related to Count 10.* The indictment in Petitioner's case informed him of alleged offenses that he would not have to defend. At resentencing on March 27, 2018, the trial court sentenced Petitioner on Count 15 to a consecutive term of imprisonment while Count 15 was represented by prosecutors to the jury in closing and the instructions as being the same incident as Count 18 for which the sentence had already been fully completed. After the serial amendments, the alleged victim in Counts 9-18 was still unable to assign a date, week, month, or even year to any of her allegations. The alleged "victim" in Counts 9-18, who first claimed to being raped repeatedly in Columbus, Ohio, between 2002 and 2008 (3 times per week for years), then changing her story *mid-trial* to being raped in Marion, Ohio, in 1998, 1999, or 2000, after being confronted with her own emails conceded she was initiating contact with Petitioner throughout the years and *after* moving to California in 2010, contacted Petitioner to provide him with her updated contact information. The alleged victim in Counts 9-18, in 2012 requested Petitioner go [to] California and offered for Petitioner to stay at her residence. Petitioner respectfully declined all of Ms.

19

Melean's offers.  On Count 8, the alleged victim was forced to change her initial story and the accusation to Marion, Ohio, rather than as indicted.

**Ground Four:** Petitioner was denied his right to **due process** of law and protections against **double jeopardy** as guaranteed under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution when the **court failed to instruct the jury** that the proof beyond a reasonable doubt standard had to be applied to one factual incident and the **jury instructions were constitutionally defective** as they permitted the jury to consider and convict Petitioner of alleged crimes for which he was never charged, indicted or noticed [other-act] and where due to the **defective instructions** the trial court has resentenced Petitioner for alleged crimes for which no factual basis can be determined but that were clearly unindicted and in several counts for alleged crimes for which Petitioner wasn't even convicted.

**Supporting Facts:** When Petitioner established that he did not commit any of the indicted crimes, prosecutors mid-trial changed not only the date range of the indictment to circumvent the defense, but then changed the locations to completely different locations after Petitioner established that he could not have committed the indicted alleged crimes because by the newly argued time frame, Petitioner had never been to the locations where the alleged crimes were supposedly committed according to the initial accounts provided by their "victims."  As Petitioner was able to present facts to defend the accusations, prosecutors simply kept amending the indictment and bill of particulars to circumvent the defense.  After trial and even after resentencing, Petitioner does not know what alleged facts resulted in conviction for any count for which Petitioner is imprisoned.  Whatever they may have been, *the Court of Appeals confirmed that the crimes for which Petitioner was convicted were not the alleged crimes for which he was indicted or charged.*  While the trial court may have invoked jurisdiction for the specific offenses contained in the indictment for Counts 2, 3, 8, 10, 14, 15, 16, 17 and 18, none of the specific crimes in Counts 8, 10, 14, 15, 16, 17 and 18, for which it obtained jurisdiction were ever presented to the jury.  The trial court denied a requested unanimity instruction and the instructions allowed a non-unanimous verdict and a verdict upon uncharged alleged conduct.

**Ground Five:** Petitioner was denied his rights to **due process** of law in violation of his state and federal constitutional rights as guaranteed to him by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution when he was denied a **fundamentally fair trial** due to **prosecutorial misconduct** and where he was tried, convicted, and resentenced for convictions upon the admission of other-act evidence that was unindicted, uncharged, and unnoticed prior to trial and which was presented by prosecutors to intentionally circumvent the defenses to the actually indicted alleged crimes.

20

**Supporting Facts:** When Petitioner established that he did not commit the indicted crimes, prosecutors *mid-trial* changed not only the date range of the indictment to circumvent the defense but then changed the locations to completely different locations after Petitioner established that he could not have committed the indicted alleged crimes because by the newly argued time frame Petitioner had never been to the locations where the alleged victims claimed the assaults were supposedly committed. As Petitioner was able to present facts to defend the accusations, prosecutors simply kept amending the indictment and bill of particulars throughout trial. Prosecutors continuously inserted allegations that were never disclosed, never indicted, or charged and allegations they confirmed in trial they never heard of until two weeks into trial. At one point in trial prosecutors advised the court and defense counsel that Petitioner would not have to defend a certain charge and later, after failing to present evidence on what they indicted, claimed the incident they acknowledged Petitioner didn't have to defend, was in fact one of the counts for consideration. After trial and even after resentencing, Petitioner does not know what alleged set of facts resulted in conviction for any crime for which Petitioner is imprisoned. None of the jury instructions identify or are confined to one factual incident. The jury instructions are devoid of any identifying fact for the jury to determine which alleged incident pertained to any count. The Court of Appeals confirmed prosecutors were substituting unindicted and uncharged allegations for alleged crimes that were indicted. To this day, prosecutors are unable to determine the alleged incidents for which Petitioner is imprisoned. In closing argument, prosecutors told the jury that Counts 15 through 18 were "alternate" theories of other counts. In their sentencing memorandum prosecutors told the jury the court that they "did not rely on a single act to support multiple convictions." The conflicting statements confirms their inability to determine the alleged incident pertaining to any count and due to the prosecution's need to plug-in unindicted allegations to convict Petitioner, Petitioner was denied a fair trial as guaranteed under the United States Constitution as his counsel did not know what facts supported the counts in the indictment. Counsel repeatedly moved for a mistrial and advised the trial court that he was unprepared to defend any allegation prior to 2002 for Counts 9-18.

**Ground Six:** Petitioner was denied his rights to **due process** of law as guaranteed to him under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution when he was tried and convicted for crimes for which he was never charged or indicted or noticed and for which the court failed to obtain **subject matter jurisdiction** for alleged crimes that were never presented to the grand jury and that were never presented to Petitioner in any charging document.

**Supporting Facts:** Petitioner was specifically indicted in Counts 8, 10, 14, 15, 16, 17 and 18 for specific alleged crimes that specifically occurred in Columbus, Ohio. Petitioner was not indicted or charged with any crime occurring anywhere else. As of the start of trial Petitioner was defending allegations that occurred in Columbus, Ohio, between 2002-2008. Once Petitioner proved he did not commit any of the

charged and noticed crimes, prosecutors mid-trial inserted *never alleged allegations* of incidents each occurring at a different time and place than those indicted. The grand jury never heard of any of the alleged incidents for which Petitioner is imprisoned and Petitioner was never charged by any instrument for the alleged crimes for which he is now imprisoned. The indictment contained and informed Petitioner of specific offenses that he would not have to defend. The Court of Appeals confirmed the indicted offenses were not the offenses for which Petitioner stood trial and was convicted. Prosecutors midtrial conceded with respect to several counts that the alleged crimes they would later argue for conviction were unknown to them until after the case was indicted.

**Ground Seven:** Petitioner was denied his right to **Equal Protection** as guaranteed by the Fourteenth Amendment to the United States Constitution when the Court of Appeals and the Ohio Supreme Court intentionally disregarded the law set by their respective courts and the United States Supreme Court in order to affirm the convictions and for which now after resentencing Petitioner is imprisoned for crimes for which he never committed and was never charged or noticed until midway through his trial and in several counts for which he wasn't even convicted.

**Supporting Facts:** The state failed to prove that the crimes occurred in the County and State as alleged in the indictment for Counts 8, 10, 14, 15, 16, 17 and 18, which is a required element to be proven for conviction under Ohio law. The state did not prove that the alleged crimes occurred "within the time frame alleged in the indictment" which is also a requirement under Ohio law. State statutes and caselaw set the elements to be proven and then the state is required to prove each of those elements. The state also changed the dates and locations of the charges after Petitioner established that he could not have committed the crimes for which he was indicted. The trial court failed to instruct the jury that they had to agree on one specific set of alleged facts for each count, notwithstanding counsel requesting the instruction. Prosecutors amended the indictment to add three (3) years of unindicted and uncharged conduct which is impermissible. Due to the Equal Protection challenge, Petitioner must reference at least in this section that state law and federal law as applied to other defendants under identical facts has never allowed what has been permitted to occur in Petitioner's case. The holdings and rulings in Petitioner's case are contrary to established precedent. Any court that allows a defendant to be imprisoned for alleged crimes with which he was never charged or for which he was never convicted must violate a defendant's rights to equal protection as a matter of law.

**Ground Eight:** Petitioner, an **actually innocent prisoner**, is imprisoned as a result of violations of state and federal law and his rights guaranteed by the Ohio Constitution and the Fifth, Sixth and Fourteenth Amendments to the United States Constitutions.

**Supporting Facts:** Regarding Counts 8, 9, 10, 11, 12, 13, 14, 15, 16, 17 and 18, Petitioner was indicted for specific and then identifiable alleged crimes that occurred in Columbus, Ohio, between January 1, 2002, and December 31, 2008. For *every* single referenced count, the state at trial presented *absolutely no evidence related to the accusations identified in the indictment*. Under the facts of Petitioner's case, Petitioner believes that when evidence of a specific crime that is identified in the indictment cannot be produced at trial, the failure to present any evidence of each indicted and charged crime must represent an accused's actual innocence. With regard to Counts 2 & 3, prosecutors inserted a second alleged incident that was unrelated to any alleged conduct occurring at a different location and at a different time after they realized that their corroborating witness, Shirley Koval, decided to testify for the defense. Based on the jury instructions, it cannot be determined which set of facts the jury elected to apply to Counts 2 and 3. This is not a case where the indictment reflected typographical errors or clerical mistakes. The Court of Appeals confirmed the state was permitted to substitute other-act 404(B) evidence for the indicted crimes they couldn't prove.

**Ground Nine:** Petitioner was denied his right to a **unanimous jury verdict** in Counts 2, 3, 10, 14, 15, 16, 17 and 18 when the trial court denied a requested jury instruction on **unanimity** and thereafter instructed the jury in a manner where individual jurors could select different alleged incidents for conviction that were uncharged and were admitted as other-act evidence. Unanimity independently affected Petitioner's resentencing as Petitioner has now been resentenced to prison for alleged crimes for which the jury never convicted and for which prosecutors didn't even request of the jury that it consider.

**Supporting Facts:** Prosecutors were permitted to introduce without limitation as many other-act allegations as they needed and then select what "other-acts" they wished to apply to any count for which they were unable to prove the factual bases for the indicted crimes. Count 9 and Count 14, for example, were indicted as one factual incident. The Court of Appeals confirmed that *no evidence was presented of the entire alleged incident*. With no evidence presented at all of the indicted incident, Petitioner must be legally and factually innocent of *that* specific charge. Prosecutors mid-trial claimed that Count 9 was a never before mentioned "drugging rape". When defense counsel objected, the Court sustained the objection. At that juncture, prosecutors advised the Court that the "drugging" rape *was not part of the indictment* and was other-act evidence. Prosecutors notified the Court and defense counsel that the defense did not need to defend that charge. However, later in trial, when they were unable to procure any testimony of the underlying indicted incident for Count[s] 9 and 14, the *trial court allowed prosecutors to then substitute* the "drugging" rape incident, that prosecutors already acknowledged was not part of the indictment and Petitioner did not need to defend, for the count they couldn't prove based upon the evidence upon which Petitioner was indicted. With Count 10, the Court of Appeals confirmed that no factual incident was provided in the indictment. The only facts regarding Count 10 were that the factual incident

23

occurred in Franklin County and during 2002 and 2008. *The Court of Appeals confirmed the factual basis for Count 10 changed from whatever had been indicted to an alleged incident in Marion, Ohio in either 1998, 1999, or 2000.* The Court of Appeals confirmed *Petitioner was not convicted of what originally supported* Count 10. During resentencing on March 27, 2018, the trial court could not determine from the trial transcripts, opening, closing, jury instructions or verdict forms, which factual incidents applied to the respective counts for which Petitioner was being resentenced. The trial court actually resentenced Petitioner on Counts 15 and 18, for two incidents, when prosecutors argued to the jury in closing that Counts 15 and 18 were one incident. On Count 15 and 18, the trial court resentenced Petitioner for two incidents, supposedly occurring in Marion, Ohio, for which Petitioner was never convicted. In fact, prosecutors never requested of the jury that it consider the alleged incidents the court used to resentence Petitioner. A review of the indictment, opening statement, closing argument, jury instructions and verdict forms, the only parts of the record to which the jury had access, will confirm for this court that the factual incident(s) used by the Court to resentence Petitioner appear nowhere. Petitioner was resentenced on Count 10 for what the Court of Appeals confirmed was an uncharged factual basis. Comparing Counts 10 and 11, the jury may have acquitted Petitioner for whatever factual basis anyone believes resulted in conviction for Count 10. For Count 16, a review of the indictment, opening, closing, jury instructions and verdict forms confirms that prosecutors *never even assigned an actual factual basis* to that count. Perhaps confirming Petitioner's unanimity and due process argument, the Court of Appeals and the prosecutors don't agree on what facts support Count 16. The Court of Appeals believes that Count 16 was a factual incident that occurred in Franklin County while prosecutors believe Count 16 is a different incident that occurred in Marion County. Petitioner respectfully suggests that when the Court of Appeals and the prosecutors who are the ones who indicted and tried the case can't agree on what factual basis supports any count, there is clearly a due process, sufficiency, notice, double jeopardy, fair trial, and unanimity problem. A review of the same documents will further confirm that for Count 17, whatever the jury elected to apply to that count cannot be determined with any degree of certainty. The lack of unanimity impacted Petitioner's resentencing, notwithstanding any effort by the state courts to find that the jury's verdicts were unanimous. With Counts 8 through 18, Petitioner was indicted only with alleged crimes that occurred in Franklin County, Ohio, between 2002 and 2008. After what Court of Appeals coined "Serial Amendments", prosecutors then sought conviction for alleged "other-acts" that occurred in Marion County, Ohio, between 1998 and 2001. Defense counsel repeatedly sought a mistrial as he acknowledged being unprepared to defend any allegation prior to 2002 in Marion, Ohio. Petitioner had witnesses under subpoena for the locations and time frames identified in the indictment. Then Court of Appeals Judge Gary Tyack[5] during oral arguments stated: "So, that's part of what ties in here. Counsel has to prepare for a major trial based on what's in the

---

[5] Gary Tyack is now the Franklin County Prosecutor.

indictment and bills of particulars. And, in this particular situation, all of a sudden you're mid-trial and the prosecution is throwing four (4) years of additional allegations in front of the jury and then arguing that the mere number of allegations is why this guy should be guilty of something . . . part of what you run into is you have no chance to create, to even investigate an alibi defense . . . for times that aren't alleged in the whole thing, you don't have a chance to tie down and bring in other witnesses . . . to contradict these folks. You just all of a sudden, you're in the middle of trial and the name of the game has changed . . . ." (Oral Arguments, August 23, 2016, 14 AP 679).

**Ground Ten:** Petitioner was denied his right to trial by jury guaranteed under the Sixth and Fourteenth Amendments to the United States Constitution whereby facts forming the basis for conviction[6] and sentence must be conclusively determined by a trial jury and where in Petitioner's case those facts were determined by trial and appellate judges.

**Supporting Facts:** Prior to Petitioner's resentencing on March 27, 2018, Petitioner filed a motion with the trial court in advance of the proceedings requesting of the court that it confirm the factual incidents pertaining to the counts for which Petitioner was to be resentenced (10, 14, 15, 16, 17 and 18). The Court denied the motion. Since resentencing was to address allied offenses, Mr. Benton made the same request prior to the start of the hearing since in order to argue allied offenses the defense needed to know what facts the trial court was considering for each count. The court again denied the request. The court then resentenced Petitioner to prison for counts where the court could not determine the *facts decided by the jury*. Ultimately, *the court sentenced Petitioner to prison for alleged crimes that were never even presented to the jury for conviction*. Prosecutors were permitted to introduce without limitation as many other-act allegations as they needed and then select what "other-acts" they wished to apply to any count for which they were unable to prove the factual bases for the indicted crimes. Count 9 and Count 14, for example, were indicted as one factual incident. The Court of Appeals confirmed that *no evidence was presented of the entire alleged incident*. Prosecutors mid-trial claimed that Count 9 was a never before mentioned "drugging rape". However, earlier in trial, when defense counsel objected to that evidence, the Court sustained the objection. At that juncture, prosecutors advised the Court that the "drugging" rape was not part of the indictment and was other-act evidence. Prosecutors notified the Court and defense counsel that the defense did not need to defend that charge. Later in trial, when they were unable to procure any testimony of the underlying indicted incident for Count 9 and 14, the trial court allowed prosecutors to then *substitute* the "drugging" rape incident, that prosecutors already acknowledged *was not part of the indictment* for what they couldn't prove. With Count 10, the Court of Appeals confirmed that no factual incident was provided in the indictment. *The*

---

[6] According to the Ohio Supreme Court a "conviction is made up of a 'finding of guilt' and the 'imposition of a sentence."

*only facts regarding Count 10 were that the factual incident occurred in Franklin County and during 2002 and 2008.* The Court of Appeals confirmed the factual basis for Count 10 changed from whatever had been indicted to an alleged incident in Marion, Ohio, in either 1998, 1999 or 2000. During resentencing on March 27, 2018, the trial court could not determine from the trial transcripts, opening, closing, jury instructions, or verdict forms, which factual incidents applied to the respective counts for which Petitioner was being resentenced. The trial court actually resentenced Petitioner on Counts 15 and 18, *for two incidents*, when prosecutors argued to the jury in closing that Counts 15 and 18 were *one incident*. On Count 15 and 18, the trial court resentenced Petitioner for two incidents, supposedly occurring in Marion, Ohio, for which Petitioner was never convicted. In fact, the record confirms that prosecutors never requested of the jury that it consider the alleged incidents the court used to resentence Petitioner. A review of the indictment, opening statement, closing argument, jury instructions and verdict forms, the only parts of the record to which the jury had access, will confirm for this court that the factual incident(s) used by the Court to resentence Petitioner appear nowhere. *Petitioner was resentenced on Count 10 for what the Court of Appeals confirmed was an uncharged factual basis.* Comparing Counts 10 and 11, the jury may have acquitted Petitioner for whatever factual basis anyone believes resulted in conviction for Count 10. For Count 16, a review of the indictment, opening, closing, jury instructions, and verdict forms confirms that prosecutors never even assigned an actual factual basis to that count. Perhaps confirming Petitioner's unanimity, *Apprendi* and due process argument, the Court of Appeals and the prosecutors don't agree on what facts support Count 16. The Court of Appeals believes that Count 16 was a factual incident that occurred in Franklin County while prosecutors believe Count 16 occurred in Marion County. Petitioner respectfully suggests that when the Court of Appeals and the prosecutors who are the ones who indicted and tried the case can't agree on what factual basis supports any count, there is clearly a due process, sufficiency, notice, double jeopardy, fair trial, unanimity, and *Apprendi* problem. A review of the same documents will further confirm that for Count 17, whatever the jury elected to apply to that count cannot be determined with any degree of certainty. The lack of unanimity impacted Petitioner's resentencing, notwithstanding any effort by the state courts to find that the jury's verdicts were unanimous. With Counts 8 through 18, Petitioner was indicted only with alleged crimes that occurred in Franklin County, Ohio between 2002 and 2008. After what Court of Appeals coined "*Serial Amendments*", prosecutors then sought conviction for alleged "other-acts" that occurred in Marion County, Ohio between 1998 and 2001.

(ECF No. 70 at 5–28) (footnotes and emphasis in original). The Warden submitted a Return of Writ (ECF No. 73), followed by Petitioner's Reply (Answer) to Respondent's Return of Writ (ECF No. 77).

After careful consideration of the Second Amended Petition, the Warden's Return of Writ, and Petitioner's Answer, the Magistrate Judge issued a Report and Recommendation on November 2, 2021, in which he recommended that the petition for writ of habeas corpus be dismissed with prejudice. (ECF No. 97). The Magistrate Judge did, however, recommend that Petitioner be granted a certificate of appealability on Grounds One and Three. Upon Petitioner's submission of an extraordinarily long and discursive Initial Objections (ECF No. 97), which raised fifteen numbered objections over 200 pages, this Court recommitted the case to the Magistrate Judge to analyze the objections. (ECF No. 113). The Magistrate Judge's Supplemental Report and Recommendation (ECF No. 118) acknowledged Petitioner's Second and Third Objections as well-taken (*see id.* at 14), but did not change the ultimate recommendation that this Court deny all grounds for relief and dismiss the petition. In response, Petitioner submitted a further 225 pages of objections.[7] (ECF No. 123). Petitioner has also objected to the Magistrate Judge's Substituted Decision and Order Regarding Exhibits (ECF No. 71), Order Denying Petitioner's Motion to Add Exhibit X to the Record (ECF No. 110), and Supplemental Memorandum Opinion on the admissibility of exhibits (ECF No. 116). (*See* ECF Nos. 78, 111, 117). All objections are now ripe for this Court's consideration.

### III.   STANDARD OF REVIEW

#### A.   Objections to Report and Recommendation

If a party objects within 14 days to a magistrate judge's proposed findings and recommendations, the district court "shall make a de novo determination of those portions of the

---

[7] Petitioner's Supplemental Objections (ECF No. 123) largely covers the same grounds as his Initial Objections (ECF No. 103). The Supplemental Objections do contain some language specifically addressing the Magistrate Judge's Supplemental Report and Recommendation, but the bulk of the arguments are copy-and-pasted from the Initial Objections. (*Compare, e.g.*, ECF No. 123 at 25, 71, 111, 165, 171, *with* ECF No. 103 at 23, 59, 95, 151, 156 (examples of identical language)).

27

report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). The district court may "accept, reject or modify the recommended disposition; receive further evidence; or return the matter to the magistrate with instructions." Fed. R. Civ. P. 72(b). On the other hand, if a party fails to object timely to the magistrate's recommendation, that party waives the right to *de novo* review by the district court of the report and recommendation. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). Waiver does not, however, "preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard." *Id.* at 154.

A party's objection should be specific, identify the issues of contention, and "be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). The onus is on the objecting party "to pinpoint those portions of the magistrate's report that the district court must specially consider." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quotation marks and citation omitted). When a pleader fails to raise specific issues, the district court will consider this to be "a general objection to the entirety of the magistrate report[, which] has the same effects as would a failure to object." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Finally, allegations in a *pro se* complaint[8] are subject to "'less stringent standards than formal pleadings drafted by lawyers,' and therefore should be liberally construed," *Williams v.*

---

[8] Petitioner is proceeding in this action *pro se*, though he previously served as a criminal defense attorney in the Columbus area before his convictions. Given the lack of organization and proper citation in his filings and in light of deference to his official status as a *pro se* litigant, this Court affords Petitioner's petition and objections the liberal construction typically granted to *pro se* pleadings rather than the more stringent standards used to evaluate pleadings drafted by lawyers.

28

*Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)), but even "the lenient treatment generally accorded to *pro se* litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (internal citations omitted).

### B.    Habeas Corpus

In 1996, Congress passed the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which restricted federal courts' power to grant habeas corpus relief. *See Irons v. Casey*, 505 F.3d 846, 856 (9th Cir. 2007) (Noonan, J., concurring) (referring to AEDPA as "direct legislative interference in the independence of the judiciary").   Pursuant to AEDPA, federal district courts are empowered to grant a petition for a writ of habeas corpus on claims that were adjudicated on the merits in state court only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(2).   The first provision "circumscribes a federal court's review of claimed legal errors," while the latter "places restrictions on a federal court's review of claimed factual errors." *Loza v. Mitchell*, 705 F. Supp. 2d 773, 786 (S.D. Ohio 2010).

Habeas relief under § 2254 "does not lie for errors of state law," *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990), and is fundamentally a remedy for violations "of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  Thus, a "federal habeas court does not act as an additional state appellate court to review a state court's interpretation of its own law or procedure," *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987) (citing *Combs v. Tennessee*, 530 F.2d 695 (6th Cir.), *cert denied*, 425 U.S. 954 (1976)), and instead is bound by the highest state

29

court's interpretations of state laws. *Wainwright v. Goode*, 464 U.S. 78, 84 (1983) (citing *Brown v. Ohio*, 432 U.S. 161, 167 (1977); *Garner v. Louisiana*, 368 U.S. 157, 169 (1961)).

With respect to questions of federal law, a state court decision is determined to be "contrary to" federal law either where a "state court confronts facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from its precedent," *Williams v. Coyle*, 260 F.3d 684, 699 (6th Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 390 (2000)), or if a "state court 'applies a rule that contradicts the governing law set forth in' Supreme Court cases." *Id.* (quoting *Taylor*, 529 U.S. at 406).  A decision is deemed "unreasonable" if a state court has set out the correct legal standard but applied that standard in an objectively unreasonable manner. *See Lockyer v. Andrade*, 538 U.S. 63, 76 (2003); *Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").  The legal standards that constitute "clearly established Federal law," for the purposes of AEDPA, comprise only "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carter v. Bogan*, 900 F.3d 754, 767 (6th Cir. 2018) (quoting *Andrade*, 538 U.S. at 71)).  Similarly, the district court's review of claims of factual error by a state court under § 2254(d)(2) is highly deferential, *see Burt v. Titlow*, 571 U.S. 12, 18 (2013), especially as findings of fact made by a state court are presumed to be correct and the petitioner bears the burden of overhauling that presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Finally, a prisoner must ordinarily exhaust her available state court remedies before seeking habeas relief.  The exhaustion requirement is met by fairly presenting her claims to state courts,

30

including the highest court in the state. *Id.* § 2254(b), (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999). This requirement allows "state courts [to] have the first opportunity to review" a prisoner's federal claims "and provide any necessary relief." *Boerckel*, 526 U.S. at 844 (citing *Rose v. Lundy*, 455 U.S. 509, 515–16 (1982); *Darr v. Burford*, 339 U.S. 200, 204 (1950)). The Sixth Circuit has set out four ways a petitioner can "fairly present" her federal claim to state courts:

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

*Whiting v. Burt*, 395 F.3d 602, 613 (6th Cir. 2005) (quoting *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Additionally, a prisoner must have presented the same legal and factual substance in her claims to state courts that she later raises on habeas in federal courts.

## IV.   LAW & ANALYSIS

### A.   Exhaustion Under § 2254

Although Petitioner continues to litigate his conviction in state court, federal habeas proceedings may be appropriate where "there is an absence of available State corrective process; or [] circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B); *see Matlock v. Rose*, 731 F.2d 1236, 1239 (6th Cir. 1984). Here, the only remaining state court proceedings are about the appropriate sentence length for Petitioner's conviction on Count 15; the grounds for habeas that Petitioner raises in this action have been adjudicated repeatedly (and rejected repeatedly) in state court. In *Armengau V*, Petitioner's most recent appeal, the Tenth District held that Petitioner's merits claims, including his claims of violations of federal constitutional rights presented here in his Second Amended Petition, were barred by res judicata. *See Armengau*, 154 N.E.3d at 1094–95. Further attempts by Petitioner to

31

seek relief based on federal rights in state courts will clearly be ineffective or futile: any further appeals will be limited to issues about resentencing on Count 15 and will preclude renewed consideration of the constitutional claims he raises here. *See Granberry v. Greer*, 481 U.S. 129, 131 (1987) (noting that a petitioner's "failure to [exhaust his available state remedies] is not an absolute bar to appellate consideration of his claims"); *Matthews v. Wingo*, 474 F.2d 1266, 1268 (6th Cir. 1973) ("However, this court consistently has held that where resort to a State court would be a mere exercise in futility, the exhaustion requirement will not be applied." (citations omitted)). *Mathews* is instructive:[9] though the petitioner in that case had not exhausted state remedies, the Court of Appeals observed that "a subsequent motion [to vacate his sentence] would be denied without a hearing" and thus "that any effort by [petitioner] to return this issue to the [state] courts would be futile." *Mathews*, 474 F.2d at 1268. Petitioner is in the same position and, therefore, may proceed with his habeas petition.

## B.     Admissibility of Supplemental Information

### 1.  Admissibility of "Demonstrative" Exhibits

This Court first addresses the preliminary question of the admissibility of Exhibits G, K– P, S-X. Petitioner submitted, as attachments to his Reply to Respondent's First Return of Writ (ECF No. 54) fifteen exhibits. Petitioner later filed a Motion to Supplement (ECF No. 108) with Exhibit X. The Magistrate Judge deemed the above-mentioned exhibits inadmissible under *Cullen v. Pinholster*, 563 U.S. 170 (2011), because the exhibits, which are all excerpts of indictments in other Ohio state criminal cases (except Exhibit G), were not part of the state record.

---

[9] The statutory language of § 2254(b), which sets out the exhaustion requirement, did not change substantively between 1973, when *Mathews* was decided, and 1996, when AEDPA was passed. *Compare* 28 U.S.C. § 2254(b) (1970) *with* 28 U.S.C. § 2254(b) (1996); *see also* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF TEXTS §§ 52, 54, 57 (2012) (detailing various canons that require interpreting statutes in light of existing common law and judicial decisions, except where explicitly disavowed by legislative language).

Petitioner objected to the Magistrate Judge's decisions to exclude the exhibits twice. (*See* ECF Nos. 71, 117). Neither set of objections, however, is responsive. First, the bulk of Petitioner's arguments in favor of admissibility are, at bottom, assertions about the merits of his case. (*See* ECF No. 71 at 6–12; ECF No. 117 at 1–4). But whether the exhibits support the merits of his petition for writ of habeas corpus has no effect on this Court's consideration of their admissibility; after all, the question of admissibility does not turn on the relevance of the evidence. Petitioner also suggests that his exhibits should be admitted because they are not substantive evidence but rather "visually demonstrate" his point. (ECF No. 117 at 3). *Pinholster*, as the Magistrate Judge noted, limits "review under § 2254(d)(1) . . . to the record that was before the state court that adjudicated the claim on the merits" and prohibits "new evidence introduced in a federal habeas court and reviewed by that court in the first instance effectively *de novo*." *Pinholster*, 563 U.S. at 181, 182. Petitioner's exhibits do not fall within some sort of carve-out from the *Pinholster* prohibition: he does not cite to, nor is this Court able to find, any suggestion in *Pinholster* or its progeny of a distinction between substantive evidence and "demonstrative" evidence. Finally, Petitioner argues that *Pinholster* does not apply at all, because he seeks to introduce evidence about a claim that was not adjudicated on the merits in state court. This assertion, though grounded in law unlike Petitioner's other arguments, is not based in fact: if these exhibits are intended as proof of what was missing from the state indictments, that is an issue that was adjudicated on the merits by the Tenth District. *See Armengau*, 93 N.E.3d at 301–03.

In sum and substance, the exhibits Petitioner seeks to admit are barred by *Pinholster*. They were not part of the record before the state court; that is not in dispute. They are evidence, demonstrative or otherwise. And they are introduced for the purpose of demonstrating that the indictments in Petitioner's trial were insufficient, an error raised by Petitioner on appeal and

addressed in state court.  In such circumstances, the record may only be expanded under §
2254(e)(2) for new evidence that "could not have been previously discovered through the exercise
of due diligence."  Petitioner has not made the requisite showing to overcome that barrier.

### 2. Notice of Supplemental Authority Without Leave

Petitioner also objects to the Magistrate Judge's decision to strike Petitioner's notice of
supplemental authority (ECF No. 110).  (*See* ECF No. 111 at 2–5).  Although neither the Federal
Rules of Civil Procedure nor this Court's Local Rules allow for the filing of supplemental
authorities, this Court has in practice generally allowed such filings.  The permissive approach
taken by this Court does not, however, entail an "obligation" that Petitioner (or any party before
this Court) must uphold, as he claims; to the contrary, such filings are discretionary and should be
used sparingly.  *Cf.* Fed. R. App. P. 28(j) ("If pertinent and significant authorities come to a party's
attention after the party's brief has been filed — or after oral argument but before decision — a
party may promptly advise the circuit clerk by letter, with a copy to all other parties, setting forth
the citations.  The letter must state the reasons for the supplemental citations, referring either to
the page of the brief or to a point argued orally.  The body of the letter must not exceed 350 words.
Any response must be made promptly and must be similarly limited.").  Petitioner appears not to
understand the meaning of "limited," as evidenced by the number of times he has sought to submit
supplemental authorities, and the volume of his briefing.  But Petitioner does appear to understand
the traditional rule followed in this Court: parties typically file sur-replies and supplemental
authorities after asking for leave and demonstrating good cause.  After all, he himself has followed
that procedure on numerous occasions in this case.  (*See, e.g.*, ECF Nos. 94, 96, 116, 120, 125,
127, 130).  As Petitioner was not granted leave in this instance to submit supplemental authority,
this Court upholds the Magistrate's decision.

* * *

Accordingly, this Court **OVERRULES** Petitioner's Objections (ECF Nos. 78, 111, 117) regarding the admissibility of exhibits and supplemental authority.  Petitioner's Exhibits G, K–P, S–X (*see* ECF Nos. 54, 108) and Notice of Supplemental Authority (ECF No. 109) are **EXCLUDED** from consideration.

### C.     Armengau's Second Amended Petition

Petitioner raises ten grounds for relief in his Second Amended Petition.  His arguments in support of his requests for relief are often overlapping; the "Supporting Facts" that Petitioner references for his proposed grounds often include the exact same language, and appear to conflate — or, at least, inter-mingle — different grounds.  In fact, as the Magistrate Judge summarized, "Petitioner argues that his claims are sufficiently 'intertwined' that referring to one also refers to all or almost all of the others."  (ECF No. 118 at 2).  For the sake of clarity and organization, this Court first explains the two overarching issues (beyond Petitioner's claim of actual innocence) that form the foundation of the Second Amended Petition, as this Court understands it.

First, the initial indictment against Petitioner alleged that the conduct underlying the charges occurred in Franklin County, but he was ultimately convicted for events that took place in Marion County on Counts 8, 10, 14–18.  This discrepancy — which Petitioner characterizes as the State substituting uncharged offenses in lieu of the indicted offenses — forms the basis for a number of his claims.  His First Ground for Relief, for example, argues that the prosecution never proved that he committed the charges alleged in Counts 8, 10, 14–18, in Franklin County, and therefore did not offer sufficient evidence for conviction.  Similarly, his Second Ground for Relief essentially claims that the references to Franklin County in the indictment did not provide him with fair notice of the charges against him.  The incorrect location also underlies Petitioner's

35

double jeopardy claims in his Third Ground for Relief.  At trial, the State sought to remedy the incorrect location in the indictment by amending the indictment orally and introducing a series of bills of particulars.  These changes are at the root of the constructive amendment claim in Petitioner's Third Ground for Relief, as well as the subject matter jurisdiction claim in the Sixth Ground for Relief and the actual innocence claim in the Eighth Ground for Relief.

Second, the trial court permitted the State to introduce other-acts evidence and denied Petitioner's requested jury instructions — the combination of which Petitioner now argues deprived him of a fair trial.  Petitioner points to the lack of specificity in the jury instruction and verdict forms and the trial court's subsequent refusal to specify the factual bases for the individual counts as evidence in support of this contention.  His Third, Fourth, and Ninth Grounds for Relief rest on questions or jury instructions and unanimity: he asserts, in effect, that the deficient instructions exposed him to double jeopardy and resulted in either him being convicted for uncharged other-acts evidence or by a non-unanimous jury.  Finally, his Fifth Ground for Relief asserts prosecutorial misconduct regarding the other-acts evidence.

Before addressing Petitioner's grounds for relief, this Court first notes what is, and is not, under consideration.  To the extent that Petitioner's claims rest on the introduction of prior bad acts,[10] the State's decision to introduce such evidence and the trial court's decision to admit it does not constitute a cognizable habeas claim.  *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) ("There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence.").  Additionally, because "the federal guarantee of a grand jury indictment has not been applied to the states,"

---

[10] "Other-acts evidence" is listed in the Second Amended Petition with respect to at least Grounds Two, Three, Five, Nine, and Ten, and appears relevant to Petitioner's arguments on Ground One as well.

*Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984), a claim that an indictment did not conform

to state or federal procedural requirements or did not contain certain information is not cognizable

except as a claim that a petitioner was denied fair notice. *Roe v. Baker*, 316 F.3d 557, 570 (6th

Cir. 2002) (citations omitted) ("Beyond notice, a claimed deficiency in a state criminal indictment

is not cognizable on federal collateral review."). Thus, Petitioner's claims on Grounds One, Two,

and Three are cognizable only to the extent that they sound in notice.

With that background in mind, this Court now addresses each of Petitioner's ten proposed

grounds for relief and considers the Magistrate Judge's recommendations. Given the overlap

between Petitioner's Initial Objections (ECF No. 103) and Supplemental Objections (ECF No.

123), this Court focuses its analysis on the Supplemental Objections.

*1. Ground One: Sufficiency of the Evidence*

In Ground One, Petitioner argues that he was convicted on insufficient evidence as to

Counts 2, 3, 8, 10, 14, 15, 16, 17, and 18.[11] The Magistrate Judge laid out, and Petitioner does not

dispute, the correct legal standard for federal courts evaluating such claims on habeas: first noting

that a constitutional challenge to the sufficiency of the evidence states a claim under the Due

Process Clause of the Fourteenth Amendment, *Jackson v. Virginia*, 443 U.S. 307, 314 (1979), and

then that AEDPA requires a federal court to show "two layers of deference to groups who might

view facts differently than [the habeas court] would." (ECF No. 97 at 37 (quoting *Brown v.*

*Konteh*, 567 F.3d 191, 205 (6th Cir. 2009))). The first level of deference is to the state trial court;

this Court "must uphold the jury verdict if any rational trier of fact could have found the defendant

---

[11] On direct appeal to the Tenth District, Petitioner raised his sufficiency-of-the-evidence claim only as to Counts 8, 10, 14, 15, 17, and 18. (*See* State Court Record Ex. 8, Amended Brief of Appellant Javier Armengau, ECF No. 72 at 181). Thus, the sufficiency-of-the-evidence claims regarding Counts 2, 3, and 16 have been procedurally defaulted.

guilty after resolving all disputes in favor of the prosecution." *Konteh*, 567 F.3d at 205. Second, this Court must also show deference to "the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.* (citing 28 U.S.C. § 2254(d)(2)).

The precise contours of Petitioner's sufficiency-of-the-evidence argument are in dispute. He argues that he has already presented this issue to the state appellate court; in his appeal to the Tenth District, his Sixth Assignment of Error alleged that the trial court erred in convicting him upon insufficient evidence of venue. (*See* State Court Record Ex. 8, Amended Merit Brief of Appellant Javier Armengau, ECF No. 72 at 181–84). The Tenth District found that the prosecution had sufficiently pled venue, which "commonly refers to the appropriate place of trial for a criminal prosecution within a state," based on its understanding of the intersection of *State v. Hampton*, 134 Ohio St.3d 447, 2012-Ohio-5688, 983 N.E.2d 324 (2012), and Ohio Rev. Code § 2901.12(H), which dictates venue for course-of-criminal conduct crimes.[12] *Armengau*, 93 N.E.3d at 313–16. Petitioner's appeal of that decision to the Supreme Court of Ohio argued that Ohio Rev. Code § 2901.12(H) violated the Ohio Constitution, relying in part on *Hampton*. (State Court Record Ex. 13, Memorandum in Support of Jurisdiction of Appellant Javier Armengau, ECF No. 72 at 371–72). In the Supplemental Objections, Petitioner suggests that his argument is not, and has never been, about venue in terms of the trial location,[13] but venue in terms of where the crime happened. And the location of the crime, he argues, is a "material" fact that the state is required to prove

---

[12] Ohio Rev. Code § 2901.12 is explicitly about venue in terms of "where the trial is to take place."

[13] To the extent that Petitioner's claim may have once rested on questions of where the trial occurred, Respondent suggests that "the Supreme Court has never determined that the Sixth Amendment's venue clause applies to the states," and therefore that Petitioner "had no federal constitutional right to prove 'beyond a reasonable doubt' that the crimes for which he was convicted were committed in Franklin County, Ohio." (ECF No. 73 at 39 (citing *Stevenson v. Lewis*, 384 F.3d 1069, 1071 (9th Cir. 2004))). Respondent's argument is well-taken. *See also Caudill v. Scott*, 857 F.2d 344, 345–46 (6th Cir. 1988).

beyond doubt. (ECF No. 123 at 23 (citing *State v. Lynn*, 129 Ohio St.3d 146, 2011-Ohio-2722, 950 N.E.2d 931 (Ohio 2011); *Knight v. State*, 54 Ohio St. 365 (1896))).

As an initial matter, this Court first considers the Magistrate Judge's determination that Petitioner's arguments be denied on Count 2, because his sentence for that charge ended before he filed his petition. (ECF No. 97 at 36 (citing *Maleng v. Cook*, 490 U.S. 488 (1989)). Petitioner's Fourth Supplemental Objection (ECF No. 123 at 61–64) argues that he should be allowed to seek a habeas petition for Count 2 because he is still exposed to possible collateral consequences, specifically disbarment, even though he is no longer in custody on that count. His argument does not rebut the custody requirement laid out in *Maleng*, and instead mistakenly relies on *Ayers v. Hargis*, 2022 WL 333588 (6th Cir. Feb. 4, 2022).[14] In *Ayers*, the Sixth Circuit found that a prisoner's habeas petition was not moot even after the prisoner was no longer subject to a custodial sentence because the conviction, "if sustained, could pose collateral consequences." *Id.* at *2. The case did not, however, overturn Supreme Court precedent holding that "the habeas petitioner [must] be 'in custody' under the conviction or sentence under attack at the time his petition is filed." *Maleng*, 490 U.S. at 490–91 (citing *Cafagas v. LaVallee*, 391 U.S. 234, 238 (1968)). After all, the mootness question addressed in *Ayers* is distinct from the issue in *Maleng*: at no point in *Ayers* does the Sixth Circuit suggest that collateral consequences allow a person not in custody to challenge his sentence on habeas corpus (and, in fact, the petitioner in *Ayers* was in custody when he first filed his habeas petition). It is well settled that a prisoner is no longer "'in custody' under a conviction after the sentence imposed for it has fully expired." *Id.* at 492. Petitioner's sentence

---

[14] The Sixth Circuit, in *Ayers*, referred to the prisoner's 92-page objection as "astonishing." *Id.* Petitioner here has surpassed that bar many times over.

for Count 2 had fully expired, and so he was no longer in custody, when he filed the instant petition; therefore, any claims by Petitioner seeking habeas for Count 2 are no longer cognizable.

On the merits of Petitioner's First Ground for Relief, the Magistrate Judge recommended dismissal on all other counts as well, out of deference to the Tenth District's decision in *Armengau II*. The Magistrate Judge read *Armengau II*'s discussion of *Hampton* as an analysis of both meanings of venue. (ECF No. 97 at 47–51). That appears to be a misinterpretation: the Tenth District's analysis only considered the question of whether venue was proper in terms of the county in which Armengau was tried. *See Armengau*, 93 N.E.3d at 313 (introducing the question of venue as "the appropriate place of trial for a criminal prosecution within a state" and referring to Ohio Rev. Code § 2901.12, which dictates the location of a trial). The Tenth District's reliance on *Hampton* in its venue analysis does not change this conclusion: contrary to Petitioner's assertions in the Supplemental Objections and in his briefing to state courts (*see, e.g.*, State Court Record Ex. 8, Amended Merit Brief of Appellant Javier Armengau, ECF No. 72 at 181–84), *Hampton* is a case only about venue as a matter of trial location, and does not touch upon the topic of venue as the location of the offense. *See State v. Hampton*, 983 N.E.2d at 328–29 (discussing venue as "the proper place to try a criminal matter"); *see also id.* at 329 (O'Donnell, J., dissenting) (noting that "venue is a procedural matter and concerns only the location where a trial is to be held"). In other words, the Tenth District's analysis of venue does not address Petitioner's sufficiency-of-the-evidence argument, as presented here, and does not warrant deference from this Court on that claim.[15]

---

[15] Nor is Petitioner's reliance on *Hampton* as proof of his sufficiency-of-the-evidence claim warranted, to the extent that his claim is about venue as the location of the offense.

Petitioner's argument, as presented in his First Supplemental Objection, is that there was insufficient evidence presented at trial of the location listed in the indictment for the place of his offenses (i.e., "venue"). (*See, e.g.*, ECF No. 123 at 35 (arguing that "[t]he state in a criminal prosecution must prove that the charged or indicted crime occurred in the 'County and State as alleged in the indictment'" (no citations provided)). As noted previously, the indictment against Petitioner listed Franklin County as the location of all offenses. Nine days before trial, the State submitted a bill of particulars, clarifying that Counts 6–18 involved a "course of conduct as defined in R.C. 2901.12(H)(1), which encompassed at least, Franklin and Marion Counties, Ohio." (State Court Record Ex. 15, Petition for Writ of Habeas Corpus, ECF No. 72 at 497). At trial, the State presented evidence of conduct that occurred in Marion County for Counts 8–18; Petitioner was convicted by the jury on Counts 8, 10, 14–18. As this Court understands Petitioner's Second Amended Petition and subsequent briefing, his argument is not that there was insufficient evidence at trial for the jury to convict him of conduct that took place in Marion County — only that there was insufficient evidence to convict him of events in Franklin County, where the indictment alleged misconduct.

This Court's analysis starts with what Petitioner got right. First, he accurately cited numerous cases where state courts have found that indictments specifying the date and location of the charged crimes are proper. (*See* ECF No. 123 at 42–43). Second, Petitioner correctly notes that the prosecution must prove every material element of a crime beyond a reasonable doubt and that state law determines which elements of a crime are material. But this does not mean that the prosecution must prove beyond a reasonable doubt the location of the crime as charged in the indictment. Petitioner does not cite to any state laws or cases holding that the location of an offense

stated in the indictment is a material element of a crime; that an accurate location in an indictment is proper does not, as a matter of logic, mean that it is also necessary for an indictment to be proper.

In fact, Ohio explicitly allows for amended indictments, *see* Ohio R. Crim. P. 7(D), undermining any claim that the offense must be proven specifically as alleged in the initial indictment. *See also State v. Pacific*, 2021-Ohio-973 ¶ 973, 2021 WL 1149396, at *2 (Ohio Ct. App. Mar. 26, 2021) ("We previously concluded that an amendment to an indictment regarding the location of the offense does not change the name or identity of the offense." (citing *State v. Weber*, 2013-Ohio-3172, ¶ 29, 2013 WL 3816662, at *8 (Ohio Ct. App. July 19, 2013))). Nor is the prosecution required to prove beyond a reasonable doubt the precise location of an offense as set out in a bill of particulars. *See State v. Lovings*, 1997 WL 798328, at *2 (Ohio Ct. App. Dec. 23, 1997). Incorrect or insufficiently specific dates or locations in an indictment are problematic only where the defects "tend to prejudice the substantial rights of the defendant upon the merits." Ohio Rev. Code § 2941.08(K). Prejudice could result from imprecise dates if, for example, the age of the defendant was at issue (such as in prosecutions of statutory rape) or if "the defendant was indisputably elsewhere during part but not all of the intervals of time set out in the indictment." *State v. Sellards*, 17 Ohio St.3d 169, 478 N.E.2d 781, 785 (Ohio 1985) (citing *State v. Gingell*, 7 Ohio App.3d 365, 455 N.E.2d 1066, 1071 (Ohio 1982)). Petitioner's situation does not accord with either of these contexts, or other similar contexts.

In short, under Ohio law, the location and time listed in the indictment are not material elements that must be proven by the prosecution. *Cf. State v. Lawrinson*, 551 N.E.2d 1261, 1262 (Ohio 1990) ("It is understood that an indictment or information is not *per se* invalid when dates or times are not included if such information is not material to the conduct charged."). Instead, as Petitioner alludes to, it is the location of the offense, which may vary from the location in the

42

indictment — if it is alleged in the indictment at all[16] — that must be proven. And so whether there was sufficient evidence to demonstrate that the conduct underlying Counts 8, 10, 14–18 occurred in the location listed in the indictment is not an inquiry relevant to this Court on federal habeas.

Accordingly, this Court **OVERRULES** Petitioner's First and Fourth Supplemental Objections and **ADOPTS** the Magistrate Judge's recommendation that Petitioner's First Ground for Relief be **DENIED**.

### *2. Ground Two: Lack of Notice of Crimes Charged*

Petitioner's Second Ground suggests that he was denied due process of law because the indictment did not provide him with adequate notice of the specific crimes with which he was charged. Specifically, Petitioner argues that he was convicted on Counts 2 and 3 based on other-acts evidence, rather than for allegations mentioned in the indictment, and that he was convicted on Counts 8, 10, 14–18, for conduct outside of the time range and place alleged in the indictment. (*See* ECF No. 70 at 7–8). The Magistrate Judge concurred with the Warden's argument that these claims are procedurally defaulted (*see* ECF No. 73 at 56–57), and recommended dismissal. In response, Petitioner, in his Fifth Supplemental Objection (ECF No. 123 at 64–108), suggested that he satisfied the fair presentation requirement because his notice claim here corresponds to Propositions of Law III, IV, V, and VI that he raised in seeking appellate review of *Armengau II* from the Supreme Court of Ohio.

---

[16] Petitioner states that "[e]ach count [of an indictment] is required to identify the location (count) of the charged crime." (ECF No. 123 at 104). Perhaps this is a requirement in federal prosecutions, but there is no indication that Ohio law requires state indictments to list the place of the offense and Petitioner does not support his assertion with any citations. *See* Ohio R. Crim. P. 7(B) (listing requirements of an indictment).

In the first instance, Propositions of Law III, IV, and V all exclusively dispute the trial court's decision to admit prior bad acts and cite only state cases in support. These propositions, as the Magistrate Judge pointed out, do not present federal constitutional claims, and Petitioner does not appear to dispute the Magistrate's conclusion in that regard. Therefore, any claim that Petitioner lacked notice because of the introduction of other-act evidence is not cognizable for lack of fair presentation.

Petitioner does argue that Proposition of Law VI, which states *inter alia* that the State was unable to "provide [the] defendant with accurate information regarding the timeframe in which the alleged criminal conduct occurred [or] where it occurred," thus "deny[ing Armengau] his rights to a fair trial, due process of law, and double jeopardy protections," fairly presented a constitutional notice claim. (State Court Record Ex. 13, Memorandum in Support of Jurisdiction of Appellant Javier Armengau, ECF No. 72 at 377, 380). As noted previously, in the Sixth Circuit:

> To determine whether a petitioner has fairly presented a claim in state court, we ask whether the petitioner: (1) relied upon federal cases employing constitutional analysis; (2) relied upon state cases employing federal constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law.

*Houk*, 871 F.3d at 418 (citing *McMeans*, 228 F.3d at 681). Looking to Petitioner's appeal to the Supreme Court of Ohio, he did not cite any federal cases employing constitutional analysis, or any federal cases at all, in his appeal to the Supreme Court of Ohio.[17] (*See* State Court Record Ex. 13, Memorandum in Support of Jurisdiction of Appellant Javier Armengau, ECF No. 72 at 377–81).

---

[17] Petitioner's suggestion that his "*entire argument is of a constitutional nature* — under the Ohio *and* U.S. Constitution" does not overcome this barrier. (ECF No. 123 at 71). The entire point of the fair presentation requirement is that petitioners must specify the nature of their federal constitutional arguments to allow "state courts . . . the opportunity to see both the factual and legal basis for each claim." *Wagner v. Smith*, 481 F.3d 410, 414–15 (6th Cir. 2009). A blanket assertion of constitutional argument defeats that purpose.

Petitioner also did not rely upon state cases employing federal constitutional analysis; in fact, Petitioner cited only one case in support of Proposition of Law VI, *State v. Burdett*, 1994 WL 283651 (Ohio Ct. App. June 21, 1994), which examined state cases and state criminal procedural rules. *See generally id.* The third and fourth questions present the closest calls: did Petitioner, in asking for review by the Supreme Court of Ohio "phrase[] the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right" or "allege[] facts well within the mainstream of constitutional law"? *Hand*, 871 F.3d at 480. Although a petitioner who simply lists constitutional phrases like "due process" has not cleared the bar, *see Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006), pairing broad language like "rights to a fair trial" with specific statements "evocative of language . . . articulated in prior Sixth Circuit cases" can be enough to qualify as fair presentation. *See Nian v. Warden*, 994 F.3d 746, 753 (6th Cir. 2021).

Petitioner appears to assume that his assertions, in the Memorandum in Support of Jurisdiction, that "he was tried on facts not presented to the grand jury" and that "he was tried on unindicted offenses" qualify as statements evocative of Sixth Circuit due process cases or otherwise in the mainstream of constitutional litigation. (ECF No. 123 at 65). Petitioner is mistaken. These arguments do not automatically harken to the Sixth Circuit's constitutional jurisprudence, because "the Constitution does not require any particular state indictment rule. In fact, it does not require an indictment at all if sufficient notice of the charges is given in some other manner." *Koontz*, 731 F.2d at 369 (citing *Combs v. Tennessee*, 530 F.2d 695 (6th Cir. 1976), *cert denied*, 425 U.S. 954 (1976)); *see also Alexander v. Louisiana*, 405 U.S. 625, 633 (1972) ("Although the Due Process Clause guarantees petitioner a fair trial, it does not require the States to observe the Fifth Amendment's provision for presentment or indictment by a grand jury."). In

45

other words, there is no constitutional right to an indictment in a state trial; a state prisoner's claims on habeas that he was deprived of an indictment therefore do not set off any federal constitutional alarms.[18]

The strongest argument in favor of Petitioner's position is found in the introduction to his Sixth Proposition of Law, where he asserts that "[w]hen the state cannot provide a defendant with accurate information regarding the timeframe in which the alleged criminal conduct occurred, where it occurred, or the conduct at issue until its witness has testified at trial, a defendant is misled and prejudiced and is entitled to a mistrial." (*See* State Court Record Ex. 13, Memorandum in Support of Jurisdiction of Appellant Javier Armengau, ECF No. 72 at 377 (citing Ohio R. Crim. P. 7(D))). This language, unlike his assertions about the propensity effect of other-acts evidence or the lack of indictment, does call to mind constitutional issues of notice. And though citing a state procedural rule rooted in federal constitutional concerns of notice and due process, *see City of Columbus v. Bishop*, 2008-Ohio-6964, ¶ 24, 2008 WL 5423342, at *5 (Ohio Ct. App. Dec. 31, 2008) (citations omitted), is not quite identical to "rel[ying] upon state cases employing federal constitutional analysis," *Hand*, 871 F.3d at 418, the former alerts state courts to possible violations of federal rights in the same manner as the latter. Accordingly, this Court finds that Petitioner, in alleging a denial of fair trial, "employing terms sufficiently particular to allege a denial of a specific constitutional right," *id.*, and citing to a state procedural rule based on federal constitutional rights, fairly presented the notice claim before state courts.

---

[18] Further, the arguments Petitioner made in his briefing to the Supreme Court of Ohio about issues in the indictment, bills of particulars, and testimony are specifically and explicitly about the unanimity of the jury's verdict and not about lack of notice. (*See* State Court Record Ex. 13, Memorandum in Support of Jurisdiction of Appellant Javier Armengau, ECF No. 72 at 380).

46

But Petitioner's notice claim does not warrant relief on the merits. His argument rests on the fact that he was indicted on Counts 9–18 for conduct in Franklin County from 2002 to 2008 but was ultimately convicted for conduct that occurred in Marion County from 1999 to 2003.[19] (*See, e.g.*, ECF No. 123 at 66 ("[T]he record is unequivocally clear that Petitioner was never charged *by any process or method for any crime occurring outside of Franklin County*, or with Counts nine (9) through eighteen (18) in 1998, 1999 or 2000.")). As noted, there is no "federal guarantee of a grand jury indictment" in state prosecutions. *Koontz*, 731 F.2d at 369 (citing *Branzburg v. Hayes*, 408 U.S. 665 (1972)). The only requirement is that a criminal defendant be given "fair notice of the charges against him to permit adequate preparation of his defense." *Id.* Fair notice in the charging document requires, at a minimum, that "the offense be described with some precision and certainty so as to apprise the accused of the crime with which he stands charged." *Id.* In short, the question posed here is whether the Petitioner was given adequate notice of the charges, where he was not informed of the correct time and location of the alleged misconduct until mid-trial.

The Sixth Circuit has previously acknowledged that large time frames are commonplace, and do not violate constitutional notice requirements, in prosecutions of sex crimes involving young children. *See Valentine v. Konteh*, 395 F.3d 626, 632 (6th Cir. 2005). That deference acknowledges that young children who have suffered abuse may have difficulty remembering the precise time and location of the incidents in question. Although older victims of abuse may have the same difficulty, *see generally* Anke Ehlers & David M. Clark, *A Cognitive Model of*

---

[19] Petitioner's collateral attack on his convictions for Counts 2 and 3 are based on arguments about other-acts evidence, which are not cognizable on federal habeas, *see supra* Part IV.C, and were not fairly presented to state courts. Additionally, Petitioner is no longer in custody on Count 2, and so any federal habeas claims regarding that claim are not cognizable. Petitioner did not present any notice claims regarding Count 8 to the Tenth District. As such, the notice claim as to Count 8 has been procedurally defaulted.

47

*Posttraumatic Stress Disorder*, 38 Behaviour Rsch. & Therapy 319 (2000), the Sixth Circuit has not demonstrated the same deference to adult victims.  Of course, the role of this Court, on habeas review, is not to parse Sixth Circuit precedent and decide in the first instance whether variations in dates and times provide adequate notice in cases involving adult victims of abuse, but instead to adopt the state appellate court's analysis "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  In other words, Petitioner must surmount a high bar; to succeed on this claim, he must demonstrate that the Tenth District's analysis on the question of notice was contrary to clearly established federal law, as determined by relevant Supreme Court precedent.  28 U.S.C. § 2254(d); *see Renico v. Lett*, 559 U.S. 766, 779 (2010).

Petitioner has not cleared this bar for Counts 8, 10, 14–18.[20]  In evaluating Petitioner's direct appeal, the Tenth District determined that:

> the initial lack of specificity [in the indictment] . . .  did not materially prejudice appellant.  Apart from the dates of the offenses, which remained imprecise, the charges against appellant were sufficiently specific to allow an effective defense, which ultimately was successful as to certain charges. . . . appellant's defense did not rely on alibis or impossibility for the open dates given in the indictment, and '[t]he precise date and time a rape occurs is not an essential element of the crime.'  Appellant's defense relied on absolute denial of any sexual activity with L.M. outside of a two-week consensual dating relationship whose timing did not impact the charged crimes.

---

[20] For Count 9, the State introduced evidence at trial of a drugging rape as other-acts evidence.  (*See* State Court Record, Trial Tr. 1468:19–21, ECF No. 72-2 at 1479).  Partway through trial, the State claimed that this incident corresponded with Count 9.  (*See id.* 2355:19–2356:3, ECF No. 72-2 at 2367–68).  Petitioner was acquitted of Count 9 and did not present any claims about Count 9 on appeal.  *Cf. Brecht v. Abramson*, 507 U.S. 619, 6137–38 (1993) (habeas petitioners are only entitled to relief if "they can establish that [the state trial error] resulted in 'actual prejudice,'" which occurs where the error "had substantial and injurious effect or influence in determining the jury's verdict" (first citing *United States v. Lane*, 474 U.S. 438, 449 (1986); then quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946))).

*Armengau*, 93 N.E.3d at 303. To dispute this analysis, Petitioner cites and quotes a raft of state court cases for the proposition that an indictment specifying the location of the offense provides sufficient notice.[21] (*See* ECF No. 123 at 75). These cases do not help: as noted above, the question of what information is sufficient in an indictment is not the same as what information is necessary. Moreover, state court cases about the state requirements in an indictment are, ultimately, about questions of state law. But a federal habeas court does not sit in appellate review of state courts' analysis of state law, including the Tenth District's observation that Ohio state law explicitly "contemplates that [the state's theory of the case may evolve] in many criminal cases and the state will not be irremediably bound to the facts available at the outset of the trial." *Armengau*, 93 N.E.3d at 303; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."). Petitioner also suggests that he was, in fact, prejudiced by the changes in dates and locations because he "had witnesses subpoenaed for the locations and date range in the indictment." (*See* ECF No. 123 at 105). But the witnesses he subpoenaed, Jennifer Young and Leslie Todd, testified about Counts 1–3, which did not vary between indictment and trial. With respect to the counts in question here, Petitioner did not call any witnesses. *Armengau*, 93 N.E.3d at 298–99.

---

[21] Petitioner repeatedly disputes the Report and Recommendation by stating that the Magistrate Judge did not explicitly address one case or another. (*See, e.g.*, ECF No. 123 at 77). In doing so, Petitioner appears to misunderstand the nature of judicial opinions. There is no requirement that an opinion quote from, analyze, or address every case cite mentioned by the parties — and certainly not where, as here, a party lists hundreds of cases across over 200 pages, a large portion of which are substantively off-topic and are not accompanied with any "attempt to show its relevance to the point for which it is cited." (ECF No. 118 at 28 (discussing Petitioner's objection that the Magistrate Judge failed to discuss *Dorsey*)). As the Magistrate Judge noted, Petitioner's table of cases for the summary of his Reply to Return of Writ includes 543 citations (ECF No. 81), "[m]ost of [which] contain neither the identity of the deciding court nor the date of the decision." (ECF No. 118 at 3). This Opinion & Order, just like the Magistrate Judge's Report and Recommendation (ECF No. 97) and Supplemental Report and Recommendation (ECF No. 118) discusses the relevant case law, which, notably, does not include every single case mentioned by Petitioner.

Petitioner's objections are largely devoid of federal constitutional analysis. He cites only a handful of Supreme Court cases about notice, including: *Landon v. Plasencia*, 459 U.S. 21 (1982), which discussed notice requirements pursuant to the Immigration and Nationality Act, 9 U.S.C. ch. 12; and *In re Gault*, 387 U.S. 1 (1967), and *Strickland v. Washington*, 466 U.S. 668 (1984), which discuss the necessity of advance notice for a fair trial. He does not, on the other hand, cite any Supreme Court cases requiring a defendant be informed of the time frame and location eventually proven at trial, when that information is neither a material element of the offense nor necessary to "apprise[] the defendant of what he must be prepared to meet." *Russell*, 369 U.S. at 763. Nor is this Court aware of any such precedent.

Accordingly, in light of the deference to state courts proscribed by AEDPA, this Court finds Petitioner has not met his burden of showing that the Tenth District unreasonably applied controlling Supreme Court precedent on fair notice. This Court **OVERRULES** Petitioner's Fifth Objection and **ADOPTS** the Magistrate Judge's recommendation with respect to Petitioner's Second Ground for Relief.

### 3. *Ground Three: Constructive Amendment and Double Jeopardy*

In Petitioner's Third Ground, he asserts that he was denied due process and constitutional protections against double jeopardy when the trial court allowed constructive amendment of the indictment and denied his request for a unanimous jury instruction. Petitioner repeatedly switches between discussing jury unanimity, which comprises his Ninth Ground for Relief, constructive amendment, and double jeopardy; he also mixes his arguments on the merits of these topics with his discussion of the Sixth Ground for Relief. For the sake of organization, this Court addresses Petitioner's constructive amendment and double jeopardy arguments about the indictment here, and jury unanimity later as Petitioner's Ninth Ground for Relief.

50

Petitioner's arguments about constructive amendment and double jeopardy are rooted in the indictment issues discussed above. Specifically, he suggests that the State's case, which included evidence of offenses that differed in time, location, and details from the indictment, resulted in a constructive amendment. Similarly, Petitioner argues that the indictment failed to protect him from double jeopardy, because it was insufficiently specific such that he could not "plead an acquittal or conviction to bar future prosecutions for the same offense." *Isaac v. Grider*, 211 F.3d 1269, 2000 WL 571959, at *4 (6th Cir. May 4, 2000) (citations omitted). The Magistrate Judge recommended that both prongs of Petitioner's argument be dismissed: he noted that indictments are not required at the state level, found *Valentine v. Konteh*, 395 F.3d 626 (6th Cir. 2005), inapplicable to Petitioner's case, and concluded that the Double Jeopardy Clause does not warrant relief where there is no threat of a second trial (or second indictment). (ECF No. 97 at 59–62). Petitioner's Supplemental Objections reiterate his assertion that he suffered prejudice from the constructive amendment, suggest that double jeopardy requires a certain degree of specificity in the indictment, and emphasize that, during resentencing, he has been exposed to double jeopardy. (*See* ECF No. 123 at 111, 113, 124).

### a. Constructive Amendment

Constructive amendment "infringe on the Fifth Amendment's grand jury guarantee," *United States v. Mize*, 814 F.3d 401, 409 (6th Cir. 2016) (quoting *United States v. Hynes*, 467 F.3d 951, 962 (6th Cir. 2006)), which has not been incorporated against the states, *see Williams v. Haviland*, 467 F.3d 527, 534 (6th Cir. 2006) (citing *Rose v. Mitchell*, 443 U.S. 545, 557 n.7 (1979)); nevertheless, federal courts have recognized claims of constructive amendment by prisoners in state custody as rooted in the "due process right to be informed of the nature of the accusations against him." *Lucas v. O'Dea*, 179 F.3d 412, 417 (6th Cir. 1999) (citing *Combs*, 530

F.2d at 698). In other words, a § 2254 claim of constructive amendment arises out of the same fair notice concerns motivating Petitioner's Second Ground. *See supra* Part IV.C.2.

Petitioner's constructive amendment argument, as explained in the Sixth Supplemental Objection (ECF No. 123 at 108–49), largely repeats the same arguments he makes elsewhere about the sufficiency of the indictment. First, he suggests that an indictment must set forth all essential elements of an offense, including the specific date range. Second, he argues that "[t]he indictment defines what the state must prove." (*Id.* at 118). Next, the State's introduction of evidence about conduct in a different location and on a different date constitutes a "constructive amendment," which denied him due process. None of these contentions is well-taken. There is, in fact, no requirement that a state indictment include a specific date range. *See* Ohio Rev. Code § 2341.03 (setting out the information necessary in an indictment). Similarly, the prosecution is not required to prove every element as stated in the indictment, as there is no requirement that the ultimate charge match the indictment perfectly. *Cf.* Ohio R. Crim. P. 7(D). Finally, a discrepancy between non-material details, such as time or place, as alleged in the indictment, and the evidence at trial, is "properly characterized as a mere variance," not a constructive amendment. *Geboy v. Brigano*, 489 F.3d 752, 763 (6th Cir. 2007); *Kiriazis v. Polito*, 410 F. App'x 958, 963 (6th Cir. 2011) (applying *Geboy* and finding that "the fact that the evidence at trial included more than just the [indicted] location was a variance"); *cf. United States v. Ford*, 872 F.2d 1231, 1235 (6th Cir. 1989) ("An *amendment* of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them. A *variance* occurs when the charging terms of an indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment."). In short, the discrepancy that Petitioner alleges, between the time and place in the indictment and the time

and place proven at trial, is a variance. Whereas constructive amendments are *pre se* prejudicial, "the relevant question [here] is whether the defendant was prejudiced by this variance." *Geboy*, 489 F.3d at 763 (citations omitted).

Petitioner's objections provide numerous citations to inapplicable sources of authority, including Ohio cases discussing the issue of amended indictments. (*See* ECF No. 123 at 125). State cases about serial amendments are outside the scope of this Court's analysis, as we are bound by the Tenth District's analysis and conclusions on state law. *See Armengau*, 93 N.E.3d at 303. Petitioner also discusses at great length the introduction of other-acts evidence. (*See* ECF No. 123 at 123). That, too, is outside the scope of this Court's review, as these arguments were dealt with by the Tenth District, were not fairly presented to the Supreme Court of Ohio, and are not cognizable on federal habeas. *Cf. Bugh*, 329 F.3d at 512. Finally, this Court sets aside Petitioner's citations to federal criminal cases analyzing constructive amendments, because those decisions are rooted in the Fifth Amendment grand jury requirement, which is not applicable here. Cases where a federal court evaluated whether a state criminal case involved a constructive amendment, on the other hand, are up for consideration. Petitioner has cited three such cases: (1) *Price v. Chappell*, 2017 WL 4267374 (N.D. Cal. Sept. 26, 2017); (2) *Jenkins v. Nelson*, 157 F.3d 485 (7th Cir. 1998); and (3) *Jelinek v. Costello*, 247 F. Supp. 2d 212 (E.D. N.Y. 2003).

These cases support the Magistrate Judge's recommendation of denial of this claim. *Jelinek* and *Jenkins* both looked to state law on constructive amendments and found that "such variances will not vitiate a conviction as long as the variance does not mislead the defendant in the presentation of his defense, does not expose him to double jeopardy, and as long as there was ample evidence presented to the jury to permit it to find the defendant guilty of the charged crime beyond a reasonable doubt." *Jenkins*, 157 F.3d at 498 (7th Cir. 1998); *see Jelinek*, 247 F. Supp.

2d at 269 (noting that "prejudice in the context of a 'constructive amendment' cannot be deemed prejudicial per se" in New York).  Furthermore, the district court in *Chappell* noted that "a defendant may be adequately notified of the nature and cause of the accusation by means other than the indictment/information in advance of trial," including by the nature of the charges and the prosecutor's statements during trial.  *Chappell*, 2017 WL 4267374, at *12 (N.D. Cal. Sept. 26, 2017) (citing *Jones v. Smith*, 231 F.3d 1227, 1238–39 (9th Cir. 2000); *Stephens v. Borg*, 59 F.3d 932, 934–36 (9th Cir. 1995); *Calderon v. Prunty*, 59 F.3d 1005, 1009–10 (9th Cir. 1995)).  In Petitioner's case, testimony at trial and the bills of particular notified him of the charges with specificity, and, as noted above, the Tenth District explicitly found that this sequence of events "did not materially prejudice appellant."  *Armengau*, 93 N.E.3d at 303.  Petitioner counters only with Judge Tyack's dissent in *Armengau II*, where he notes his concern about the "great deal of prejudicial evidence" in the case — referring to other-acts evidence, and not to prejudice arising out of the amendments to the indictment and bill of particulars.  *Armengau*, 93 N.E.3d at 322.

### b.  Defective Indictment (Double Jeopardy)

In Ground Three, Petitioner also argues that the lack of specificity in the indictment exposed him to double jeopardy in violation of the Due Process Clause.  The States are "obliged to observe the prohibition against double jeopardy" under the Fourteenth Amendment, *Watson v. Jago*, 558 F.2d 330, 338–39 (6th Cir. 1977) (citing *Benton v. Maryland*, 395 U.S. 784 (1969)), which is essentially a duty of fair notice: a criminal defendant is entitled to notice of the charges against him with enough specificity that "he may plead a former acquittal or conviction to avoid double jeopardy if subsequent proceedings are brought against him for a similar offense."  *Coles v. Smith*, 577 F. App'x 502, 506 (6th Cir. 2014) (citing *Hamling v. United States*, 418 U.S. 87, 117–18 (1974); *Russell v. United States*, 369 U.S. 749, 763–64 (1962)).  Of course, at the state

level, the requisite notice to the defendant, as discussed earlier, need not be in the form of a grand jury indictment "with reasonable particularity of time, place, and circumstance," *United States v. Cruikshank*, 92 U.S. 542,558 (1875), as "there is no constitutional right in a state prosecution to a grand jury indictment with particular specificity." *Williams*, 467 F.3d at 534. In that regard, a defective state indictment, since it is not even required in the first place, does not raise the same double jeopardy alarms as a defective federal indictment, so long as the defendant is provided sufficient notice and protection against double jeopardy through some other means.

Petitioner's argument, which is somewhat lacking in clarity, suggest that he "can be charged again for all *counts* for which he stands convicted (Counts 3, 8, 10, 14, 15, 16, 17, 18)" because it is not clear what factual bases underlie any of the counts. (ECF No. 123 at 110). With respect to Counts 9–18,[22] Petitioner suggests that he is exposed to double jeopardy because he "was not convicted or acquitted for any of the crimes for which he was indicted." (ECF No. 123 at 110–11). Essentially, because the jury only convicted and acquitted Petitioner for charges of misconduct against L.M. in Marion County, he believes that he was never judged for the indicted charges, which were alleged to have occurred in Franklin County. But changes to the time and location alleged in an indictment do not alter the name or identity of the crime charged; thus,

---

[22] On direct appeal to the Tenth District, Petitioner raised his double jeopardy claim only as to Counts 9–18. (*See* State Court Record Ex. 8, Amended Merits Brief of Appellant Javier Armengau, ECF No. 72 at 111–14). Thus, the double jeopardy claims regarding Counts 3 and 8 have been procedurally defaulted.

Additionally, Petitioner's argument with respect to Count 3 appears to be motivated by his belief that he put forward sufficient evidence at trial to discredit the State's case regarding the April 4, 2013, incident with C.C.; thus, he maintains, the jury could not have convicted him for the April 4 allegation, and may have convicted him instead for the other-act evidence about April 10. After all, the actual merits of his double jeopardy claim on Count 3are weak: he suggests that "it is unclear if [he] was convicted for the April 4, 2013 allegation or the April 10, 2013 [allegation]," (ECF No. 123 at 110), but the State specified in the first Bill of Particulars that Count 3 pertained to an incident on April 4 where Petitioner "lip-locks [C.C.], and then grabs his penis out of his pants. . . . by force by grabbing her arm, pinning her up against him, and putting his hand down her shirt against her will," (State Court Record Ex. 14, Petition for Writ of Habeas Corpus, ECF No. 72 at 496), and explicitly told the jury during closing statements that Count 3 referred to events on April 4. (Trial Tr. 3648:14–3650:9, ECF No. 72-2 at 3659–61). In other words, the factual basis for his conviction on Count 3 is clear to this Court.

Petitioner was in fact tried and judged on the same charges for which he was indicted. *See Armengau*, 93 N.E.3d at 303 (noting that the State is permitted to "amend the indictment and bill of particulars so long as 'no change is made in the name or identity of the crime charged'" (citing Ohio R. Crim. P. 7(D); *State v. White*, 2007-Ohio-3217, ¶ 17, 2007 WL 1816286, at *4 (Ohio Ct. App. 2007))); Ohio R. Crim. P. 7(D) (expressly contemplating changes in the timeframe between charges and indictment); *State v. Ford*, 2007-Ohio-2645, 2007 WL 1559560 (Ohio Ct. App. May 31, 2007).

The Third Ground also suggests that the identically-worded counts in the indictment[23] failed to provide adequate notice in violation of the Double Jeopardy Clause. (*Compare, e.g.*, Count 15, Indictment, State Court Record Ex. 1, ECF No. 72 at 17, *with* Count 18, *id.* at 7–8; *compare* Count 16, *id.* at 7, *with* Count 17, *id.*). The Sixth Circuit has previously noted that identical counts with "absolutely no distinctions made" and "no[] attempt to lay out the factual bases of [the] separate incidents that took place" might raise double jeopardy concerns. *Valentine*, 395 F.3d at 632.[24] But this is not a case involving no differentiation at all between the charges, with "[t]he indictment, the bill of particulars, and even the evidence at trial [all] fail[ing] to apprise the defendant of what occurrences formed the bases of the criminal charges he faced." *Id.* at 634. While the indictment did contain identically-worded counts, the State filed a bill of particulars and, later, an amended bill of particulars, on Petitioner's request, with detailed and distinct factual bases for the incidents charged in Counts 9–18. *Cf. id.* ("The due process concerns in the indictment might have been cured had the trial court insisted that the prosecution delineate the factual bases

---

[23] The jury verdict forms also contain identically-worded counts.

[24] As the Magistrate Judge noted, *Valentine* relied on "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision," but the Supreme Court has since tightened the standard for what qualifies as clearly established Federal law. (*See* ECF No. 97 at 61 (quoting *Valentine*, 395 F.3d at 638 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003)))).

for the [] separate incidents either before or during the trial."). Counts 15 and 18 are specifically about the white truck incidents,[25] Count 16 focuses on conduct occurring in L.M.'s apartment in Dublin, and Count 17 involved a threat of deportation. (*See* ECF No. 72 at 505–06). Each of these incidents was detailed in L.M.'s testimony. (*See* Trial Tr. 1482:6–1484:1, 1495:9–25, 1501:23–1508:16, ECF No. 72-2 at 1493–95, 1506, 1512–19). In short, the State differentiated between the counts against Petitioner in the bill of particulars, the subsequent amendment, and in closing. *See Coles*, 577 F. App'x at 508. The delineation between counts in Petitioner's trial is sufficient to provide him protection against double jeopardy. Moreover, as Respondent pointed out, Petitioner has not "identif[ied] any clearly established Supreme Court law that would, on due process grounds, invalidate indictments charging multiple violations of the same criminal statute during the same extended time period." (ECF No. 73 at 47).

### c. *Resentencing (Double Jeopardy)*

Petitioner also argues in the Sixth Supplemental Objection that "double jeopardy has already been violated with regards to Counts 10, 15 and 18 *during resentencing*. Petitioner may have been sentenced at resentencing for the factual basis resulting in acquittal in Count 11 and *was* resentenced to a consecutive term of imprisonment for Count 15, for which Petitioner had *already served the entire sentence* for Count 18, the identical count." (ECF No. 123 at 113 (emphasis in

---

[25] Petitioner argues that "[a] review of the record (indictment, opening, closing, jury instructions and verdict forms) confirms that prosecutors never even argued or presented those alleged incidents (incidents occurring in a 'white truck') to the jury for consideration for any count. In other words, *prosecutors never requested that the jury even consider those alleged incidents for conviction*." (ECF No. 123 at 116 (emphasis in original)). This is contrary to the record: the truck incidents are mentioned in the State's opening statement (Trial Tr. 96:5–8, ECF No. 72-2 at 107), the State's closing statement (*id.* 3676:21–3677:4, ECF No. 72-2 at 3687–3688 ("He forces vaginal intercourse in his office, in his truck."), and, as mentioned above, in the amended bill of particulars.

original)).  This issue, which is first argued in his Sixth Supplemental Objection, is also discussed in his Fifteenth Supplemental Objection.[26]  Both objections are considered here.

This Court gleans four possible arguments from Petitioner's muddled statements on resentencing.  First, he appears to believe that the trial court resentenced him in 2018 on Count 16 for conduct that was initially in support of either Count 10 or 11.  (*See id.* at 218).  But the trial court did not resentence Petitioner on Count 16.  *Armengau*, 154 N.E.3d at 1089 (noting that the Tenth District remanded Petitioner's case to the trial court for "limited resentencing as to Counts 10, 14, 15, and 18").  Second, Petitioner argues that his resentencing on Count 15 is a violation of double jeopardy because of time served.  In response to Petitioner's appeal of the resentencing proceedings, the Tenth District noted that, as a matter of state law, a defendant does not face double jeopardy when he is resentenced for a given charge, because "the expectation of finality in a sentence that prevents resentencing for the same offense does not mature until the direct appeal is concluded or the time to appeal has expired."  *Id.* at 1092.  As Petitioner is still pursuing a direct appeal and Count 15 is not final, he can be resentenced on that conviction without violating the Double Jeopardy Clause.  Third, Petitioner theorizes that Counts 15 and 18 involve the same conduct, such that the resentencing on Count 15 imposed a second punishment for conduct for which he had already served time under Count 18.  But there is plenty of evidence that Counts 15 and 18 are distinct: the Tenth District found that "Counts 15 and 18 concerned two different incidents of coercive intercourse in Armengau's white truck," *id.* at 1094, the amended bill of particulars during the criminal trial specified "two occasions" for Counts 15 and 8, (*see* ECF No.

---

[26] Petitioner's Fifteenth Supplemental Objection raises claims of double jeopardy arising from his resentencing, as well as free-standing claims of denial of due process and fair trial.  The latter claims, which the Magistrate Judge recommended dismissing because of the Tenth District's *res judicata* analysis, are fundamentally an effort "to relitigate . . . the merits of the underlying convictions themselves" and are discussed elsewhere in this Opinion & Order.  *Armengau*, 154 N.E.3d at 1094.

72 at 505), and L.M. testified about two separate white truck incidents. (*See* Trial Tr., 1504:2–4, ECF No. 72-2 at 1515). The Petitioner has not demonstrated why deference by this Court to the state court jury, which returned guilty verdicts on two separate counts specified to be about two distinct occasions, or to the state appellate court,[27] which found that Counts 15 and 18 concerned distinct offenses, is inappropriate. Finally, Petitioner suggests that he may have been convicted on Count 10 for an unknown or acquitted crime, because the Tenth District reversed the trial judge's merger analysis and found that Counts 10 and 14 were allied offenses. (ECF No. 123 at 214). The argument, as it goes, assumes that the reversal means "the underlying incident for the 'rape' allegation may be different from the one which initially resulted in the [] sentence." (*Id.*).

---

[27] Petitioner argues that "[t]his Court should not give any deference to the Court of Appeals' factual findings." (ECF No. 123 at 219). Deference to state courts on federal habeas is not a choice; it is mandated by law. 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). Petitioner proceeds to explain why he believes that the Tenth District's analysis does not deserve deference, without a single citation to the trial record, the appellate decision on direct appeal, or the appellate decision on resentencing. A rambling list of perceived deficiencies does not qualify as "clear and convincing evidence," especially when many of the assertions rely on incorrect readings of the state courts' decisions.

For the sake of completeness, this Court addresses Petitioner's claims about the Tenth District's analysis. First, the Tenth District acknowledged that the crimes Petitioner was convicted for differed in detail, though not in name or identity, from the crimes for which he was indicted; in short, the Tenth District did not acknowledge that he was tried on different crimes from the ones for which he was charged. Second, Petitioner claims that "the Court of Appeals and prosecutors don't agree to this day on what facts support Count 16" (ECF No. 123 at 219), because the Tenth District believes Count 16 occurred in Franklin County and the prosecution believes it occurred in Marion County. The only statement about Count 16 in *Armengau II* or *Armengau V* reads as follows: "In contrast, for . . . Count 16 (sexual battery, L.M.), appellant concedes on appeal that the evidence supported venue in Franklin County." *Armengau*, 93 N.E.3d at 314. Third, Petitioner claims that he "was resentenced for alleged crimes that were never presented to the jury for conviction." (ECF No. 123 at 219). In fact, he was resentenced on Counts 10, 14, 15, and 18, all of which entailed conduct L.M. discussed in her testimony at trial. Fourth, Petitioner argues that "the Court of Appeals confirmed that no evidence was presented of the alleged incident that was indicted for Count 14." (ECF No. 123 at 219). This Court has read the opinions of the Tenth District in this case and has not found any such confirmation. The Tenth District in *Armengau II* found that Count 14 should have been merged by the trial court with Count 10, but did not find that Petitioner was improperly indicted or convicted on Count 14. *Armengau II*, 93 N.E.3d at 319. Fifth, Petitioner claims that "the Court of Appeals permitted two separate convictions for counts (15 and 18) that were presented to the jury as allied offenses." (ECF No. 123 at 119). The Court of Appeals determined that those two counts were not allied offenses, *Armengau*, 154 N.E.3d at 1094, upon *de novo* review as required by state law. *Id.* Based on the foregoing, deference to state courts is warranted here, as they did not "misapprehend or misstate the record in making their findings." (ECF No. 123 at 119 (quoting *Jones v. Ryan*, 2022 WL 16731981, at *12 (9th Cir. Nov. 7, 2022) (quoting *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004), *overruled on other grounds by Murray v. Schriro*, 745 F.3d 984, 999–1000 (9th Cir. 2014)))). On the other hand, Petitioner appears to have misstated the record.

59

But this reasoning is odd: it essentially engages in speculation about the existence of a factual mistake based on the appellate court's determination of a legal question. Nothing in the Tenth District's conclusion that Counts 10 and 14 were of a similar import suggested that the underlying conduct for Count 10 had been swapped for some other, uncharged offense.

\* \* \*

Accordingly, Petitioner's Sixth and Fifteenth Supplemental Objections are **OVERRULED**. This Court **ADOPTS** the Magistrate Judge's recommendation regarding Petitioner's Third Ground for Relief, which is **DENIED**.

### 4. Ground Four: Double Jeopardy (Jury Instructions)

The Magistrate Judge recommended that Petitioner's Fourth Ground for Relief, which alleges denial of due process and violation of the Double Jeopardy Clause due to improper jury instructions, be dismissed for lack of fair presentation to state courts. (*See* ECF No. 97 at 64–70). The Report and Recommendation noted that this claim was defaulted in two ways. First, a "federal court may not review federal claims that were procedurally defaulted in state courts," *Theriot v. Vashaw*, 982 F.3d 999, 1004 (6th Cir. 2020) (citing *Maslonka v. Hoffner*, 900 F.3d 269, 276 (6th Cir. 2018) (quoting *Davila v. Davis*, 137 S. Ct. 2058, 1064 (2017))), "unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Here, Respondent claimed that Petitioner defaulted his jury instructions claim by failing to object to the instructions at trial. *See Wainwright v. Sykes*, 433 U.S. 72, 91 (1977) (holding that a state's contemporaneous objection rule is a valid ground of procedural waiver). The Magistrate Judge correctly set forth the four-part analysis applied by the Sixth Circuit when the State has alleged a procedural default at the state

60

level, *see Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), and found that Petitioner's case meets the criteria: (1) Ohio has a procedural rule requiring litigants to preserve alleged errors in jury instruction by issuing a contemporaneous objection; (2) Petitioner did not object at trial; (3) the state appellate court enforced the rule as an "adequate and independent" state ground in reviewing Petitioner's jury instruction claim for plain error, *see Armengau*, 93 N.E.3d at 304; and (4) Petitioner failed to demonstrate cause and prejudice.[28]

Petitioner's Initial Objections suggested that the Tenth District did not enforce the state procedural rule requiring a contemporaneous objection to jury instructions, but the Magistrate Judge noted in the Supplemental Report and Recommendation that the Tenth District did in fact account for Petitioner's failure to object and accordingly reviewed his assignment of error for plain error —exactly what the Sixth Circuit has deemed enforcement of the contemporaneous objection rule as an "adequate and independent" state ground. *See Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012). In his Supplemental Objections, Petitioner does not raise new objections on this topic; instead, he suggests only that he, like the prisoner in *Osborne v. Ohio*, had already provided "an objection which is ample and timely to bring the alleged federal error to the attention of the trial court and enable it to take appropriate corrective action" and that "nothing would [have been] gained by requiring [his] lawyer to object a second time, specifically to the jury instructions." 495 U.S. 103, 124–25 (1990).

The Magistrate Judge also found that Petitioner failed to present the jury instruction claim to the Supreme Court of Ohio as a federal constitutional claim. (ECF No. 97 at 69–70). Petitioner's Seventh Supplemental Objection, addressed to this recommendation, argues that the

---

[28] Petitioner has neither demonstrated (or alleged) the existence of "some objective factor external to the defense" that inhibited his ability to raise an objection to the jury instruction, *Coleman*, 501 U.S. at 753, nor that he "might not have been convicted" if not for the error. *Reed v. Ross*, 468 U.S. 1, 12 (1984).

Sixth Proposition of Law in his appeal to the Supreme Court of Ohio, "by claiming that Petitioner was tried for uncharged offenses or convicted upon a non-unanimous verdict[,] implicitly raise[d] a jury instruction issue of which a reviewing court must be aware." (ECF No. 123 at 150). In fact, Petitioner mentions the jury only once in the Sixth Proposition of Law: he claimed that he was convicted by a non-unanimous jury. (State Court Record Ex. 13, Memorandum in Support of Jurisdiction of Appellant Javier Armengau, ECF No. 72 at 380). The rest of the briefing focuses on the serial amendments to the indictment and bill of particulars. (*See id.* at 378–81). Nowhere does Petitioner mention a federal case about jury instructions, rely upon state cases employing federal constitutional analysis about jury instructions, phrase his claim in terms of constitutional law about jury instructions, or allege facts in the mainstream of constitutional litigation around defective jury instructions. *See Houk*, 871 F.3d at 418. Even the most liberal fair presentation standard, *see Nian*, 994 F.3d at 761, requires more than so subtle an implication.[29]

Although this Court is sympathetic to Petitioner's argument that an objection to the jury instruction in his trial would have been "an arid ritual of meaningless form," *Osborne*, 495 U.S. at 125 (quoting *James v. Kentucky*, 466 U.S. 341, 349 (1984)), there is little question that Petitioner failed to present his jury instruction issue before the Supreme Court of Ohio. That claim, therefore, has been procedurally defaulted. Accordingly, this Court **OVERRULES** Petitioner's Eighth Supplemental Objection, **ADOPTS** the Magistrate Judge's recommendation, and **DENIES** the Fourth Ground for Relief.

---

[29] In fact, the Sixth Proposition of Law does not appear to contain any implication of a federal constitutional question at all. There was no constitutional requirement of unanimous juries in state criminal trials in 2017, when Petitioner appealed his conviction to the Ohio Supreme Court, *see Ramos v. Louisiana*, 140 S. Ct. 1390 (2020); claiming that the trial court failed to give a jury instruction requiring unanimity would not, therefore, have raised a federal constitutional claim of which a reviewing state court must have been aware.

5. *Ground Five: Fair Trial (Prosecutorial Misconduct)*

The Ninth Supplemental Objection (ECF No. 123 at 166–68) is addressed to the Magistrate Judge's recommendation that Petitioner's Fifth Ground for Relief be denied.  In that ground, Petitioner asks for a new trial because "he was denied a fundamentally fair trial due to prosecutorial misconduct [] where he was tried, convicted, and resentenced for convictions upon the admission of other-act evidence that was unindicted, uncharged, and unnoticed prior to trial and which was presented by prosecutors to intentionally circumvent the defenses to the actually indicted alleged crimes."  (ECF No. 70 at 15–16).  In short, Petitioner asserts that prosecutors committed misconduct in introducing and trying Petitioner on evidence of other acts, admitted under Ohio R. Evid. 404(B), and consequently denied him a fair trial.  The Magistrate Judge pointed out that Petitioner never presented this claim to the state courts; in his appeal to the Tenth District, Petitioner argued that prosecutorial misconduct denied him a fair trial and, in a separate assignment of error, that the trial court erred in admitting prior bad acts.  *Armengau*, 93 N.E.3d at 301.

In his most recent set of objections, Petitioner notes three disagreements with the Magistrate Judge's recommended disposition.  First, Petitioner argues that he fairly presented his prosecutorial misconduct claim in Propositions of Law I and VI to the Ohio Supreme Court in his Motion in Support of Jurisdiction.  (ECF No. 123 at 165).  But even if he is right, this does not address the core of the Magistrate Judge's analysis: Petitioner's failure to present a claim of prosecutorial misconduct with the same legal and factual basis to the *intermediate* appellate court. *Cf. Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009) ("For a claim to be reviewable at the federal level, each claim must be fairly presented at every stage of the state appellate process." (citing *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990); *Mohn v. Bock*, 208 F. Supp. 2d 796, 800 (E.D. Mich. 2002); *Winegar v. Corr. Dep't*, 435 F. Supp. 285, 289 (W.D. Mich. 1977))).  Second,

Petitioner suggests the Tenth District already determined that prosecutorial misconduct marred Petitioner's trial. The quoted excerpts from *Armengau II* and *Armengau V* do discuss misconduct by the prosecution during the closing statements. *See Armengau*, 93 N.E.3d at 310; *Armengau*, 154 N.E.3d at 1089–90. The Tenth Circuit did not, however, confirm that there was prosecutorial misconduct pertaining to the introduction of other-acts evidence — the claim that Petitioner raises here. In fact, the Tenth District, as the Magistrate Judge noted, deemed the other-acts evidence introduced by the State to be admissible. (*See* ECF No. 97 at 71). In other words, the prosecutorial misconduct found by the Tenth District did not share the same legal and factual terms as Petitioner's habeas claim. *See Wagner*, 581 F.3d at 418. Finally, Petitioner suggests that the Report and Recommendation erred in failing to consider the factual account contained in the record. (*See* ECF No. 123 at 166). In doing so, Petitioner misunderstands the nature of habeas review pursuant to AEDPA: where a claim has not been fairly presented to state courts, the role of a federal habeas court is not to comb through the state record, but to allow the petitioner to seek relief in state court first through proper presentation of the claim.

In summary, Petitioner fails to dispute the Magistrate Judge's procedural default analysis, misstates the state appellate decisions, and raises issues inappropriate for federal habeas review. His objections do not sway the conclusion that the prosecutorial misconduct claim has been procedurally defaulted for lack of fair presentation to the Tenth District on direct appeal. Accordingly, this Court **OVERRULES** Petitioner's Ninth Supplemental Objection, **ADOPTS** the Magistrate Judge's recommendation, and **DENIES** the Fifth Ground for Relief.

### 6. *Ground Six: Subject Matter Jurisdiction*

Petitioner's Sixth Ground for Relief asserts that the Franklin County Court of Common Pleas lacked subject matter jurisdiction to try Petitioner for any alleged crimes in Marion County,

Ohio. These crimes formed the basis for Counts 8–18 of his criminal trial. In Petitioner's Reply (Answer) to the Warden's Return of Writ (ECF No. 77), Petitioner argued Grounds Three and Six together; this Court addressed the claims of constructive amendment and double jeopardy *supra* as part of Ground Three.

The Magistrate Judge recommended that this Court dismiss the subject matter jurisdiction claim as procedurally defaulted. (ECF No. 97 at 72). He noted that courts of common pleas in Ohio "are the courts with subject matter jurisdiction to try felony criminal cases," citing Ohio Rev. Code § 2931.03, and that "Petitioner has not pled or proved any basis on which the Franklin County Court of Common Pleas lacked subject matter jurisdiction over his case." (ECF No. 97 at 72). The Magistrate re-affirmed his recommendation over Petitioner's initial objections. (ECF No. 118 at 30–31). The thrust of Petitioner's Tenth Supplemental Objection sounds in notice. (*See* ECF No. 123 at 167 ("Where an indictment fails to provide the accused with sufficient notice of the charges, a trial court does not possess jurisdiction." (citing *State v. Allen*, 2018-Ohio-878, 2018 WL 1225502 (Ohio Ct. App. Mar. 9, 2018); *Davis v. Eppinger*, 2019 WL 626426 (N.D. Ohio Feb. 14, 2019)))). Notably, Petitioner's objection does not address the core of the Magistrate Judge's recommendation: the claim was not raised on direct appeal and is procedurally defaulted.

On the merits, Ground Six focuses solely on jurisdiction (though Petitioner's objections do not). Because "[a] determination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary," *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976) (per curiam), the question of "whether an indictment or other charging document is sufficient to confer jurisdiction in a state criminal case is an issue of state law not cognizable on federal habeas corpus review unless the charging document is so deficient as to deprive a petitioner of fair notice of the charges against him." *Davis*, 2019 WL 626426 at *1 (internal citations

omitted). As noted above, Petitioner did not suffer from a prejudicial lack of notice regarding the charges against him. *See supra* Part IV.C.2. The only Supreme Court case discussing jurisdiction in the context of federal habeas cited by Petitioner is *Jackson v. Zerbst*, 304 U.S. 458 (1938). *Zerbst* was not only about a federal conviction, but also a relic of habeas jurisprudence of the 1930s, during which time habeas relief required a preliminary finding of a "jurisdictional" error. *Cf. Wainwright*, 433 U.S. at 73 (1977) (noting that "in *Waley v. Johnston*, 316 U.S. 101 (1942), the Court openly discarded the concept of jurisdiction by then more a fiction than anything else as a touchstone of the availability of federal habeas review"). Petitioner does not provide any other citations to "clearly established Federal law" disputing the Magistrate Judge's recommended disposition. 28 U.S.C. § 2254(d)(1).

Accordingly, this Court **OVERRULES** Petitioner's Ninth Objection (ECF No. 123 at 166–68). The Magistrate's recommendation is **ADOPTED**; Petitioner's Sixth Ground for Relief is **DENIED**.

### 7.  *Ground Seven: Equal Protection*

Petitioner alleges violations of the Equal Protection Clause of the Fourteenth Amendment in his Seventh Ground for Relief. (ECF No. 70 at 19–20). Petitioner's argument appears to misunderstand the nature of equal protection of the laws. He writes, for example, in his Tenth Supplemental Objection that "the three-step analysis set-forth in *Batson* is relevant to Petitioner's position and argument supporting his Equal Protection claim." (ECF No. 123 at 170 n.72). But this Court struggles to see the relevance of *Batson*: after all, "*Batson* applies to peremptory challenges [against potential jurors] based on race or gender," *United States v. Kimbrel*, 532 F.3d 461, 466 (6th Cir. 2008) (citing *United States v. Mahan*, 190 F.3d 416, 424 (6th Cir. 1999)), whereas Petitioner's claim involves neither peremptory challenges nor allegations of

66

discrimination based on race or gender. In fact, Petitioner does not claim that he has been targeted as part of a suspect class at all. *See Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (discussing typical equal protection cases).

It is difficult to see how Petitioner's case implicates equal protection at all. His argument, distilled to its essence,[30] is that state courts applied the law differently in his case than in other cases. (*See* ECF No. 123 at 169–70 ("Petitioner suggests that the case law he has cited throughout his petition and these objections specifically identify him as similarly situated to defendants who have obtained relief under identical issues and material facts and that the court system has disregarded the law they have established in order to affirm the convictions."). But as the Magistrate Judge pointed out, "the entire doctrine of precedent cannot be constitutionalized." (ECF No. 97 at 74). While the "Equal Protection Clause embodies a general rule that States must treat like cases alike and may treat unlike cases accordingly" (ECF No. 123 at 169), it is exceedingly rare that two cases are genuinely identical; the *corpus juris* of American courts consists of myriad cases distinguishing between similar but not quite identical situations.

The four cases that Petitioner references as "identical" to his situation bear out this reality. First, *State v. Hampton*, 2011-Ohio-3486, 2011 WL 2739523 (Ohio Ct. App. July 14, 2011),[31] discussed venue in terms of the location of the trial, not the location of where the charged crimes occurred.[32] *Id.* at *4, *20. Second, *State v. Crosky*, 2008-Ohio-145, 2008 WL 169346 (Ohio Ct.

---

[30] Petitioner also suggests in this section of his Supplemental Objections that he is actually innocent (ECF No. 123 at 168–69) and that he has made a prima facie case of various constitutional claims. (*Id.* at 170). These arguments do not bear on his equal protection claim; to the extent they are relevant, they are addressed elsewhere in this Opinion & Order.

[31] Petitioner cites to the Supreme Court of Ohio's decision in *State v. Hampton*, but discusses the appellate decision by the Tenth District; accordingly, this Court cites and discusses the Tenth District's opinion.

[32] Additionally, Petitioner claims that the Tenth District affirmed the lower court decision. In fact, the Tenth District dismissed the State's appeal as beyond its statutory authority. *See generally id.*

App. Jan. 17, 2008), did not involve any amendments to the indictment or bill of particulars. *Id.* at *21. Third, *State v. V.W.*, 2015-Ohio-5543, 57 N.E.3d 235 (Ohio Ct. App. 2015) involved a multiple acts charge, *id.* at 242, whereas Petitioner was convicted on an alternative means jury instruction. *Armengau*, 93 N.E.3d at 304. Finally, the appellate court in *State v. Burdett*, 1994 WL 283651 (Ohio Ct. App. June 21, 1994), found trial court error "under the facts and circumstances of this case," which included alibis for the dates of several allegations. *Id.* at *4. In Petitioner's case, the Tenth District reviewed the facts and circumstances of Petitioner's trial — including the serial amendments, the evidence supporting an alternative-means jury instruction, and the nature of Petitioner's defense (which did not include alibis for Counts 8–18) — and arrived at a different conclusion than the courts in the above-mentioned cases. Even assuming that Petitioner has accurately described himself as "similar situated to defendants who have obtained relief" (ECF No. 123 at 170), his situation does not involve "identical issues and material facts" to the cases that he has cited.

And, ultimately, that is the nature of the judicial system. Different trial courts, confronted with similar but not identical facts, may arrive at different conclusions. Different panels of an appellate court, confronted with similar but not identical facts, may also arrive at different conclusions. Those differences in outcomes do not, without more, state an equal protection claim. *Cf. Haggins v. Warden*, 715 F.2d 1050, 1054 (6th Cir. 1983) ("To suggest that a person is denied the equal protection of law because different panels of the [state appellate court] differed on whether the admission of certain evidence was harmless error or not is ludicrous.").

Accordingly, this Court **OVERRULES** Petitioner's Tenth Supplemental Objection and **DENIES** Petitioner's Seventh Ground for Relief.

*8.   Ground Eight: Actual Innocence*

The Magistrate Judge recommended denying Petitioner's Eighth Ground for Relief, in which he claims he is entitled to habeas corpus relief because he is actually innocent of the crimes for which he was convicted.  The Magistrate Judge noted that a claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence" and Petitioner has not done so here.  *Souter v. Jones*, 395 F.3d 577, 590 (6th Cir. 2005) (citing *Schlup v. Delo*, 513 U.S. 298, 324 (1995)).  Petitioner does not dispute the Report and Recommendation's legal analysis in either his Initial Objections or Supplemental Objections.  Instead, he dedicates the majority of his briefing to arguing the merits of his claim.  (*See, e.g.*, ECF No. 123 at 174 (arguing that "Petitioner must be, as a matter of law, factually innocent of Counts 8, 10, 14, 15, 16, 17 and 18")).  The only reference to law in the Eleventh Supplemental Objection is Petitioner's assertion that the requirement of new evidence for an actual innocence claim must give way in certain cases "to the imperative of correcting a fundamentally unjust incarceration."  (*Id.* at 175 (quoting *Schlup*, 513 U.S. at 320–21 (quoting *Murray v. Carrier*, 477 U.S. 478, 495 (1986)))).  But Petitioner takes that quotation out of context and misstates the law: the imperative of correcting injustice is what allows a habeas petitioner to bring a claim of actual innocence supported by new evidence in the first place even when that petition would otherwise by procedurally barred.  *See Schlup*, 513 U.S. at 319–24.  It is not, on the other hand, an exception to the requirement that claims of actual innocence be supported with new evidence.[33]

---

[33] Moreover, Petitioner's claim is not truly one of actual innocence; rather, it is argument that he "was convicted not upon *any* charged crime." (ECF No. 123 at 174).  In other words, he is arguing that he is innocent of the charges during the time and in the locations laid out in the indictment — the same argument that he makes with respect to sufficiency-of-the-evidence, notice, defective indictment, and double jeopardy.  As discussed earlier, there is no requirement that the prosecution prove that the charged conduct occurred in the precise timeframe and location specified in the indictment.  *See supra* Part IV.C.2.

Accordingly, this Court **OVERRULES** the Tenth Supplemental Objection and **DENIES** the Eighth Ground for Relief.

### 9. *Ground Nine: Unanimous Jury*

In Petitioner's Ninth Ground for Relief, he argues that he was "denied his right to a unanimous jury verdict in Counts 2, 3, 10, 14, 15, 16, 17 and 18 when the trial court denied a requested jury instruction on unanimity." (ECF No. 70 at 23–26). In recommending dismissal, the Magistrate Judge noted that, at the time of Petitioner's state trial in 2014, there was no federal constitutional right to a unanimous jury in state trials. *See Ramos*, 140 S. Ct. at 1425 (2020) (Alito, J., dissenting) (noting that "the Court held [in 1972] that the Sixth Amendment permits non-unanimous verdicts in state criminal trials").

Petitioner suggests that this Court can apply the new rule announced in *Ramos* retroactively, because his appeal is still pending on direct review from his resentencing. (ECF No. 123 at 184). As the Supreme Court recently confirmed, "a new rule of criminal procedure ordinarily does not apply retroactively to overturn final convictions on federal *collateral* review." *Edwards v. Vannoy*, 141 S. Ct. 1547, 1554 (2021) (emphasis in original) (citing *Teague v. Lane*, 489 U.S. 288, 310 (1989) (plurality opinion); *Penry v. Lynaugh*, 492 U.S. 302, 313–14 (1989)). Petitioner's conviction on Count 15 is not yet final, as he continues to file further appeals on direct review in state court.[34] *See Columbus Bar Ass'n v. Armengau*, 160 Ohio St.3d 445, ¶14, 2020-Ohio-1421 (Ohio 2020) (noting Petitioner's continued direct appeals of his resentencing); *cf.*

---

[34] Petitioner submitted a Notice of Proceedings (ECF No. 131) on October 31, 2022, notifying this Court that he has been resentenced by the Franklin County Court of Common Pleas, pursuant to the Tenth District Court of Appeals' order in *Armengau V*. Given the tone of his filing and his past litigation history, this Court presumes that Petitioner plans to appeal that resentencing and continue seeking further direct review of his convictions. This analysis only applies to Count 15, as any further appeal of resentencing is limited to that count; Petitioner's convictions on the other counts are now final as the corresponding sentences have been affirmed on all appeals.

*Rashad v. Lafler*, 675 F.3d 564, 568 (6th Cir. 2012) ("*Burton v. Stewart*, 549 U.S. 147 (2007) (per curiam), it seems to us, shows that the judgment becomes final [for federal habeas purposes] after direct review of the new sentence."). Thus, the new rule announced in *Ramos* must be applied retroactively to Petitioner's state trial six years ago — admittedly, an odd outcome, but one dictated by the text of AEDPA. *See Rashad*, 675 F.3d at 568 (noting that it would be inappropriate to bifurcate a petitioner's conviction from his sentence).

Although *Ramos* applies retroactively to this case, Petitioner failed to present fairly his jury unanimity claim to the Supreme Court of Ohio. (*See* State Court Record Ex. 13, Memorandum in Support of Jurisdiction of Appellant Javier Armengau, ECF No. 72 at 365–66). Nor has Petitioner demonstrated the existence of "exceptional factors as to warrant excusing [his] failure to exhaust," *Rockwell v. Yukins*, 217 F.3d 521, 425 (6th Cir. 2000), especially as he raised his jury unanimity claim with the intermediate appellate court. *Armengau*, 93 N.E.3d at 301. Contrary to Petitioner's assertion that he presented the jury verdict unanimity claim in Proposition of Law IV to the Supreme Court of Ohio, Respondent noted that that proposition "raised a claim regarding prior bad acts evidence and Evid. R. 404(B)." (ECF No. 73 at 64). Respondent also observed that the Tenth District rejected Petitioner's jury unanimity claims on appeal from resentencing as barred by the doctrines of *res judicata* and law of the case. (*Id.* (citing *Armengau*, 154 N.E.3d at 1094–95)). Petitioner's arguments in his Supplemental Objections, which focus on the applicability of *Ramos*, fail to demonstrate that Respondent has mischaracterized Proposition of Law IV or that the claim was otherwise fairly presented to the state's highest court. Moreover, Petitioner's claims are lacking on the merits:[35] he has not "cited any authority suggesting that the state trial court's

---

[35] Petitioner's claims rely primarily on speculation about how the jury "may" have voted, with no evidentiary support. (*See, e.g.*, ECF No. 123 at 157). Petitioner's first argument is that prosecutors never requested the jury consider the incidents used to resentence him on Counts 15 and 18, the white truck incidents; a review of the trial

jury instructions ran counter to clearly established federal law." *Tackett v. Trierweiler*, 95 F.3d 358, 371 (6th Cir. 2020).

Accordingly, this Court **OVERRULES** Petitioner's Sixth and Thirteen Supplemental Objections and **DENIES** Petitioner's Ninth Ground for Relief.

### 10. Ground Ten: Right to Jury Trial

Petitioner's Tenth Ground for Relief, in which he asserts that he was denied his right to a jury trial, fundamentally rests on three arguments:[36] first, that the factual bases underlying each convicted charge was determined by the trial judge and not by the jury; second, that he was sentenced in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000); and third, that he was resentenced on allegations that were not presented to the jury. As the Magistrate Judge noted, "this is not a classic *Apprendi* case where some punishment beyond that authorized by the statute of conviction can be imposed upon a separate finding by the trial judge." (ECF No. 97 at 77). Instead, this case simply involves "a trial judge exercise[ing] his discretion to select a specific sentence within a defined range," in which "the defendant has no right to a jury determination of the facts that the judge deems relevant." *United States v. Booker*, 543 U.S. 220, 233 (2005).

More importantly, Respondent Warden noted that Petitioner has failed to present these claims on direct review to state courts. (*See* ECF No. 73 at 66 ("[H]owever a review of the documents fails to demonstrate that Armengau raised the claim on direct review.")). None of

---

transcript reveals that the prosecutor explicitly asked the jury to consider L.M.'s testimony that "he raped her in a white truck." (Trial Tr. 3684:5, ECF No. 72-2 at 3695). Petitioner also contends that the jury may have confused Counts 10 and 11, and some jurors may have voted to convict him on Count 10 for the factual basis of Count 11. This argument has already been rejected by this Court. *See supra* Part IV.C.3(c). Finally, Petitioner suggests that there was no factual basis for Count 16, which was clarified by the State as an alternative theory regarding the incident during which Petitioner asked L.M. to lock her daughter in a room. (Trial Tr. 2357:6–13, ECF No. 72-2).

[36] Petitioner's "Supporting Facts" for his Tenth Ground mentions various other arguments, which are largely taken verbatim from the "Supporting Factors" of other grounds and have been addressed elsewhere or are not relevant to the question of Petitioner's Sixth Amendment jury right.

Petitioner's nine assignments of error to the Tenth District mentions that his right to a jury trial was violated. *Armengau*, 93 N.E.3d at 301.  Neither do the Propositions of Law he certified to the Supreme Court of Ohio for review.  (*See* State Court Record Ex. 13, Memorandum in Support of Jurisdiction of Appellant Javier Armengau, ECF No. 72 at 364–82).  And Petitioner has not demonstrated cause or prejudice, *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), that necessitate this Court considering the merits of Petitioner's claim.  Finally, claims related to resentencing have been addressed, and rejected, earlier in this Opinion & Order.  *See supra* Part IV.C.3(c).

Accordingly, this Court **DENIES** Petitioner's Tenth Ground for Relief.

### 11.  Additional Objections

In Petitioner's Fourteenth Supplemental Objection (ECF No. 123 at 191–208), he issues a free-wheeling dispute of the Magistrate Judge's fair presentation analysis on all relevant grounds for relief.  The Fourteenth Supplemental Objection is nearly identical with the corresponding argument in Petitioner's Initial Objection (ECF No. 103 at 177–96), with a few deleted paragraphs, one new paragraph, and some changed formatting.  (*See, e.g.*, ECF No. 123 at 194, 198).  In effect, Petitioner simply reiterates his arguments and does not identify any specific issues in the Magistrate Judge's Supplemental Report and Recommendation for this Court to consider.  *See Howard*, 932 F.2d at 509.  Moreover, the issue of fair presentation has been discussed extensively elsewhere in this Opinion & Order and in Petitioner's other enumerated objections.  Nothing in the Fourteenth Supplemental Objections alters this Court's understanding of circuit and Supreme Court precedent, nor their application to Petitioner's claims.

Accordingly, Petitioner's Fourteenth Supplemental Objection is **OVERRULED**.

### D.    Certificate of Appealability

Petitioner has requested a certificate of appealability on any claim denied by this Court. (*See* ECF No. 123 at 1).  When a habeas claim is denied on the merits, a certificate of appealability may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make a substantial showing of the denial of a constitutional right, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).

In this case, the Magistrate Judge recommended granting Petitioner a certificate of appealability on Grounds One and Three.  As noted above, this Court understands the Tenth District's analysis of the underlying claim in Ground One differently than the Magistrate Judge did.  But this Court agrees with the Magistrate Judge that reasonable jurists could disagree on Ground Three — on whether the lack of specificity and identically-worded counts in the indictment and bills of particulars violated the Double Jeopardy Clause.  This Court is also persuaded that reasonable jurists would debate whether the amendments at trial violated Petitioner's right to fair notice; however, this Court is not persuaded that reasonable jurists would debate whether the Court properly dismissed the remaining claims on the merits.

Therefore, Petitioner's request for a certificate of appealability is **GRANTED IN PART and DENIED IN PART**.  The following issues are certified for appeal:

1.    Did the serial amendments to the charges against Petitioner deprive him of fair notice?

2.    Did the lack of specificity and differentiation in the indictment and bills of particulars violate the Double Jeopardy Clause?

74

### V.      CONCLUSION

For the reasons discussed above and upon independent review, Petitioner's Objections (ECF Nos. 78, 103, 111, 117, 123) are **OVERRULED**.  This Court **ADOPTS AS MODIFIED** the Magistrate Judge's Report and Recommendation (ECF No. 97) and Supplemental Report and Recommendation (ECF No. 118).  The Second Amended Petition for writ of habeas corpus (ECF No. 70) is **DISMISSED WITH PREJUDICE**; no writ shall issue.  Petitioner is granted a certificate of appealability on Grounds Two and Three.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED:  December 7, 2022**